1   Robert H. Horn, SBN 137410
    rhorn@proskauer.com
2   PROSKAUER ROSE LLP
    2049 Century Park East, 32nd Floor
3   Los Angeles, California  96007
    Telephone (310) 557-2900
4   Fax (310) 557-2193

5   Attorneys for Plaintiff
    National Academy of Recording Arts
6   & Sciences, Inc.

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  NATIONAL ACADEMY OF                )   Case No. CV 08-0856 DSF (Ex)
    RECORDING ARTS & SCIENCES, INC.,   )
12  a Delaware corporation,            )   **DISCOVERY MATTER**
                                       )
13                 Plaintiff,          )   **JOINT STIPULATION**
                 v.                    )   **REGARDING PLAINTIFF'S**
14  ON POINT EVENTS, LP, a Texas limited )  **MOTION TO COMPEL**
    partnership,                       )   **DEFENDANT TO RESPOND TO**
15                 Defendant.          )   **REQUESTS FOR DOCUMENTS**
                                       )   **WITHOUT OBJECTION AND TO**
16  ─────────────────────────────     )   **PRODUCE DOCUMENTS;**

17                                         **DECLARATION OF ROBERT H.**
                                           **HORN;**
18

19                                         **AFFIDAVIT OF JOE ALFRED**
                                           **IZEN, JR.**
20
                                           Date:       February 20, 2009
21                                         Time:       9:30 a.m.
                                           Ctrm:       20
22

23                                         Discovery Cutoff: March 2, 2009
                                           Pretrial Conf:    October 5, 2009
24                                         Trial:            November 3, 2009

25

26

27

28

# TABLE OF CONTENTS

**Page**

THE RECORDING ACADEMY'S INTRODUCTORY STATEMENT...................1

ON POINT EVENTS' INTRODUCTORY STATEMENT......................................2

SPECIFICATION OF ISSUES IN DISPUTE ...........................................................7

RESPONSE TO REQUEST FOR DOCUMENTS NO. 1: ......................................7

The Recording Academy's Position.......................................................................7

**I.**       The Parties .................................................................................................7

**II.**      On Point's Unlawful Sale of GRAMMY Tickets ............................................8

**III.**     The Requested Information Is Relevant to the Recording Academy's Claims....................................................................................................10

**IV.**      On Point Withdrew All Objections Except for the Trade Secret Objection ................................................................................................10

**V.**       Information Relating to On Point's Unlawful Sale of GRAMMY Tickets is Not a Trade Secret ...................................................................11

On Point Events' Position ...................................................................................14

**I.**       The Parties .................................................................................................14

**II.**      "On Point's Unlawful Sale of Grammy Tickets".......................................15

**III.**     The Requested Information Is Relevant to the Recording Academy's Claims....................................................................................................16

**IV.**      On Point Withdrew All Objections Except for the Trade Secret Objection ................................................................................................17

**V.**       Information Relating to On Point's Unlawful Sale of Grammy Tickets Is Not a Trade Secret ..................................................................18

**VI.**      On Point's Further Statement of Position:  Applicable Legal Standards........18

         **A.**       Relevance ......................................................................................18

         **B.**       Protective Order.............................................................................19

         **C.**       Trade Secret Protection.................................................................19

         **D.**       Waiver of Privilege.......................................................................21

         **E.**       Disputed Issue...............................................................................23

RESPONSE TO REQUEST FOR DOCUMENTS NO. 2: .....................................24

## **TABLE OF CONTENTS** (cont'd.)

**Page**

The Recording Academy's Position ................................................................24

On Point's Position ................................................................24

RESPONSE TO REQUEST FOR DOCUMENTS NO. 3: ....................................25

The Recording Academy's Position ................................................................25

On Point's Position ................................................................26

RESPONSE TO REQUEST FOR DOCUMENTS NO. 4: ....................................26

The Recording Academy's Position ................................................................27

On Point's Position ................................................................27

RESPONSE TO REQUEST FOR DOCUMENTS NO. 5: ....................................28

The Recording Academy's Position ................................................................28

On Point's Position ................................................................29

RESPONSE TO REQUEST FOR DOCUMENTS NO. 6: ....................................29

The Recording Academy's Position ................................................................30

On Point's Position ................................................................30

RESPONSE TO REQUEST FOR DOCUMENTS NO. 7: ....................................31

The Recording Academy's Position ................................................................31

On Point's Position ................................................................32

RESPONSE TO REQUEST FOR DOCUMENTS NO. 8: ....................................33

The Recording Academy's Position ................................................................33

On Point's Position ................................................................34

RESPONSE TO REQUEST FOR DOCUMENTS NO. 9: ....................................35

The Recording Academy's Position ................................................................35

On Point's Position ................................................................36

RESPONSE TO REQUEST FOR DOCUMENTS NO. 10: ...................................36

The Recording Academy's Position ................................................................37

On Point's Position ................................................................37

1

**TABLE OF CONTENTS** (cont'd.)

2

<u>**Page**</u>

3   RESPONSE TO REQUEST FOR DOCUMENTS NO. 11: ....................................38

4   The Recording Academy's Position.................................................................39

5   On Point's Position ......................................................................................39

6   RESPONSE TO REQUEST FOR DOCUMENTS NO. 12: ....................................39

7   The Recording Academy's Position.................................................................40

8   On Point's Position ......................................................................................40

9   RESPONSE TO REQUEST FOR DOCUMENTS NO. 13: ....................................41

10  The Recording Academy's Position.................................................................42

11  On Point's Position ......................................................................................42

12  RESPONSE TO REQUEST FOR DOCUMENTS NO. 14: ....................................43

13  The Recording Academy's Position.................................................................44

14  On Point's Position ......................................................................................44

15  RESPONSE TO REQUEST FOR DOCUMENTS NO. 15: ....................................45

16  The Recording Academy's Position.................................................................45

17  On Point's Position ......................................................................................46

18  RESPONSE TO REQUEST FOR DOCUMENTS NO. 16: ....................................46

19  The Recording Academy's Position.................................................................47

20  On Point's Position ......................................................................................47

21  RESPONSE TO REQUEST FOR DOCUMENTS NO. 17: ....................................48

22  The Recording Academy's Position.................................................................49

23  On Point's Position ......................................................................................49

24  RESPONSE TO REQUEST FOR DOCUMENTS NO. 18: ....................................50

25  The Recording Academy's Position.................................................................50

26  On Point's Position ......................................................................................51

27  RESPONSE TO REQUEST FOR DOCUMENTS NO. 19: ....................................52

28  The Recording Academy's Position.................................................................52

iii

1

**TABLE OF CONTENTS** (cont'd.)

2

**Page**

3   On Point's Position ................................................................53

4   RESPONSE TO REQUEST FOR DOCUMENTS NO. 20: ................................54

5   The Recording Academy's Position ................................................54

6   On Point's Position ................................................................55

7   RESPONSE TO REQUEST FOR DOCUMENTS NO. 21: ................................56

8   The Recording Academy's Position ................................................56

9   On Point's Position ................................................................57

10  RESPONSE TO REQUEST FOR DOCUMENTS NO. 22: ................................58

11  The Recording Academy's Position ................................................58

12  On Point's Position ................................................................59

13  RESPONSE TO REQUEST FOR DOCUMENTS NO. 23: ................................59

14  The Recording Academy's Position ................................................60

15  On Point's Position ................................................................60

16  RESPONSE TO REQUEST FOR DOCUMENTS NO. 24: ................................61

17  The Recording Academy's Position ................................................62

18  On Point's Position ................................................................62

19  RESPONSE TO REQUEST FOR DOCUMENTS NO. 25: ................................63

20  The Recording Academy's Position ................................................63

21  On Point's Position ................................................................64

22  RESPONSE TO REQUEST FOR DOCUMENTS NO. 26: ................................64

23  The Recording Academy's Position ................................................65

24  On Point's Position ................................................................66

25

26

27

28

**THE RECORDING ACADEMY'S INTRODUCTORY STATEMENT**

Plaintiff National Academy of Recording Arts & Sciences, Inc. ("The Recording Academy®") is a not-for-profit company that presents the annual GRAMMY® Awards ceremony.  Defendant On Point Events LP ("On Point"), an online ticket broker, knows that the GRAMMY Awards ceremony is a private event, tickets are issued only to The Recording Academy's dues-paying members and invited guests, and tickets are nontransferable.  Nevertheless, On Point unlawfully advertised (using The Recording Academy's registered GRAMMY trademark without authorization) and sold GRAMMY tickets for its own profit.  On Point obtained GRAMMY tickets by inducing Recording Academy members or invited guests to breach their contractual obligation not to transfer the tickets, deceived members of the public by selling void tickets, and induced them to trespass the ceremony.  On Point has rebuffed The Recording Academy's demands that On Point cease its unlawful conduct.

The Recording Academy alleges violations of the Lanham Act (unfair competition and false advertising), unfair competition under state law, and inducing trespass.  The Recording Academy seeks a permanent injunction and damages.

The Recording Academy requests documents evidencing advertisements for the sale of GRAMMY tickets, communications with sources of GRAMMY tickets, the identities of ticket sources, communications with ticket purchasers, copies of tickets acquired and sold, money paid to ticket sources, money received from ticket purchasers, and accounting records relating to the purchase and sale of tickets, and all other documents relating to GRAMMY tickets.

On Point does not dispute that The Recording Academy's requests for documents seek relevant information that it can easily provide.  During the pre-motion conference of counsel On Point withdrew all of its objections except the trade secret objection.  The information is not a trade secret and, even if it were, On Point cannot properly withhold the information on that basis.  In June 2009, *at On*

1   *Point's request*, counsel for The Recording Academy prepared and delivered a

2   proposed stipulated protective order to ensure confidentiality.  On Point never

3   responded.  During the pre-motion conference The Recording Academy offered to

4   provide a letter representing that the information will be used only for purposes of

5   this litigation.  On Point still refused to provide the information.  On Point is simply

6   stonewalling to deprive The Recording Academy of the ability to prove its claims.

7        For these reasons, The Recording Academy respectfully requests that the

8   Court order On Point to (1) amend its responses to state that it will produce all

9   responsive documents without objection by February 24, 2009, and (2) produce the

10  responsive documents by February 24, 2009.  Compliance by this date easily

11  accomplished because On Point has indicated that there are relatively few

12  responsive documents (On Point apparently sold fewer than 10 tickets).  It is also

13  necessary because the discovery cut-off is March 2, 2009.

14              **ON POINT EVENTS' INTRODUCTORY STATEMENT**

15       On Point Events provides travel packages to various sports and entertainment

16  events both within and outside of the United States.

17       Air fare, other travel costs, and hotel and lodging as well as tour fees and

18  other travel services are included as part of the travel and entertainment packages

19  that On Point Events sells as well as tickets to particular sporting or entertainment

20  events.

21       On Point Events purchases tickets to its events through ticket brokers.

22       On Point Events has its principal offices in Houston, Texas.  On Point Events

23  conducts the majority of its sales efforts through web listings and sites on the

24  internet.

25       On Point Events' customers come from all over the world and are located in

26  most of the fifty United States.  On Point Events has customers in the State of

27  California.  The ticket brokers which Defendant On Point relies on as a source for

28  the sports and entertainment event tickets which On Point Events purchases and

1   resells obtain their tickets by direct purchase from the sports event or other
2   entertainment provider or from the secondary market for such tickets which exists as
3   a result of resale of tickets purchased from the direct sports or entertainment event
4   providers by members of the general public.

5   The State of Texas where Defendant, On Point Events, has its principal
6   offices and downloads its orders for purchase of the travel entertainment packages it
7   sells has no anti-scalping law.  Tickets may be freely resold  in Texas in the
8   secondary market for prices higher than that paid to the direct seller or purveyor of
9   the sports or entertainment events.  Like Texas, the State of California, has no anti-
10  scalping law.  Once tickets are purchased from On Point Events by a customer over
11  the internet, they are delivered by United States mail to the address provided by the
12  purchaser.

13  Defendant, On Point Events, first became aware of The Recording
14  Academy's complaints concerning possible resale of tickets which The Recording
15  Academy distributes to its The Recording Academy entertainment events (which
16  have been staged, recently, in the Staples Center in Los Angeles, California) when
17  Defendant On Point received The Recording Academy's letter demanding that it
18  cease and desist from selling, or offering to sell tickets to attend The Recording
19  Academy events.  Prior to The Recording Academy's filing of suit approximately
20  four letters were exchanged in which the parties set out their positions.  The
21  Recording Academy claimed in its presuit letters that it was a charitable entity
22  which placed restrictions on the resale of any tickets it sold or provided directly to
23  its members, special invitees, or corporate sponsors.  The Recording Academy did
24  not describe the terms of sale or distribution to special invitees or corporate
25  sponsors.

26  When Defendant On Point refused to "cease and desist" from selling tickets
27  to The Recording Academy events available for Defendant's repurchase in the
28  secondary market, The Recording Academy filed the current suit which is pending

before this Court.  After the service of The Recording Academy's Complaint, the parties conferred and after a time participated in drafting, drafted, and then submitted, a Joint Rule 26(a) Report.

Thereafter, The Recording Academy sent a First Set of Written Interrogatories and a First Request for Production to Defendant, On Point Events. Defendant, On Point Events, sent a First Set of Written Interrogatories and First Request for Production to Plaintiff The Recording Academy.

Based on the final illness and ultimate death of the father of Defendant, On Point Events' counsel, Joe Alfred Izen, Jr., which stretching from July through September, 2008, Defendant, On Point sought and received an enlargement of time within to respond to discovery.  Plaintiff The Recording Academy and Defendant, On Point Events, submitted answers to interrogatories and responses to requests for production.  Plaintiff The Recording Academy was the first to answer and respond. Plaintiff The Recording Academy provided little voluntary discovery.  Its responses to Defendant On Point's Requests for Production and Answers to written interrogatories were replete with boiler plate relevancy objections and assertion of trade secret and other privileges.

Shortly thereafter, Defendant On Point submitted answers and responses to Plaintiff The Recording Academy' interrogatories and requests for production which, for the most part, asserted, in written form, the same objections in the same language as those previously put forth by Plaintiff The Recording Academy.

Apparently, dissatisfied with receiving responses to discovery containing the same objections that The Recording Academy had asserted, Plaintiff, through The Recording Academy's counsel, attorney Horn, requested a conference "in an effort to resolve the discovery dispute."  As a result of the devastation wrought by Hurricane Ike in the City of Houston, Texas, Defendant On Point's counsel, Joe Alfred Izen, Jr., was without electric power from September 12 through September 28, 2008.  Defendant On Point's counsel was unable to resume his law practice due

1   to the damage sustained until on or about October 20, 2008.  On November 6, 2008,

2   Defendant On Point's counsel received a letter from Plaintiff's counsel, attorney

3   Horn, requesting a discovery conference be set.  On November 20, 2008 Defendant,

4   On Point Events', counsel, Joe Alfred Izen, Jr., responded to Mr. Horn's earlier

5   letter and pointed out that Plaintiff The Recording Academy was using the assertion

6   of privilege as a sword rather than a shield and, through use of trade secret and other

7   privileges, was preventing full discovery of the issues that Plaintiff The Recording

8   Academy had put at issue when it sued Defendant On Point.  Defendant On Point's

9   counsel wrote another letter on December 1, 2008 responding to attorney Horn's

10  efforts to set a conference date.

11         The parties finally agreed on a conference date of December 10, 2008.  On

12  that date Defendant On Point's counsel served an extensive letter setting out On

13  Point Events' position concerning discovery, the grounds upon which Defendant,

14  On Point Events, was asserting privilege or objections to Plaintiff The Recording

15  Academy' discovery and On Point Events' own dissatisfaction with the discovery

16  objections and assertions of privilege asserted by Plaintiff The Recording Academy.

17  True and correct copies of Defendant, On Point Events', letters of November 20,

18  2008 and December 1, 2008, and December 10, 2008, are attached to the

19  Declaration of Joe Alfred Izen, Jr. submitted herewith as Exhibits C, D, and E.

20         Contrary to the Plaintiff The Recording Academy' claims, the prospect of

21  obtaining a Protective Order was discussed between counsel for Plaintiff The

22  Recording Academy and Defendant On Point.  Defendant On Point took the

23  position, which was made clear to Plaintiff The Recording Academy, that Defendant

24  On Point's first preference was that the parties waive all privilege and make all

25  information concerning Plaintiff The Recording Academy's alleged enforcement of

26  its restrictions on resale of its tickets and all pertinent information related thereto

27  public and that Defendant On Point would disclose and make public all information

28  concerning its purchase and resale of tickets to The Recording Academy events as

1    part of its sale of sports and entertainment travel packages.  Defendant On Point
2    informed Plaintiff The Recording Academy that its second preference was that the
3    parties apply for and obtain a protective order which would allow mutual use of
4    such information but prevent its public disclosure if the parties could satisfy the
5    Court that the issuance of a protective order was warranted.
6         Defendant On Point, after conferring with Plaintiff The Recording Academy's
7    counsel, provided its web site advertisements which offered The Recording
8    Academy tickets for sale as part of its travel and entertainment packages.  Defendant
9    On Point received certain blank forms which Plaintiff The Recording Academy
10   claimed, through its counsel, that it utilized to sell and/or disseminate its tickets to
11   its members.  Up to the time of the filing of Plaintiff The Recording Academy'
12   Motion to Compel, Defendant On Point has received no information concerning any
13   alleged efforts by Plaintiff The Recording Academy to enforce the purported
14   restrictions on resale against its members, its special invitees, or corporate sponsors,
15   other than disclosure of the case numbers and style of several injunction suits in
16   which Plaintiff The Recording Academy' counsel stated Plaintiff The Recording
17   Academy obtained voluntary injunctions against certain parties preventing offer or
18   sale of tickets to The Recording Academy events.
19        The parties were unable to resolve their discovery disputes.  Both Plaintiff
20   The Recording Academy and Defendant On Point are moving to compel discovery.
21   Defendant On Point takes the position that it is entitled to, at the very least,
22   reciprocal discovery from Plaintiff The Recording Academy and that Plaintiff The
23   Recording Academy can not enforce restrictions on alienation or contractual
24   provisions prohibiting resale of its tickets when The Recording Academy violates
25   the same provisions that it purports to enforce against its members or third parties.
26
27
28

1   **SPECIFICATION OF ISSUES IN DISPUTE**

2   **REQUEST FOR DOCUMENTS NO. 1:**

3   All DOCUMENTS referred to in YOUR initial disclosures pursuant to Fed.

4   R. Civ. P. 26.

5   **RESPONSE TO REQUEST FOR DOCUMENTS NO. 1:**

6   RESPONSE: Defendant, On Point, will produce the following documents :

7   1.    Correspondence with the Plaintiff and/or its attorneys

8   2.    Sample purchase contract between On Point and On Point's clients.

9   **The Recording Academy's Position**

10  **I.    The Parties**

11  The Recording Academy alleges in the complaint that is a Delaware not-for-

12  profit corporation with over 18,000 members.  For over 50 years The Recording

13  Academy has represented the individuals who contribute to the creation and

14  exploitation of recorded music, including recording artists, musicians, songwriters

15  and record producers.  Among other activities, The Recording Academy presents the

16  GRAMMY Awards, the only peer-presented awards that honor artistic achievement

17  in the music industry.  The annual GRAMMY Awards ceremony is telecast

18  throughout the world.  (Complaint ¶ 1.)

19  The Recording Academy provides charitable services to the music community

20  through MusiCares® and The GRAMMY Foundation®.  MusiCares provides a

21  safety net of critical assistance for music people in times of need.  Its services and

22  resources cover a wide range of financial, medical and personal emergencies.

23  MusiCares also focuses the resources and attention of the music industry on human

24  service issues that directly impact the health and welfare of the music community.

25  The GRAMMY Foundation seeks to cultivate the understanding, appreciation and

26  advancement of the contribution of recorded music to American culture.  It

27  accomplishes this mission through programs and activities that engage the music

28  industry and cultural community as well as the general public.  For example, the

GRAMMY Foundation works in partnership year-round with The Recording Academy to bring national attention to important issues such as the value and impact of music and arts education and the urgency of preserving our rich cultural heritage.

The Recording Academy further alleges that On Point owns and operates the website www.OnPointEvents.com.  On Point is a ticket broker for entertainment, sporting and other events, and offers such tickets for sale and sell such tickets at a substantial premium above the face value, sometimes as part of entertainment packages.  (Complaint ¶¶ 3-4.)

## II.   On Point's Unlawful Sale of GRAMMY Tickets

The Recording Academy alleges that its GRAMMY Awards ceremony telecast attracts approximately 25 million viewers in the United States and approximately 600 million viewers in the rest of the world.  The biggest names in the entertainment world attend the ceremony.  Attendance in person is a highly sought-after privilege and, for music fans, a cause for great excitement.  The Recording Academy offers tickets on a restricted basis only to its eligible members and their invited guests, and The Recording Academy's invited guests and official sponsors.  (Complaint ¶ 16.)

Tickets to the GRAMMY Awards ceremony are not for sale to the general public.  Each GRAMMY ticket states on its face:

> This ticket may not be transferred or re-sold and the rights granted herein may not be assigned.  No promotional, commercial, advertising or other trade use may be made without the express written consent of The Recording Academy.  Tickets obtained from unauthorized sources or in contravention of the terms and conditions of this ticket or applicable law will not be honored, and their holders

1     shall be deemed trespassers.  Each ticket transferred or re-
2     sold without such permission is void.

3  (Complaint ¶ 17; Horn Decl. ¶ 7, Ex. B.)

4         Each member of The Recording Academy who is offered the opportunity to
5  buy a limited number of tickets is required to sign and submit an Academy Member
6  Order Form agreeing to the following terms:

7     Tickets to Recording Academy events, including but not
8     limited to the GRAMMY Awards, are for use by the
9     account holder and its invited guest(s) only, are not
10    transferable by account holder or any of its invited guests,
11    and may not be sold, otherwise transferred or used for any
12    other purpose, including promotional, commercial,
13    advertising, or other trade purposes without the express
14    written consent of The Recording Academy.  Tickets sold,
15    otherwise transferred or used in violation of this policy
16    shall be deemed revoked and void, and their bearers
17    deemed trespassers at all Recording Academy events.

18  (Complaint ¶ 18; Horn Decl. ¶ 8, Ex. C.)  Comparable restrictions govern the
19  distribution of tickets to The Recording Academy's official sponsors.

20        To further emphasize the strict prohibition against the unauthorized sale or
21  transfer of tickets, when an invitee of The Recording Academy picks up GRAMMY
22  Awards tickets, the invitee is required to sign a Ticket Release Form by which the
23  invitee again agrees to the above quoted language.  (Complaint ¶ 19; Horn Decl. ¶ 9,
24  Ex. D.)

25        Notwithstanding the prohibition against unauthorized sales and transfers of
26  GRAMMY Awards tickets, On Point has advertised and sold to the unwitting public
27  tickets to the GRAMMY Awards ceremony knowing that the tickets are void and
28  subject to deactivation, and that the purchasers will be trespassers.  On Point is

perpetrating a fraud on the public because only The Recording Academy is authorized to sell or transfer GRAMMY tickets.  (Complaint ¶ 20.)

### III.   The Requested Information Is Relevant to the Recording Academy's Claims

On February 7, 2008, The Recording Academy filed the complaint for false advertising, unfair competition, interference with contractual relationships, unfair or deceptive business practices under state law, and inducement of trespass arising out of false and misleading statements.  The Recording Academy alleges that On Point made and continues to make unauthorized offers for sale and sales of tickets to the GRAMMY Awards ceremony.  The Recording Academy seeks damages and a permanent injunction against the advertising and sale of GRAMMY tickets.

The key evidence needed to prove these claims include:

- On Point's records concerning its advertisements and sale of GRAMMY tickets
- Communications with sources of GRAMMY tickets
- Identities of ticket sources
- Communications with purchasers of GRAMMY tickets
- Identities of GRAMMY ticket purchasers
- Copies of GRAMMY tickets acquired and sold
- Documents evidencing money paid to GRAMMY ticket sources
- Documents evidencing money received from GRAMMY ticket purchasers
- Accounting records relating to the purchase and sale of GRAMMY tickets

### IV.   On Point Withdrew All Objections Except for the Trade Secret Objection

On November 6, 2008, The Recording Academy requested an in-person meeting within 10 days pursuant to Local Rule 37-1.  Because On Point's counsel

1  did not agree to meet within the prescribed time period, the meeting did not occur

2  until December 10, 2008.  (Horn Decl. ¶ 16, Ex. F.)

3       At the meeting, On Point withdrew *all* of its objections except for trade secret

4  confidentiality.  On Point conceded that the requested information is relevant to the

5  claims and that it would not be burdensome to provide answers.  (Horn Decl. ¶ 17.)

6       Importantly, The Recording Academy had previously offered to maintain the

7  information as confidential and to use it only for purposes of this litigation (except

8  to the extent The Recording Academy may seek to take action against On Point's

9  ticket sources, including The Recording Academy members and invited guests who

10  sold their GRAMMY tickets in violation of their contract with The Recording

11  Academy).  On June 24, 2008, *at On Point's request*, The Recording Academy

12  prepared and delivered a draft proposed protective order.  Almost six months later,

13  On Point has not commented on or signed the proposed protective order.  (Horn

14  Decl. ¶ 13.)  The Court should not permit On Point to leverage its longstanding

15  refusal to stipulate to a protective order as a basis for not responding to discovery

16  that it admits is relevant to the claims.

17  **V.   Information Relating to On Point's Unlawful Sale of GRAMMY Tickets**

18  **     is Not a Trade Secret**

19       Under Fed. R. Civ. P. 26(c)(1)(G), the party opposing discovery must show

20  that (a) the information is a "trade secret or other confidential research,

21  development, or commercial information" and (b) disclosure of the information

22  would be harmful to the party's interest in the information.  *In re Agent Orange*

23  *Prod. Liab. Litig.*, 104 F.R.D. 559, 574 (E.D.N.Y. 1985).  The burden then shifts to

24  the party seeking discovery to show that the information is relevant to a claim or

25  defense or the subject matter of the lawsuit and is necessary to prepare the case for

26  trial.  *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032-33 (8th Cir. 1991).

27  Where trade secrets are involved, the court will balance the risk of disclosure to

28  *competitors* against the risk that a protective order will impair prosecution or

1   defense of the claims. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470
2   (9th Cir. 1992); *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 681-82
3   (N.D. Ga. 2007).

4        The information sought by The Recording Academy is not a trade secret. The
5   California Uniform Trade Secrets Act, California Civil Code § 3426.3, defines a
6   trade secret to mean:

> (d) "Trade Secret" means information, including a
> formula, pattern, compilation, program, device, method
> technique or process, that:
> (1) Derives independent economic value, actual or
> potential, from not being generally known to the public or
> other person who can obtain economic value from its
> discourse or use; and
> (2) Is the subject of efforts that are reasonable under the
> circumstances to maintaining its secrecy.

16        Although Texas has not adopted the UTSA, Texas courts have adhered to the
17   definition in Restatement of Torts § 757, comment b. *See Chapa v. Garcia*, 848
18   S.W.2d 667, 671 (Tex. 1992). A trade secret is "any formula, pattern, device, or
19   compilation of information which is used in one's business and presents an
20   opportunity to obtain an advantage over *competitors* who do not know or use it."
21   *H.E. Butt Grocery Co. v. Moody's Quality Meats, Inc.*, 9521 S.W.2d 33, 35 (Tex.
22   Ct. App. Corpus Christi 1997) (emphasis added).

23        Information relating to On Point's unlawful sales of GRAMMY tickets is not
24   a trade secret. It does not fit within any of the legal descriptions of a trade secret.
25   Even if the information is a trade secret, the required balancing of factors weighs
26   heavily in favor of disclosure.

27        On the one hand, The Recording Academy is not On Point's competitor. On
28   Point is a for-profit commercial ticket broker that re-sells tickets to public events to

the public.  The Recording Academy is not a ticket broker and does not engage in the commercial sale of tickets.  It is a non-profit corporation that stages the annual GRAMMY Awards ceremony and performs music-related charitable work through The GRAMMY Foundation and MusiCares.  It funds those activities in part through the sale of tickets to the annual GRAMMY Awards ceremony – *a private event*. The public is prohibited from attending the ceremony.  Attendance is restricted to eligible members of The Recording Academy and their invited guests, and The Recording Academy's invited guests and official sponsors.  GRAMMY tickets issued to these persons are not transferable.  Information concerning On Point's unlawful sales of GRAMMY tickets, inducing The Recording Academy's members to breach their no transfer contracts, and inducing the public to trespass into the GRAMMY Awards ceremony, is not legitimate trade secret information.  It is simply evidence of unlawful conduct.

On the other hand, The Recording Academy cannot prove its claims without the requested information.  The Recording Academy must present evidence that On Point offered and sold GRAMMY tickets.  Evidence of communications with sources and purchasers is necessary to prove On Point's knowledge of its lawbreaking and to enforce a permanent injunction.  Evidence of the money paid by On Point for the GRAMMY tickets and the money it received from the sale of GRAMMY tickets is necessary to prove profits and damages.

Regarding Document Request No. 1, Rule 26 requires the parties to identify and/or provide copies of all documents to support their claims or defenses.  On Point cannot properly limit its production to correspondence with The Recording Academy and a sample purchase contract – unless it represents in the response that it has produced all responsive documents.  That representation is missing.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

**On Point Events' Position**

I.    **The Parties**

While The Recording Academy claims that it is a not-for-profit corporation and has 18,000 members, attendance at The Recording Academy sponsored events at the Staples Center in Los Angeles exceed 18,000.

Much of The Recording Academy's "position" seems self-serving. Defendant On Point has been denied the discovery it requested from The Recording Academy's so On Point is not privy to any proof that any of The Recording Academy's contentions are true.  While The Recording Academy's claims to be a not-for-profit corporation, The Recording Academy's has not, as yet, produced any proof in discovery which would qualify it to claim non-profit status.  While The Recording Academy's says, "The Recording Academy provides charitable services to the music community through MusiCares and the The Recording Academy Foundation," and purports to describe such charitable activities, The Recording Academy stops short of claiming that it is operated on a non-profit basis.

If The Recording Academy receives unrelated business income, not directly related to its charitable activities or fund raising activities, then it is a "for profit" corporation and would be a direct "for-profit" provider of tickets to entertainment events.  If The Recording Academy engages in, promotes, tolerates, or encourages, resale of tickets to The Recording Academy-sponsored events by any third parties, then The Recording Academy is a reseller of such tickets in the secondary market, a business competitor to Defendant, On Point Events, and has breached the very restriction on resale or transfer provisions in its tickets, permits, or contracts, which it is attempting to enforce in this case.

The Recording Academy has brought a Motion to Compel seeking to force Defendant On Point to reveal all details concerning its purchase and sale of tickets to The Recording Academy-sponsored events in the secondary market without providing any of Defendant On Point's requested discovery concerning The

14

1   Recording Academy's own activities related to The Recording Academy's alleged
2   enforcement of restrictions on transfer or resale of the tickets it directly issues.  (The
3   Recording Academy's counsel informally provided information on several lawsuits
4   in which The Recording Academy obtained agreed injunctions against ticket
5   brokers.)

6   **II.     "On Point's Unlawful Sale of Grammy Tickets"**

7            The Recording Academy claims:

8                    The Recording Academy offers tickets on a restricted
9                    basis only to its dues-paying members and to promotional
10                   and sponsorship partners.

11  The Recording Academy Motion to Compel, p. 3.

12           Despite Defendant On Point's demands of proof of the truthfulness of this
13  allegation, The Recording Academy has so far produced blank ticket forms and
14  agreements which it claims it uses with its members.  The Recording Academy has
15  produced no proof of any restrictions placed on tickets it issues to "promotional and
16  sponsorship partners."

17           The Recording Academy claims that:

18                   Tickets to the The Recording Academy Awards Ceremony
19                   are not for sale to the general public.

20  This may be literally true.  However, if The Recording Academy Awards tickets are
21  sold to non-members, then The Recording Academy's activities and ticket sales are
22  public rather than private and any effort by The Recording Academy to prevent
23  resale of purchased tickets would violate Federal and State (California and Texas)
24  anti-trust laws and, further would violate public policy against restrictions on
25  alienation.

26           Similarly, The Recording Academy claims that:

27                   Each ticket to the The Recording Academy Awards
28                   Ceremony issued by the Recording Academy is, on its

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

face, non-transferable except in a manner specifically

authorized in writing by the Recording Academy.

This does not establish that the resale restrictions are valid.

The Recording Academy quotes restrictions on resale inserted on the back of the tickets it allegedly sells its members. The Recording Academy then states:

Comparable restrictions govern the distribution of tickets

to the Recording Academy's official sponsors.

Despite Defendant On Point's prior discovery requests, The Recording Academy has failed to produce any proof of the wording of the "Comparable restrictions." It claims to have inserted on tickets issued to its "official sponsors." The Recording Academy's Motion to Compel, P. 4. The Recording Academy's contentions are as consistent with for-profit operations as they are charitable activities and fund raising.

The Recording Academy's refusal to comply with Defendant On Point's discovery requests directing it to provide proof of actual ticket sales contracts with its special invitees and corporate sponsors it continues to allude to supports an inference that The Recording Academy has violated the alleged restrictions on resale contained in its own ticket sales contract and has, itself, perpetrated a fraud on its members and/or the ticket purchasing public. If The Recording Academy receives unrelated business income through sales of tickets, The Recording Academy is not a charity notwithstanding any charitable activities engaged in by organizations or groups operating under its umbrella.

**III.** **The Requested Information Is Relevant to the Recording Academy's Claims**

Defendant On Point concedes that if The Recording Academy's alleged restrictions on resale of its tickets and its ticket permits or ticket sales contracts are enforceable that the various "key evidence" points listed by The Recording

1    Academy in this Paragraph meet the standard of relevance under the Federal Rules

2    of Civil Procedure.

3    **IV.    On Point Withdrew All Objections Except for the Trade Secret**

4    **Objection**

5      Defendant On Point concedes that after discussions with The Recording

6    Academy's counsel, it decided to withdraw the boiler plate and relevance objections

7    it had asserted which mirrored those asserted by The Recording Academy in its

8    responses to Defendant On Point's Requests for discovery.

9      On Point's right to trade secret protection was extensively discussed between

10   the parties.  On Point rejected The Recording Academy's position that The

11   Recording Academy was entitled to assert trade secret and other privilege protection

12   as a bar to On Point's discovery concerning The Recording Academy activities,

13   conduct of ticket sales, and alleged enforcement of restrictions on ticket resale while

14   Defendant On Point had no right to assert trade secret privilege.

15     The Recording Academy's claim:

16       Almost six months later On Point has not commented on

17       or other responded [sic] to the proposed protective order

18   is untrue.  Defendant On Point's counsel verbally offered two alternatives to The

19   Recording Academy for reciprocal discovery under which the parties would either:

20   (1) waive all trade secret and other privilege and disclose all documents and

21   evidence related to offer for sale, and restriction of sale; or (2) satisfy the Court that

22   good and sufficient cause exists for the issuance of a protective order under the

23   appropriate Federal Rules of Civil Procedure, and repeated On Point's position in

24   writing.  See Affidavit of Joe Alfred Izen, Jr., Exhibit E, Letter Dated December 10,

25   2008.  There was no effort to "leverage" any refusal to stipulate to a protective

26   order.

27

28

**V.**     **Information Relating to On Point's Unlawful Sale of Grammy Tickets Is Not a Trade Secret**

Defendant On Point contends that The Recording Academy's research concerning what is a trade secret is deficient and refers to its own legal research below.

Plaintiff The Recording Academy's claim that On Point's resale of tickets to The Recording Academy's events is "unlawful" is false.  Neither the State of Texas nor the State of California have anti-scalping laws.  An effort to prevent resale of tickets in the State of California violates the State Constitution.  The Recording Academy's claim:

> Rule 26 requires the parties to identify and/or provide copies of all documents to support their claims or defenses.  On Point can not properly limit its production to correspondence with the Recording Academy and a sample purchase contract – unless it represents in the response that it has produced all responsive documents.
>
> That representation is missing

is misleading since it fails to include any reference to Defendant On Point's statement in its discovery responses that documents are being withheld which were subject to claim of trade secret privilege.

**VI.**     **On Point's Further Statement of Position:  Applicable Legal Standards**

**A.**     **Relevance**

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  F.R.Civ.P. 26(b)(1).  The Rule goes on to state that:

> For good cause, the Court may order discovery of any matter relevant to the subject matter involving the action.  **Relevant information need not be admissible at the**

18

1         **trial if the discovery appears reasonably calculated to**

2         **lead to the discovery of admissible evidence.  The scope**

3         **of discovery permissible under Rule 26 should be**

4         **liberally construed; the Rule contemplates discovery**

5         **into any matter that bears on or are that contemplates**

6         **discovery into any matter that bears on or that could**

7         **reasonably lead to other matters that could bear on**

8         **any issue that is or may be raised in the case.**

9 Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., (N.D. Cal. 10-22-2008).  Citing

10 Board of Trustees of Leeland Stanford Junior University v. Roche Molecular

11 Systems, Inc., 237 F.R.D. 618, 621 (N.D. Cal. 2006).   As pointed out by Judge

12 Patel in Phoenix Solutions, the Ninth Circuit favors a broad standard of relevance.

13 Epstein v. MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995).

14      **B.**     **Protective Order**

15        The standard for issuing a protective order under Rule 26 F.R.Civ.P. 26(c)(7)

16 is controlled in part by the scope of discovery under Rule 26(c).  Rule 26(c)

17 explicitly authorizes the District Court to protect parties from "undue burden or

18 expense" in discovery by ordering that "a trade secret or other confidential research,

19 development, or commercial information, not be disclosed or to be disclosed only in

20 a designated way.  Phoenix Solutions, Inc. citing F.R.Civ.P. 26(c)(7).  A party

21 asserting a privilege as a defense to discovery must:

22         Show good cause for the issuance of a protective order.

23 F.R.Civ.P. 26(c).  The burden of demonstrating the need for a protective order from

24 discovery is placed on the party seeking the protective order, not on the party

25 opposing the order.

26      **C.**     **Trade Secret Protection**

27        Parties asserting a confidentiality privilege against production of business,

28 and, as in this case, membership, financial operation, and customer and vender

supplier lists must rely on state law for the existence of a legal claim of confidentiality for such information.  With respect to The Recording Academy, California Trade Secret law would, presumably make membership lists (analogous to customer or vendor supplier lists) confidential along with the financial information involved in dealing with such members.  See <u>MAI Systems Corp. v. Peak Computer, Inc.</u>, 991 F.2d 511, 520 (California has adopted the Uniform Trade Secrets Act which codifies the basic principles of common law trade secret protection.  Cal. Civ. Code 3426-3426.10.  To establish violation under the UTSA, it must be shown that a Defendant has been unjustly enriched by the improper appropriation, use, or disclosure, of a trade secret.)  A customer list acquired by lengthy and expensive efforts deserves protection as a trade secret.  <u>Barney v. Burrow</u>, No. CV-F-08-0373 (E.D. Cal. 5-16-2008).  Citing <u>MAI Systems</u> at p. 521.  The customer data base qualifies as a trade secret because it has the potential economic value to allow a competitor to direct its sales efforts to potential customers.  <u>Courtesy Temporary Service, Inc. v. Camacho</u>, 222 Cal. App. 3d 1278, 1288, 272 Cal. Rptr. 352 (1990).

   Texas law is no different.  In Texas customer lists:

    Can constitute a protected trade secret under Texas law.

<u>AMX Corporation v. Pilote Films</u>, No. 3:04-CV-2035-D (N.D. Tex. 8-7-2007).  Citing <u>Hyde Corp. v. Huffines</u>, 314 S.W.2d 763, 776 (Tex. 1958).  Texas has adopted the Restatement of Torts, 757 definition which provides, in pertinent part:

    (A trade secret is a) Compilation of information which is

    used in one's business, and which gives him an

    opportunity to obtain an advantage over competitors who

    do not know or use it and may be...a list of customers.

Items such as customer lists, price information, client information, customer preferences, buyer contacts...have been shown to be trade secrets.  <u>T-N-T Motor</u>

1  Sports, Inc. v. Hennessey Motor Sports, Inc., 965 S.W.2d 18, 22 (Tex. App. 1998,

2  Pet. dism'd.).

3         Information concerning customers and suppliers is also protected under the

4  rules of confidentiality applicable to trade secrets.  S.C.E.A. v. Nassau Electronics,

5  No. 07-20819-Civ-Moreno/Simonton (S.D.Fla. 2-12-2008).

6         **D.   Waiver of Privilege**

7         The privilege of confidentiality restricting forced disclosures of trade secrets,

8  like other privileges, may be waived by the conduct of the party asserting the

9  privilege.  First of all, as previously noted in On Point's prior November 20, 2008

10 letter (See Affidavit of Joe Alfred Izen, Jr., Exhibit A) to The Recording Academy

11 counsel, a party may not use the assertion of a confidentiality privilege as a "sword

12 rather than a shield."  See S.C.E.A. v. Nassau Electronics, No. 07-20819-Civ-

13 Moreno/Simonton (S.D.Fla. 2-12-2008).

14              On one hand, SCEA is correct that Defendants should not

15              be permitted to use a protective order as both a sword and

16              shield, by resting their defenses on third parties and then

17              restricting SCEA's efforts to test their defenses by

18              examining those parties.

19        This principle was already touched on in the November 20, 2008 letter from

20 On Point to The Recording Academy counsel which cited Shelton v. American

21 Motors Corp., 805 F.2d 1323, 1331 (8th Cir. 1986).

22        A party purporting to claim a confidentiality privilege may waive the

23 privilege he is trying to claim by his own acts.  Phoenix Solutions.  A privilege may

24 be waived either implicitly or by placing privileged matters in controversy or

25 explicitly by turning over privilege documents.  Citing Gomez v. Vernon, 255 F.3d

26 1118, 1131 (9th Cir.).  A party's failure to protect its privilege can result in a loss or

27 conscription of that privilege.  Fort James Corp. v. Solo Cup Co., 412 F.3d 1340,

28

1   1351 (Fed. Cir. 2005) and <u>Dellwood Farms, Inc. v Cargill, Inc.</u>, 128 F.3d 1122,

2   1126 (7th Cir. 1997).

3         Any effort to make selective production of a party's evidence and documents

4   while asserting a privilege (producing those documents deemed favorable to one's

5   case and withholding other documents and information) usually results in waiver.

6   <u>Adams v. U.S.</u>, No. 03-0049-E-BLW (Idaho 7-3-2008).  (The authorities cited

7   above establish that DuPont can not use privileged information as both a sword and

8   shield in this manner.)  (Allowing a Plaintiff to use a confidentiality privilege as

9   both a sword and a shield would "simply be contrary to the most basic sense of

10  fairness and justice.)  <u>Allendorf v. Sully Transportation, Inc.</u>, No. 98-C-50243 (N.D.

11  Ill. 2001).   Citing <u>Adams v. Ardcor</u>, 196 F.R.D. 339, 343 (E.D. Wis. 2000).

12        Finally, when a party claiming a privilege has "injected the issue" that the

13  withheld documents or other evidence are relevant to the proponent of the privilege

14  has waived any confidentiality.  <u>Hearn v. Rhay</u>, 68 F.R. 574, 581 (E.D. Wash.

15  1975).  As the <u>Hearn</u> decision points out, the privilege of confidentiality is waived

16  "by injection" where:

17          (1) assertion of the privilege **was the result of some**

18          **affirmative act, such as filing suit**, by the asserting party;

19          (2)  Through this affirmative act, the asserting party put

20          the protected information at issue by making it relevant to

21          the case; and

22          (3)  Application of privilege would have denied the

23          opposing party access to information vital to his defense.

24  <u>Hearn</u> at P. 581.

25        The Recording Academy filed shot gun federal pleadings accusing Defendant

26  On Point, which never did business with The Recording Academy, of various

27  transgressions including trespassing, violating trademark rights, and inducing its

28

members, special invited guests, and other parties, to violate their membership agreements with The Recording Academy.

One affirmative defense which On Point has asserted to The Recording Academy' shot gun claims is that The Recording Academy has violated its own contract with its members, special invited guests, and other parties, by encouraging, inducing, or tolerating resale of tickets to its events.

By filing its shot gun claims, and suing On Point, The Recording Academy has injected the issue of the entire scope of its handling of its tickets to scrutiny under the rules of discovery.

### E.  Disputed Issue

The disputed issue which goes to the heart of this case injected into the case by the affirmative act of The Recording Academy' filing of suit against On Point is **whether or not The Recording Academy is barred from attempting to enforce any restrictions on resale of its tickets if (as proven by discovery subject to the above stated relevancy standards in paragraph 1), it has induced, encouraged and/or tolerated in such a manner as to constitute waiver under the standards of the industry, any restrictions on resale.**

As noted previously by the Presiding Judge during the announcements of the parties at the prior Scheduling Conference, the State of California lacks any "scalping law" (as does the State of Texas) so any prohibition of the normal right to resell an item or service must result from private contract.  A party such as The Recording Academy can not complain of breach by a party (or induced breach by a third party) of the contract it purports to enforce when it has violated the same provisions and terms which are the basis of its "induced" breach of contract claims.

### REQUEST FOR DOCUMENTS NO. 2:

All DOCUMENTS described or referred to by YOU in YOUR responses to THE RECORDING ACADEMY'S interrogatories served concurrently herewith.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 2:**

RESPONSE:  Defendant, On Point, will produce the following documents:

1.     A Sample purchase contract for a travel package and ticket to events between On Point and On Point's client(s).

## The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

On Point has refused to identify any documents in its interrogatory responses. The Recording Academy in a separate motion seeks an order compelling On Point to provide answers to interrogatories without objection.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

## On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The Boiler Plate and Relevancy objections asserted and then withdrawn by Defendant On Point after conference with The Recording Academy counsel contain the same wording as those asserted by The Recording Academy in response to On Point's Request for Production and Written Interrogatories.

Defendant On Point has refused to disclose the contents of documents and answers to interrogatories which would be protected by the trade secret privilege.

**REQUEST FOR DOCUMENTS NO. 3:**

All DOCUMENTS evidencing, referring or relating to the dates on which YOU offered GRAMMY TICKETS for sale on YOUR website www.On Pointevents.com.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 3:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

The dates On Point advertised the sale of GRAMMY tickets is not a trade secret.  The advertisements were necessarily made public.  The information does not fall within the any of the above-mentioned categories of trade secrets.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

**On Point's Position**

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

Plaintiff The Recording Academy is incorrect when it states that the date of the offer of such sales has not been provided.  Defendant On Point provided the web site listing of the offer for sale of The Recording Academy tickets which would provide the dates that such tickets were offered for sale by Defendant On Point as part of an entertainment and travel package.

**REQUEST FOR DOCUMENTS NO. 4:**

All DOCUMENTS evidencing, referring or relating to past or present offers of GRAMMY TICKETS for sale on YOUR website www.On Pointevents.com.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 4:**

RESPONSE: Defendant, on Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or 'trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

### The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Information relating to On Point's offers to sell GRAMMY tickets is not a trade secret.  Advertisements are necessarily public information.  The information does not fall within the any of the above-mentioned categories of trade secrets

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

### On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

Further, Defendant On Point has already produced the web site listings to The Recording Academy's counsel which offered The Recording Academy tickets for sale which were in its position, custody, and control.

**REQUEST FOR DOCUMENTS NO. 5:**

All DOCUMENTS evidencing, referring or relating to past or present offer of GRAMMY TICKETS for sale by YOU on any website.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 5:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Documents relating to On Point's offers to sell GRAMMY tickets is not a trade secret.  Advertisements are necessarily public information.  The information does not fall within the any of the above-mentioned categories of trade secrets.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

### On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.  All documents fitting the description of this request in the possession, custody, or control of Defendant On Point were provided to The Recording Academy's counsel after conference.

**REQUEST FOR DOCUMENTS NO. 6:**

All DOCUMENTS evidencing, referring or relating to any COMMUNICATION between YOU and any PERSON CONCERNING GRAMMY TICKETS.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 6:**

RESPONSE:  Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

## The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Information relating to On Point's communications with any person, including GRAMMY ticket sources and purchasers, concerning GRAMMY tickets is not a trade secret.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.  The Recording Academy is entitled to know who among its members are violating their contract not to transfer GRAMMY tickets.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

## On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

The statements in The Recording Academy's Position are disingenuous. Defendant On Point has no correspondence in its possession, custody, or control with any person concerning The Recording Academy tickets other than correspondence and documents which are withheld under trade secret privilege

based on their content.  Defendant On Point also withheld such communications between itself and its attorney's mentioning The Recording Academy.  The Recording Academy inartfully drew its requests to clearly call for production of materials, correspondence, and communications, protected by the attorney-client privilege.

**REQUEST FOR DOCUMENTS NO. 7:**

All DOCUMENTS evidencing, referring or relating to any COMMUNICATION between YOU and any PERSON CONCERNING an offer to sell GRAMMY TICKETS.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 7:**

RESPONSE:  Defendant, On Point, incorporates the General objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

### The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Information relating to On Point's communications with any person, including GRAMMY ticket sources and purchasers, concerning the sale of

GRAMMY tickets is not a trade secret.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.  The Recording Academy is entitled to know who among its members are violating their contract not to transfer GRAMMY tickets.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

## **On Point's Position**

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with  respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

The Recording Academy's claim that ticket sources and a list of clients is not subject to trade secret protection is simply wrong. The Recording Academy's claim that the "The Recording Academy Awards Ceremony is not open to the public" is highly suspect.  The Recording Academy's failure to comply with Defendant On Point's discovery request raises a heavy inference of possible fraud committed by The Recording Academy.  The Recording Academy's statement:

> The Recording Academy is entitled to know who among
> its members are violating their contract not to transfer The
> Recording Academy tickets

is true only if The Recording Academy itself is not violating the same purported restrictions on resale of tickets to enter its events that it is purporting to enforce against its members and/or the special invited guests or corporate sponsors.

The manner in which this Request for Document was drafted which requires production of communication with "any person concerning an offer to sell The Recording Academy tickets" clearly invades the attorney-client privilege.

**REQUEST FOR DOCUMENTS NO. 8:**

All DOCUMENTS evidencing, referring or relating to any COMMUNICATION between YOU and any PERSON that YOU used and/or attempted to use as source for GRAMMY TICKETS.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 8:**

RESPONSE:  Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

1   Information relating to On Point's communications with any person,
2   including GRAMMY ticket sources and purchasers, concerning GRAMMY tickets
3   is not a trade secret.  The information does not fall within the any of the above-
4   mentioned categories of trade secrets.  On Point knows that The Recording
5   Academy's members are contractually bound not to transfer GRAMMY tickets and
6   that the GRAMMY Awards ceremony is not open to the public.  The Recording
7   Academy is entitled to know who among its members are violating their contract not
8   to transfer GRAMMY tickets.

9   The Court should order On Point to serve an amended response stating that it
10  will produce all responsive documents in its possession, custody, or control, and to
11  produce the responsive documents, by February 24, 2009.

### On Point's Position

13  Defendant On Point restates all of the allegations, contentions, and argument,
14  contained in its Statement of Position with respect to Request for Documents No. 1
15  as if fully set forth herein.

16  The boiler plate objections which Plaintiff The Recording Academy lists as
17  part of Defendant On Point's response contain the same language as that utilized by
18  The Recording Academy in its purported responses to Defendant's Request for
19  Production and The Recording Academy's Answers to Defendant's Written
20  Interrogatories.

21  The withdrawn objections were those objections containing the same boiler
22  plate and relevance language as those asserted by Plaintiff The Recording Academy
23  to Defendant On Point's Request for Production and Answers to Interrogatories.

24

25  **REQUEST FOR DOCUMENTS NO. 9:**

26  All DOCUMENTS evidencing, referring or relating to any
27  COMMUNICATION between YOU and any PERSON CONCERNING the
28  purchase and/or sale of GRAMMY TICKETS.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 9:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

### The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1. On Point withdrew all objections except trade secret.

Information relating to On Point's communications with any person, including GRAMMY ticket sources and purchasers, concerning GRAMMY tickets are not a trade secret. The information does not fall within the any of the above-mentioned categories of trade secrets. On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public. The Recording Academy is entitled to know who among its members are violating their contract not to transfer GRAMMY tickets.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

**On Point's Position**

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The manner in which this Request for Document was drafted which requires production of communication with "any person concerning an offer to sell The Recording Academy tickets" clearly invades the attorney-client privilege.

The Recording Academy's statement:

> The Recording Academy is entitled to know who among
> its members are violating their contract not to transfer The
> Recording Academy tickets

is only true if The Recording Academy has not itself violated the very provisions of its ticket permits and/or ticket sale contracts restricting resale of such tickets which it purports to enforce against its members.

**REQUEST FOR DOCUMENTS NO. 10:**

All DOCUMENTS evidencing, referring or relating to any COMMUNICATION between YOU and any PERSON CONCERNING travel packages that included GRAMMY TICKETS.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 10:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

1    On Point further objects to the extent this request seeks information protected

2    from disclosure by the attorney-client privilege and/or the attorney work product

3    doctrine.

4                    **The Recording Academy's Position**

5    The Recording Academy incorporates sections I through V above regarding

6    its position on the response to Document Request No. 1.  On Point withdrew all

7    objections except trade secret.

8    Information regarding On Point's travel packages offered to GRAMMY ticket

9    purchasers, including the profits On Point received from the unlawful sale of travel

10   packages that included GRAMMY tickets, is not a trade secret.  The prices or the

11   travel packages were probably advertised on the Internet, and were necessarily

12   disclosed to nonparties involved in the transaction, *e.g.*, credit card companies, the

13   purchasers, etc.

14   The Court should order On Point to serve an amended response stating that it

15   will produce all responsive documents in its possession, custody, or control, and to

16   produce the responsive documents, by February 24, 2009.

17                    **On Point's Position**

18   Defendant On Point restates all of the allegations, contentions, and argument,

19   contained in its Statement of Position with respect to Request for Documents No. 1

20   as if fully set forth herein.

21   The boiler plate objections which Plaintiff The Recording Academy lists as

22   part of Defendant On Point's response contain the same language as that utilized by

23   The Recording Academy in its purported responses to Defendant's Request for

24   Production and The Recording Academy's Answers to Defendant's Written

25   Interrogatories.

26   The manner in which this Request for Document was drafted which requires

27   production of communication with "any person concerning an offer to sell The

28   Recording Academy tickets" clearly invades the attorney-client privilege.

The Recording Academy's statement:

> The Recording Academy is entitled to know who among its members are violating their contract not to transfer The Recording Academy tickets

is only true if The Recording Academy has not itself violated the very provisions of its ticket permits and/or ticket sale contracts restricting resale of such tickets which it purports to enforce against its members.

Plaintiff The Recording Academy claims that Defendant On Point's financial information concerning the pricing and sale of its tickets "is not a trade secret" while The Recording Academy asserted the same privilege and refused to provide such financial information concerning sales to its members, special invited guests, or corporate sponsors based on privilege and relevancy grounds.

**REQUEST FOR DOCUMENTS NO. 11:**

All DOCUMENTS evidencing, referring or relating to the date YOU purchased and/or acquired GRAMMY TICKETS from any PERSON.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 11:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

The dates On Point unlawfully purchased and/or acquired GRAMMY tickets are not a trade secret.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

**On Point's Position**

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

**REQUEST FOR DOCUMENTS NO. 12:**

Copies of all GRAMMY TICKETS purchased and/or sold by YOU.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 12:**

RESPONSE; Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

### The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Copies of GRAMMY tickets unlawfully sold by On Point are not trade secrets.  This information was known to ticket sources and ticket purchasers.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

### On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by

1   The Recording Academy in its purported responses to Defendant's Request for

2   Production and The Recording Academy's Answers to Defendant's Written

3   Interrogatories.

4        The manner in which this Request for Document was drafted which requires

5   production of communication with "any person concerning an offer to sell The

6   Recording Academy tickets" clearly invades the attorney-client privilege.

7        Defendant On Point concedes that after discussions with The Recording

8   Academy's counsel, it decided to withdraw the boiler plate and relevance objections

9   it had asserted which mirrored those asserted by The Recording Academy in its

10  responses to Defendant On Point's Requests for discovery.

11       On Point's right to trade secret protection was extensively discussed between

12  the parties.  On Point rejected The Recording Academy's position that The

13  Recording Academy was entitled to assert trade secret and other privilege protection

14  as a bar to On Point's discovery concerning its alleged charitable activities and its

15  conduct of ticket sales and alleged enforcement of restrictions on resale of the

16  tickets while Defendant On Point had no right to assert trade secret privilege.

17

18  **REQUEST FOR DOCUMENTS NO. 13:**

19       All DOCUMENTS evidencing, referring or relating to the sale of GRAMMY

20  TICKETS by YOU to any PERSON.

21  **RESPONSE TO REQUEST FOR DOCUMENTS NO. 13:**

22       RESPONSE: Defendant, On Point, incorporates the General Objections as

23  though fully set forth herein.

24       On Point objects to this Request on the grounds that it is overbroad, vague,

25  unduly burdensome, and not relevant to any claim or defense.

26       On Point further objects to the extent this request seeks confidential

27  information, proprietary business information, or trade secret information, or

28

information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

### The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1. On Point withdrew all objections except trade secret.

Information relating to the unlawful sale of GRAMMY tickets by On Point is not a trade secret. The names of purchasers, the purchase price, and the seat locations are not trade secrets. This information was necessarily disclosed to the purchasers. The information does not fall within the any of the above-mentioned categories of trade secrets. On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

### On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

1       The Recording Academy's contention:

2           This information was necessary to disclose to the

3           purchasers

4   as a purported basis for waiver of trade secret privilege to customer lists is

5   untenable.  The holder of a trade secret privilege in a customer list always makes

6   financial disclosures to customers. If disclosures of purchase price, seat locations,

7   and the name of purchasers, were not protected, then no business would be entitled

8   to assert trade secret privilege against efforts of its competitors to obtain such

9   valuable information and use it for their own benefit in their own businesses without

10  having to pay the price to develop it.

11

12  **REQUEST FOR DOCUMENTS NO. 14:**

13      All DOCUMENTS evidencing, referring or relating to YOUR purchase

14  and/or receipt of GRAMMY TICKETS from any PERSON.

15  **RESPONSE TO REQUEST FOR DOCUMENTS NO. 14:**

16      RESPONSE: Defendant, On Point, incorporates the General Objections as

17  though fully set forth herein.

18      On Point objects to this Request on the grounds that it is overbroad, vague,

19  unduly burdensome, and not relevant to any claim or defense.

20      On Point further objects to the extent this request seeks confidential

21  information, proprietary business information, or trade secret information, or

22  information protected from disclosure by constitutional, statutory, or common law

23  right to privacy.

24      On Point further objects to the extent this request seeks information protected

25  from disclosure by the attorney-client privilege and/or the attorney work product

26  doctrine.

27

28

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Information relating to On Point's purchase and/or receipt of GRAMMY tickets is not a trade secret.  The information was known to On Point's ticket sources, who were members of The Recording Academy or middlemen such as other ticket brokers.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

**On Point's Position**

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

**REQUEST FOR DOCUMENTS NO. 15:**

All DOCUMENTS evidencing, referring or relating to any travel packages sold by YOU in connection with the sale of GRAMMY TICKETS.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 15:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

<strong><u>The Recording Academy's Position</u></strong>

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Information regarding On Point's travel packages sold to GRAMMY ticket purchasers, including the profits On Point received from the unlawful sale of travel packages that included GRAMMY tickets, is not a trade secret.  The prices or the travel packages were probably advertised on the Internet, and were necessarily disclosed to nonparties involved in the transaction, *e.g.*, credit card companies, the purchasers, etc.  On Point's profit on the sale of travel packages that included GRAMMY tickets is an element of damages and constitutes unjust enrichment.  The packages would not have been sold but for the inclusion of GRAMMY tickets.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

**On Point's Position**

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

The Recording Academy's claim:

> On Point's profit on the sale of travel packages that included The Recording Academy tickets is an element of damages that constitutes unjust enrichment

is a false statement of the law and violates on its face Federal and State (California and Texas) Anti-trust laws.  The Recording Academy has no such interest in the tickets at issue which allows The Recording Academy to recover as damages purported profits from other services which were coupled with the right to attend a The Recording Academy-sponsored entertainment event.

**REQUEST FOR DOCUMENTS NO. 16:**

All DOCUMENTS evidencing, referring or relating to money or other consideration YOU paid to any PERSON for GRAMMY TICKETS, including without limitation receipts, checks, bank statements, credit card receipts, credit card statements, and wire transfers.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 16:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

1   On Point objects to this Request on the grounds that it is overbroad, vague,

2   unduly burdensome, and not relevant to any claim or defense.

3   On Point further objects to the extent this request seeks confidential

4   information, proprietary business information, or trade secret information, or

5   information protected from disclosure by constitutional, statutory, or common law

6   right to privacy.

7   On Point further objects to the extent this request seeks information protected

8   from disclosure by the attorney-client privilege and/or the attorney work product

9   doctrine.

10                      **The Recording Academy's Position**

11   The Recording Academy incorporates sections I through V above regarding

12   its position on the response to Document Request No. 1.  On Point withdrew all

13   objections except trade secret.

14   The amount of money On Point paid to its sources of GRAMMY tickets is

15   not a trade secret.  This information will establish the amount of On Point's profit

16   from the unlawful sale of GRAMMY tickets.  The price was necessarily disclosed to

17   nonparties involved in the transaction, *e.g.*, credit card companies, the sources, etc.

18   The information does not fall within the any of the above-mentioned categories of

19   trade secrets.

20   The Court should order On Point to serve an amended response stating that it

21   will produce all responsive documents in its possession, custody, or control, and to

22   produce the responsive documents, by February 24, 2009.

23                          **On Point's Position**

24   Defendant On Point restates all of the allegations, contentions, and argument,

25   contained in its Statement of Position with respect to Request for Documents No. 1

26   as if fully set forth herein.

27   The boiler plate objections which Plaintiff The Recording Academy lists as

28   part of Defendant On Point's response contain the same language as that utilized by

47

1    The Recording Academy in its purported responses to Defendant's Request for

2    Production and The Recording Academy's Answers to Defendant's Written

3    Interrogatories.

4          The Recording Academy's claim:

5                This information will establish the amount of On Point's

6                profit from the unlawful sale of The Recording Academy

7                tickets. The price would necessarily disclose to non-parties

8                involved in the transaction e.g. credit card companies etc.

9                The information does not fall within any of the above-

10               mentioned categories or trade secrets –

11   is an incorrect statement of the law.  Trade secret protection extends to financial

12   information developed from On Point's proprietary sources and at On Point expense

13   which would financially and unfairly benefit On Point's competitors if disclosed.

14

15   **REQUEST FOR DOCUMENTS NO. 17:**

16         All DOCUMENTS evidencing, referring or relating to money or other

17   consideration any PERSON paid to YOU for GRAMMY TICKETS, including

18   without limitation receipts, checks, bank statements, credit card receipts, credit card

19   statements, account ledgers, and wire transfers.

20   **RESPONSE TO REQUEST FOR DOCUMENTS NO. 17:**

21         RESPONSE: Defendant, On Point, incorporates the General Objections as

22   though fully set forth herein.

23         On Point objects to this Request on the grounds that it is overbroad, vague,

24   unduly burdensome, and not relevant to any claim or defense.

25         On Point further objects to the extent this request seeks confidential

26   information, proprietary business information, or trade secret information, or

27   information protected from disclosure by constitutional, statutory, or common law

28   right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

### The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

The amount of money a purchaser paid to On Point for GRAMMY tickets is not a trade secret.  On Point necessarily disclosed the prices to the purchasers, and probably advertised the prices on its website.  The information does not fall within the any of the above-mentioned categories of trade secrets.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

### On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Writ ten Interrogatories.

The Recording Academy's statement:

> On Point necessarily disclosed the prices to the purchasers
> and probably advertised the prices on its web site, the
> information does not fall within any of the above-
> mentioned categories of trade secrets

is an incorrect statement of the law.  Trade secret protection extends to financial information developed from On Point's proprietary sources and at On Point expense which would financially and unfairly benefit On Point's competitors if disclosed.

**REQUEST FOR DOCUMENTS NO. 18:**

All DOCUMENTS evidencing, referring or relating to money or other consideration any PERSON paid to YOU for travel packages that included GRAMMY TICKETS, including without limitation receipts, checks, bank statements, credit card receipts, credit card statements, account ledgers, and wire transfers.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 18:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or, common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Information regarding On Point's travel packages sold to GRAMMY ticket purchasers, including the profits On Point received from the unlawful sale of travel

packages that included GRAMMY tickets, is not a trade secret.  The prices or the travel packages were probably advertised on the Internet, and were necessarily disclosed to nonparties involved in the transaction, *e.g.*, credit card companies, the purchasers, etc.  On Point's profit on the sale of travel packages that included GRAMMY tickets is an element of damages and constitutes unjust enrichment.  The packages would not have been sold but for the inclusion of GRAMMY tickets.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

## On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

The Recording Academy's statement:

> The prices of travel packages were probably advertised on
> the internet and were necessary to disclose to non-parties
> involved in the transaction e.g. credit card companies, the
> purchaser, etc.

was offered, presumably, to establish a waiver of the trade secret privilege.  No trade secret privilege to financial information concerning pricing, sales, marketing, or the like, would be viable if doing business with third parties to develop such proprietary information and knowledge constituted a waiver in advance of any claim to trade secret privilege.  Nor can The Recording Academy seek, in this case, to

51

recover any profits allegedly obtained from the sale of travel or entertainment services in conjunction with a The Recording Academy ticket. Such claim by The Recording Academy violates Federal and State Anti-Trust laws and exposes the true purpose of The Recording Academy's suit – to stifle competition in the sale of its tickets in a manner violative of California and Texas public policy prohibiting restrictions on alienation and interference with the free performance of contracts.

**REQUEST FOR DOCUMENTS NO. 19:**

Copies of all business licenses and permits issued to YOU by a governmental authority authorizing YOU to do business as a ticket broker.

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 19:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Whether On Point is licensed by a governmental body and the identity of that body is not a trade secret.  It is public information.

1   The Court should order On Point to serve an amended response stating that it

2   will produce all responsive documents in its possession, custody, or control, and to

3   produce the responsive documents, by February 24, 2009.

4   **On Point's Position**

5   Defendant On Point restates all of the allegations, contentions, and argument,

6   contained in its Statement of Position with respect to Request for Documents No. 1

7   as if fully set forth herein.

8   The boiler plate objections which Plaintiff The Recording Academy lists as

9   part of Defendant On Point's response contain the same language as that utilized by

10   The Recording Academy in its purported responses to Defendant's Request for

11   Production and The Recording Academy's Answers to Defendant's Written

12   Interrogatories.

13   The written objections to this Request for Documents which were withdrawn

14   by Defendant On Point contained the same language as those objections asserted by

15   Plaintiff The Recording Academy to Defendant On Point's Request for Production

16   and Written Interrogatories which sought information and evidence concerning

17   Plaintiff The Recording Academy's sale and resale of tickets to The Recording

18   Academy sponsored entertainment events and The Recording Academy's efforts, if

19   any, to enforce the restrictions against resale which it purports to rely on against its

20   members, special invited guests, and/or corporate sponsors.

21   Defendant On Point further states that the State of Texas, where it is located,

22   does not license ticket brokers and, further, that Defendant On Point is not a ticket

23   broker but, instead, purchases its tickets for resale from ticket brokers.

24

25   **REQUEST FOR DOCUMENTS NO. 20:**

26   All DOCUMENTS that support YOUR first affirmative defense of

27   "illegality" in which YOU allege that "the scheme of unilateral restrictions which

28

Plaintiff GRAMMY attempts to place on the retransfer or resale of its permits or licenses (tickets) to enter its events is unlawful, illegal, and unenforceable."

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 20:**

RESPONSE: Defendant, On Point, incorporates the General objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

On Point additionally objects to the Request for Production of Documents, as worded, as it purports to require Defendant, On Point, to marshal evidence and to provide Plaintiff with Defendant's trial strategy.

<u>**The Recording Academy's Position**</u>

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires On Point to provide to The Recording Academy a copy of all documents, including electronically stored information, that On Point has in its possession, custody, or control that support its defenses.  On Point's assertion that providing documents that support this defense requires it to "marshal evidence" and disclose its "trial strategy" is specious.

1    The Court should order On Point to serve an amended response stating that it

2    will produce all responsive documents in its possession, custody, or control, and to

3    produce the responsive documents, by February 24, 2009.

4                                    **On Point's Position**

5        Defendant On Point restates all of the allegations, contentions, and argument,

6    contained in its Statement of Position with respect to Request for Documents No. 1

7    as if fully set forth herein.

8        The boiler plate objections which Plaintiff The Recording Academy lists as

9    part of Defendant On Point's response contain the same language as that utilized by

10   The Recording Academy in its purported responses to Defendant's Request for

11   Production and The Recording Academy's Answers to Defendant's Written

12   Interrogatories.

13       Requests for Production of all documents without any specificity constitute an

14   unfair fishing expedition under the Federal Rules of Civil Procedure.

15       If Plaintiff The Recording Academy's request had been tailored more

16   narrowly, Defendant On Point would still be unable to comply with the request.  The

17   information concerning The Recording Academy's sale and resale of its own tickets

18   and its enforcement, selective or otherwise, of purported restrictions against resale

19   which it claims prevents the resale of tickets by its members, special invitees, or

20   corporate sponsors was never produced by The Recording Academy despite request

21   for discovery of such information contained in Defendant On Point's First Request

22   for Production and First Set of Written Interrogatories served on Plaintiff The

23   Recording Academy.

24       Based on Plaintiff The Recording Academy's refusal to comply with

25   Defendant On Point's discovery requests, Defendant On Point has no documents in

26   its possession, custody, and control, relevant to prove Plaintiff The Recording

27   Academy's sale, resale, and enforcement of alleged restrictions against resale

28   activities.  Defendant On Point's duty to respond should be deferred until Plaintiff

1   The Recording Academy responds to On Point's discovery and/or discovery is

2   complete.

3

4   **REQUEST FOR DOCUMENTS NO. 21:**

5          All DOCUMENTS that support YOUR second affirmative defense of

6   "unclean hands and bad faith" in which YOU allege that "the manner in which

7   Plaintiff GRAMMY has been operating with respect to the permits or licenses

8   (tickets) it issues will establish its bad faith and unclean hands and will operate as a

9   bar to any equitable relief it seeks in this case."

10  **RESPONSE TO REQUEST FOR DOCUMENTS NO. 21:**

11         RESPONSE: Defendant, On Point, incorporates the General objections as

12  though fully set forth herein.

13         On Point objects to this Request on the grounds that it is overbroad, vague,

14  unduly burdensome, and not relevant to any claim or defense.

15         On Point further objects to the extent this request seeks confidential

16  information, proprietary business information, or trade secret information, or

17  information protected from disclosure by constitutional, statutory, or common law

18  right to privacy.

19         On Point further objects to the extent this request seeks information protected

20  from disclosure by the attorney-client privilege and/or the attorney work product

21  doctrine.

22         On Point additionally objects to the Request for Production of Documents, as

23  worded, as it purports to require Defendant, on (Point, to marshal evidence and to

24  provide Plaintiff with-Defendant's trial strategy.

25                      **The Recording Academy's Position**

26         The Recording Academy incorporates sections I through V above regarding

27  its position on the response to Document Request No. 1.  On Point withdrew all

28  objections except trade secret.

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires On Point to provide to The Recording Academy a copy of all documents, including electronically stored information, that On Point has in its possession, custody, or control that support its defenses.  On Point's assertion that providing documents that support this defense requires it to "marshal evidence" and disclose its "trial strategy" is specious.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

### On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.  Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 20 as if fully set forth herein.


**REQUEST FOR DOCUMENTS NO. 22:**

All DOCUMENTS that support YOUR third affirmative defense of "estoppel and breach of contract" in which YOU allege that "the various actions which Plaintiff GRAMMY has performed or taken with respect to its licensees, members, or special invited guests, with respect to transfer, retransfer, or resale, of its permits or licenses (tickets) to enter its event work an estoppel against Plaintiff GRAMMY and prevent Plaintiff GRAMMY from attempting to enforce any anti-alienability restrictions which it purports to enforce with respect to its permits or licenses

1  (tickets).  Further Plaintiff GRAMMY has breached the permits or licenses it

2  purports to en-force [sic]."

3  **RESPONSE TO REQUEST FOR DOCUMENTS NO. 22:**

4  RESPONSE: Defendant, On Point, incorporates the General Objections as

5  though fully set forth herein.

6  On Point objects to this Request on the grounds that it is overbroad, vague,

7  unduly burdensome, and not relevant to any claim or defense.

8  On Point further objects to the extent this request seeks confidential

9  information, proprietary business information, or trade secret information, or

10  information protected from disclosure by constitutional, statutory, or common law

11  right to privacy.

12  On Point further objects to the extent this request seeks information protected

13  from disclosure by the attorney-client privilege and/or the attorney work product

14  doctrine.

15  On Point additionally objects to the Request for Production of Documents, as

16  worded, as it purports to require Defendant, On Point, to marshal evidence and to

17  provide Plaintiff with Defendant's trial strategy.

18  **The Recording Academy's Position**

19  The Recording Academy incorporates sections I through V above regarding

20  its position on the response to Document Request No. 1.  On Point withdrew all

21  objections except trade secret.

22  Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires On Point to provide

23  to The Recording Academy a copy of all documents, including electronically stored

24  information, that On Point has in its possession, custody, or control that support its

25  defenses.  On Point's assertion that providing documents that support this defense

26  requires it to "marshal evidence" and disclose its "trial strategy" is specious.

27

28

1   The Court should order On Point to serve an amended response stating that it
2   will produce all responsive documents in its possession, custody, or control, and to
3   produce the responsive documents, by February 24, 2009.

4   **<u>On Point's Position</u>**

5   Defendant On Point restates all of the allegations, contentions, and argument,
6   contained in its Statement of Position with respect to Request for Documents No. 1
7   as if fully set forth herein.

8   The boiler plate objections which Plaintiff The Recording Academy lists as
9   part of Defendant On Point's response contain the same language as that utilized by
10  The Recording Academy in its purported responses to Defendant's Request for
11  Production and The Recording Academy's Answers to Defendant's Written
12  Interrogatories.

13  Defendant On Point restates all of the allegations, contentions, and argument,
14  contained in its Statement of Position with respect to Request for Documents No. 20
15  as if fully set forth herein.

16

17  **REQUEST FOR DOCUMENTS NO. 23:**

18  All DOCUMENTS that support YOUR fourth affirmative defense of
19  "waiver" in which YOU allege that "the actions of Plaintiff GRAMMY with respect
20  to the restrictions on alienability it purports to rely on, in this action, and impose
21  against its licensees, members, and special invited guests, have been waived by its
22  own inequitable conduct and breach of implied conditions."

23  **RESPONSE TO REQUEST FOR DOCUMENTS NO. 23:**

24  RESPONSE: Defendant, On Point, incorporates the General Objections as
25  though fully set forth herein.

26  On Point objects to this Request on the grounds that it is overbroad, vague,
27  unduly burdensome, and not relevant to any claim or defense.

28

1   On Point further objects to the extent this request seeks confidential
2   information, proprietary business information, or trade secret information, or
3   information protected from disclosure by constitutional, statutory, or common law
4   right to privacy.

5   On Point further objects to the extent this request seeks information protected
6   from disclosure by the attorney-client privilege and/or the attorney work product
7   doctrine.

8   On Point additionally objects to the Request for Production of Documents, as
9   worded, as it purports to require Defendant, On Point, to marshal evidence and to
10  provide Plaintiff with Defendant's trial strategy.

11  **The Recording Academy's Position**

12  The Recording Academy incorporates sections I through V above regarding
13  its position on the response to Document Request No. 1.  On Point withdrew all
14  objections except trade secret.

15  Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires On Point to provide
16  to The Recording Academy a copy of all documents, including electronically stored
17  information, that On Point has in its possession, custody, or control that support its
18  defenses.  On Point's assertion that providing documents that support this defense
19  requires it to "marshal evidence" and disclose its "trial strategy" is specious.

20  The Court should order On Point to serve an amended response stating that it
21  will produce all responsive documents in its possession, custody, or control, and to
22  produce the responsive documents, by February 24, 2009.

23  **On Point's Position**

24  Defendant On Point restates all of the allegations, contentions, and argument,
25  contained in its Statement of Position with respect to Request for Documents No. 1
26  as if fully set forth herein.  The boiler plate objections which Plaintiff The
27  Recording Academy lists as part of Defendant On Point's response contain the same
28  language as that utilized by The Recording Academy in its purported responses to

Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 20 as if fully set forth herein.

**REQUEST FOR DOCUMENTS NO. 24:**

All DOCUMENTS that support YOUR fifth affirmative defense of "adequate remedy at law" in which YOU allege that "Plaintiff GRAMMY has an adequate remedy at law, but has failed to pursue same.  Thus, Plaintiff GRAMMY's equitable relief it seeks in its Complaint is barred."

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 24:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

On Point additionally objects to the Request for Production of Documents, as worded, as it purports to require Defendant, On Point, to marshal evidence and to provide Plaintiff with Defendant's trial strategy.

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires On Point to provide to The Recording Academy a copy of all documents, including electronically stored information, that On Point has in its possession, custody, or control that support its defenses.  On Point's assertion that providing documents that support this defense requires it to "marshal evidence" and disclose its "trial strategy" is specious.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

**On Point's Position**

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 20 as if fully set forth herein.

**REQUEST FOR DOCUMENTS NO. 25:**

All DOCUMENTS that support YOUR sixth affirmative defense of "non est factum" in which YOU allege that "the industry standard concerning sale of

1   permissions and licenses to enter events coupled with Plaintiff GRAMMY's actions

2   which are either consistent therewith, or acquiesce therein, prove that any of the

3   statements allegedly made by Defendant On Point, by advertising or otherwise, as

4   alleged in Plaintiff GRAMMY's Complaint, if made, were 'true in fact' and

5   therefore not misleading."

6   **RESPONSE TO REQUEST FOR DOCUMENTS NO. 25:**

7        RESPONSE: Defendant, On Point, incorporates the General 'Objections as

8   though fully set forth herein.

9        On Point objects to this Request on the grounds that it is overbroad, vague,

10  unduly burdensome, and not relevant to any claim or defense.

11       On Point further objects to the extent this request seeks confidential

12  information, proprietary business information, or trade secret information, or

13  information protected from disclosure by constitutional, statutory, or common law

14  right to privacy.

15       On Point further objects to the extent this request seeks information protected

16  from disclosure by the attorney-client privilege and/or the attorney work product

17  doctrine.

18       On Point additionally objects to the Request for Production of Documents, as

19  worded, as it purports to require Defendant, On Point, to marshal evidence and to

20  provide Plaintiff with Defendant's trial strategy.

21                          **The Recording Academy's Position**

22       The Recording Academy incorporates sections I through V above regarding

23  its position on the response to Document Request No. 1.  On Point withdrew all

24  objections except trade secret.

25       Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires On Point to provide

26  to The Recording Academy a copy of all documents, including electronically stored

27  information, that On Point has in its possession, custody, or control that support its

28

defenses.  On Point's assertion that providing documents that support this defense requires it to "marshal evidence" and disclose its "trial strategy" is specious.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

<u>**On Point's Position**</u>

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 20 as if fully set forth herein.


**REQUEST FOR DOCUMENTS NO. 26:**

All DOCUMENTS that support YOUR seventh affirmation defense of "anti-trust violations" in which YOU allege that "the manner in which Plaintiff GRAMMY is attempting to enforce its alleged contractual rights restricting alienability of the permits or licenses (tickets) to enter its events violates the anti-trust laws of the United States and that therefore such restrictions on alienability are unenforceable."

**RESPONSE TO REQUEST FOR DOCUMENTS NO. 26:**

RESPONSE: Defendant, On Point, incorporates the General Objections as though fully set forth herein.

On Point objects to this Request on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

On Point further objects to the extent this request seeks confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy.

On Point further objects to the extent this request seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

On Point additionally objects to the Request for Production of Documents, as worded, as it purports to require Defendant, On Point, to marshal evidence and to provide Plaintiff with Defendant's trial strategy.

Defendant, On Point, further objects to this request as worded in that On Point's answer does not contain a "seventh affirmation" defense of anti-trust violations.

### The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Document Request No. 1.  On Point withdrew all objections except trade secret.

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) requires On Point to provide to The Recording Academy a copy of all documents, including electronically stored information, that On Point has in its possession, custody, or control that support its defenses.  On Point's assertion that providing documents that support this defense requires it to "marshal evidence" and disclose its "trial strategy" is specious.  So is the purported inability to understand that "seventh affirmation" was meant to read "seventh affirmative" defense.

The Court should order On Point to serve an amended response stating that it will produce all responsive documents in its possession, custody, or control, and to produce the responsive documents, by February 24, 2009.

### On Point's Position

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 1 as if fully set forth herein.

The boiler plate objections which Plaintiff The Recording Academy lists as part of Defendant On Point's response contain the same language as that utilized by The Recording Academy in its purported responses to Defendant's Request for Production and The Recording Academy's Answers to Defendant's Written Interrogatories.

Defendant On Point restates all of the allegations, contentions, and argument, contained in its Statement of Position with respect to Request for Documents No. 20 as if fully set forth herein.

DATED: January 27, 2009                Robert H. Horn
                                       PROSKAUER ROSE LLP


                                       By: _____/s/_____
                                                    Robert H. Horn

                                       Attorneys for Plaintiff
                                       National Academy of Recording Arts &
                                       Sciences, Inc.

DATED: January 27, 2009                Marcia L. Brewer
                                       Joe Alfred Izen, Jr.
                                       PROSKAUER ROSE LLP


                                       By: _____
                                                    Joe Alfed Izen, Jr.

                                       Attorneys for Defendant
                                       On Point Events, LP

1   The Court should order On Point to serve an amended response stating that it

2   will produce all responsive documents in its possession, custody, or control, and to

3   produce the responsive documents, by February 20, 2009.

4   **On Point's Position**

5   Defendant On Point restates all of the allegations, contentions, and argument,

6   contained in its Statement of Position with respect to Request for Documents No. 1

7   as if fully set forth herein.

8   The boiler plate objections which Plaintiff The Recording Academy lists as

9   part of Defendant On Point's response contain the same language as that utilized by

10  The Recording Academy in its purported responses to Defendant's Request for

11  Production and The Recording Academy's Answers to Defendant's Written

12  Interrogatories.

13  Defendant On Point restates all of the allegations, contentions, and argument,

14  contained in its Statement of Position with respect to Request for Documents No. 20

15  as if fully set forth herein.

16  DATED: January 26, 2009                 Robert H. Horn
                                            PROSKAUER ROSE LLP

17

18
                                            By: _____/s/_____
19                                                   Robert H. Horn

20                                          Attorneys for Plaintiff
                                            National Academy of Recording Arts &
21                                          Sciences, Inc.

22  DATED: January 27, 2009                 Marcia L. Brewer
                                            Joe Alfred Izen, Jr.
23                                          PROSKAUER ROSE LLP

24

25
                                            By: _____
26                                                 Joe Alfred Izen, Jr.

27                                          Attorneys for Defendant
                                            On Point Events, LP
28