1  Robert H. Horn, SBN 137410
   rhorn@proskauer.com
2  PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
3  Los Angeles, California  96007
   Telephone (310) 557-2900
4  Fax (310) 557-2193

5  Attorneys for Plaintiff
   National Academy of Recording Arts
6  & Sciences, Inc.

7

8                UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 NATIONAL ACADEMY OF                 ) Case No. CV 08-0856 DSF (Ex)
   RECORDING ARTS & SCIENCES, INC., )
12 a Delaware corporation,             )
                        Plaintiff,     ) **DISCOVERY MATTER**
13            v.                        )
   ON POINT EVENTS, LP, a Texas limited ) **JOINT STIPULATION**
14 partnership,                        ) **REGARDING PLAINTIFF'S**
                        Defendant.     ) **MOTION TO COMPEL**
15 _____     ) **FURTHER RESPONSES TO**
                                       ) **INTERROGATORIES;**
16
                                         **DECLARATION OF ROBERT H.**
17                                       **HORN**

18                                       **AFFIDAVIT OF JOE ALFRED**
                                         **IZEN, JR.**
19
                                         Date:       February 20, 2009
20                                       Time:       9:30 a.m.
                                         Ctrm:       20
21
22                                       Discovery Cutoff: March 2, 2009
                                         Pretrial Conf:    October 5, 2009
23                                       Trial:       November 3, 2009
24
25
26
27
28

CURRENT
12878600v2

# TABLE OF CONTENTS

**Page**

THE RECORDING ACADEMY'S INTRODUCTORY STATEMENT...................1

ON POINT EVENT'S INTRODUCTORY STATEMENT......................................2

SPECIFICATION OF ISSUES IN DISPUTE ...........................................................6

RESPONSE TO INTERROGATORY NO. 1: ..........................................................7

The Recording Academy's Position....................................................................7

I.     The Parties ...............................................................................................7

II.    On Point's Unlawful Sale of GRAMMY Tickets ............................................8

III.   The Requested Information Is Relevant to the Recording Academy's Claims.........................................................................................................10

IV.    On Point Withdrew All Objections Except for the Trade Secret Objection ...................................................................................................11

V.     Information Relating to On Point's Unlawful Sale of GRAMMY Tickets is Not a Trade Secret .......................................................................12

On Point's Position ...........................................................................................14

RESPONSE TO INTERROGATORY NO. 2: ........................................................24

The Recording Academy's Position..................................................................25

On Point's Position ...........................................................................................25

RESPONSE TO INTERROGATORY NO. 3: ........................................................26

The Recording Academy's Position..................................................................26

On Point's Position ...........................................................................................27

RESPONSE TO INTERROGATORY NO. 4: ........................................................27

The Recording Academy's Position..................................................................28

On Point's Position ...........................................................................................28

RESPONSE TO INTERROGATORY NO. 5: ........................................................29

The Recording Academy's Position..................................................................30

On Point's Position ...........................................................................................30

RESPONSE TO INTERROGATORY NO. 6: ........................................................31

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS (cont'd.)

**Page**

The Recording Academy's Position ....................................................................31

On Point's Position .........................................................................................32

RESPONSE TO INTERROGATORY NO. 7: ...................................................33

The Recording Academy's Position ....................................................................33

On Point's Position .........................................................................................34

RESPONSE TO INTERROGATORY NO. 8: ...................................................35

The Recording Academy's Position ....................................................................35

On Point's Position .........................................................................................36

RESPONSE TO INTERROGATORY NO. 9: ...................................................36

The Recording Academy's Position ....................................................................37

On Point's Position .........................................................................................37

RESPONSE TO INTERROGATORY NO. 10: .................................................38

The Recording Academy's Position ....................................................................38

On Point's Position .........................................................................................39

RESPONSE TO INTERROGATORY NO. 11: .................................................40

The Recording Academy's Position ....................................................................40

On Point's Position .........................................................................................41

RESPONSE TO INTERROGATORY NO. 12: .................................................42

The Recording Academy's Position ....................................................................42

On Point's Position .........................................................................................43

RESPONSE TO INTERROGATORY NO. 13: .................................................44

The Recording Academy's Position ....................................................................44

On Point's Position .........................................................................................45

RESPONSE TO INTERROGATORY NO. 14: .................................................47

The Recording Academy's Position ....................................................................47

On Point's Position .........................................................................................47

5480/54321-013
Current/12878600v2

1

## **TABLE OF CONTENTS** (cont'd.)

2

**Page**

3    RESPONSE TO INTERROGATORY NO. 15: .......................................................48

4    The Recording Academy's Position .......................................................48

5    On Point's Position .......................................................49

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## THE RECORDING ACADEMY'S INTRODUCTORY STATEMENT

Plaintiff National Academy of Recording Arts & Sciences, Inc. ("The Recording Academy®") is a not-for-profit company that presents the annual GRAMMY® Awards ceremony.  Defendant On Point Events LP ("On Point"), an online ticket broker, knows that the GRAMMY Awards ceremony is a private event, tickets are issued only to The Recording Academy's dues-paying members and invited guests, and tickets are nontransferable.  Nevertheless, On Point unlawfully advertised (using The Recording Academy's registered GRAMMY trademark without authorization) and sold GRAMMY tickets for its own profit.  On Point obtained GRAMMY tickets by inducing Recording Academy members or invited guests to breach their contractual obligation not to transfer the tickets, deceived members of the public by selling void tickets, and induced them to trespass the ceremony.  On Point has rebuffed The Recording Academy's demands that On Point cease its unlawful conduct.

The Recording Academy alleges violations of the Lanham Act (unfair competition and false advertising), unfair competition under state law, and inducing trespass.  The Recording Academy seeks a permanent injunction and damages.

The Recording Academy requests documents evidencing advertisements for the sale of GRAMMY tickets, communications with sources of GRAMMY tickets, the identities of ticket sources, communications with ticket purchasers, copies of tickets acquired and sold, money paid to ticket sources, money received from ticket purchasers, and accounting records relating to the purchase and sale of tickets, and all other documents relating to GRAMMY tickets.

On Point does not dispute that The Recording Academy's requests for documents seek relevant information that it can easily provide.  During the pre-motion conference of counsel On Point withdrew all of its objections except the trade secret objection.  The information is not a trade secret and, even if it were, On Point cannot properly withhold the information on that basis.  In June 2009, *at On*

1    *Point's request*, counsel for The Recording Academy prepared and delivered a

2    proposed stipulated protective order to ensure confidentiality.  On Point never

3    responded.  During the pre-motion conference The Recording Academy offered to

4    provide a letter representing that the information will be used only for purposes of

5    this litigation.  On Point still refused to provide the information.  On Point is simply

6    stonewalling to deprive The Recording Academy of the ability to prove its claims.

7        For these reasons, The Recording Academy respectfully requests that the

8    Court order On Point to answer the interrogatories providing fully and completely

9    without objection by February 24, 2009, given the March 2, 2009 discovery cut-off.

10                **ON POINT EVENT'S INTRODUCTORY STATEMENT**

11        On Point Events provides travel packages to various sports and entertainment

12   events both within and outside of the United States.

13        Air fare, other travel costs, and hotel and lodging as well as tour fees and

14   other travel services are included as part of the travel and entertainment packages

15   that On Point Events sells as well as tickets to particular sporting or entertainment

16   events.

17        On Point Events purchases tickets to its events through ticket brokers.

18        On Point Events has its principal offices in Houston, Texas.  On Point Events

19   conducts the majority of its sales efforts through web listings and sites on the

20   internet.

21        On Point Events' customers come from all over the world and are located in

22   most of the fifty United States.  On Point Events has customers in the State of

23   California.  The ticket brokers which Defendant On Point relies on as a source for

24   the sports and entertainment event tickets which On Point Events purchases and

25   resells obtain their tickets by direct purchase from the sports event or other

26   entertainment provider or from the secondary market for such tickets which exists as

27   a result of resale of tickets purchased from the direct sports or entertainment event

28   providers by members of the general public.

The State of Texas where Defendant, On Point Events, has its principal offices and downloads its orders for purchase of the travel entertainment packages it sells has no anti-scalping law.  Tickets may be freely resold  in Texas in the secondary market for prices higher than that paid to the direct seller or purveyor of the sports or entertainment events.  Like Texas, the State of California, has no anti-scalping law.  Once tickets are purchased from On Point Events by a customer over the internet, they are delivered by United States mail to the address provided by the purchaser.

Defendant, On Point Events, first became aware of The Recording Academy's complaints concerning possible resale of tickets which The Recording Academy distributes to its The Recording Academy entertainment events (which have been staged, recently, in the Staples Center in Los Angeles, California) when Defendant On Point received The Recording Academy's letter demanding that it cease and desist from selling, or offering to sell tickets to attend The Recording Academy events.  Prior to The Recording Academy's filing of suit approximately four letters were exchanged in which the parties set out their positions.  The Recording Academy claimed in its presuit letters that it was a charitable entity which placed restrictions on the resale of any tickets it sold or provided directly to its members, special invitees, or corporate sponsors.  The Recording Academy did not describe the terms of sale or distribution to special invitees or corporate sponsors.

When Defendant On Point refused to "cease and desist" from selling tickets to The Recording Academy events available for Defendant's repurchase in the secondary market, The Recording Academy filed the current suit which is pending before this Court.  After the service of The Recording Academy's Complaint, the parties conferred and after a time participated in drafting, drafted, and then submitted, a Joint Rule 26(a) Report.

1  Thereafter, The Recording Academy sent a First Set of Written
2  Interrogatories and a First Request for Production to Defendant, On Point Events.
3  Defendant, On Point Events, sent a First Set of Written Interrogatories and First
4  Request for Production to Plaintiff The Recording Academy.

5  Based on the final illness and ultimate death of the father of Defendant, On
6  Point Events' counsel, Joe Alfred Izen, Jr., which stretching from July through
7  September, 2008, Defendant, On Point sought and received an enlargement of time
8  within to respond to discovery.  Plaintiff The Recording Academy and Defendant,
9  On Point Events, submitted answers to interrogatories and responses to requests for
10 production.  Plaintiff The Recording Academy was the first to answer and respond.
11 Plaintiff The Recording Academy provided little voluntary discovery.  Its responses
12 to Defendant On Point's Requests for Production and Answers to written
13 interrogatories were replete with boiler plate relevancy objections and assertion of
14 trade secret and other privileges.

15 Shortly thereafter, Defendant On Point submitted answers and responses to
16 Plaintiff The Recording Academy' interrogatories and requests for production
17 which, for the most part, asserted, in written form, the same objections in the same
18 language as those previously put forth by Plaintiff The Recording Academy.

19 Apparently, dissatisfied with receiving responses to discovery containing the
20 same objections that The Recording Academy had asserted, Plaintiff, through The
21 Recording Academy's counsel, attorney Horn, requested a conference "in an effort
22 to resolve the discovery dispute."  As a result of the devastation wrought by
23 Hurricane Ike in the City of Houston, Texas, Defendant On Point's counsel, Joe
24 Alfred Izen, Jr., was without electric power from September 12 through September
25 28, 2008.  Defendant On Point's counsel was unable to resume his law practice due
26 to the damage sustained until on or about October 20, 2008.  On November 6, 2008,
27 Defendant On Point's counsel received a letter from Plaintiff's counsel, attorney
28 Horn, requesting a discovery conference be set.  On November 20, 2008 Defendant,

On Point Events', counsel, Joe Alfred Izen, Jr., responded to Mr. Horn's earlier letter and pointed out that Plaintiff The Recording Academy was using the assertion of privilege as a sword rather than a shield and, through use of trade secret and other privileges, was preventing full discovery of the issues that Plaintiff The Recording Academy had put at issue when it sued Defendant On Point.  Defendant On Point's counsel wrote another letter on December 1, 2008 responding to attorney Horn's efforts to set a conference date.

The parties finally agreed on a conference date of December 10, 2008.  On that date Defendant On Point's counsel served an extensive letter setting out On Point Events' position concerning discovery, the grounds upon which Defendant, On Point Events, was asserting privilege or objections to Plaintiff The Recording Academy' discovery and On Point Events' own dissatisfaction with the discovery objections and assertions of privilege asserted by Plaintiff The Recording Academy. True and correct copies of Defendant, On Point Events', letters of November 20, 2008 and December 1, 2008, and December 10, 2008, are attached to the Declaration of Joe Alfred Izen, Jr. submitted herewith as Exhibits C, D, and E.

Contrary to the Plaintiff The Recording Academy' claims, the prospect of obtaining a Protective Order was discussed between counsel for Plaintiff The Recording Academy and Defendant On Point.  Defendant On Point took the position, which was made clear to Plaintiff The Recording Academy, that Defendant On Point's first preference was that the parties waive all privilege and make all information concerning Plaintiff The Recording Academy' alleged enforcement of its restrictions on resale of its tickets and all pertinent information related thereto public and that Defendant On Point would disclose and make public all information concerning its purchase and resale of tickets to The Recording Academy events as part of its sale of sports and entertainment travel packages.  Defendant On Point informed Plaintiff The Recording Academy that its second preference was that the parties apply for and obtain a protective order which would allow mutual use of

1   such information but prevent its public disclosure if the parties could satisfy the

2   Court that the issuance of a protective order was warranted.

3           Defendant On Point, after conferring with Plaintiff The Recording Academy's

4   counsel, provided its web site advertisements which offered The Recording

5   Academy tickets for sale as part of its travel and entertainment packages.  Defendant

6   On Point received certain blank forms which Plaintiff The Recording Academy

7   claimed, through its counsel, that it utilized to sell and/or disseminate its tickets to

8   its members.  Up to the time of the filing of Plaintiff The Recording Academy'

9   Motion to Compel, Defendant On Point has received no information concerning any

10  alleged efforts by Plaintiff The Recording Academy to enforce the purported

11  restrictions on resale against its members, its special invitees, or corporate sponsors,

12  other than disclosure of the case numbers and style of several injunction suits in

13  which Plaintiff The Recording Academy' counsel stated Plaintiff The Recording

14  Academy obtained voluntary injunctions against certain parties preventing offer or

15  sale of tickets to The Recording Academy events.

16          The parties were unable to resolve their discovery disputes.  Both Plaintiff

17  The Recording Academy and Defendant On Point are moving to compel discovery.

18  Defendant On Point takes the position that it is entitled to, at the very least,

19  reciprocal discovery from Plaintiff The Recording Academy and that Plaintiff The

20  Recording Academy can not enforce restrictions on alienation or contractual

21  provisions prohibiting resale of its tickets when The Recording Academy violates

22  the same provisions that it purports to enforce against its members or third parties.

23

24          **SPECIFICATION OF ISSUES IN DISPUTE**

25  **INTERROGATORY NO. 1:**

26          State all dates on which YOU offered to sell GRAMMY TICKETS on YOUR

27  website www.On Pointevents.com.

28

**RESPONSE TO INTERROGATORY NO. 1:**

      ANSWER:  Defendant, On Point, incorporates the General Objections as though fully set forth herein.  On Point objects to this interrogatory on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

      Defendant, On Point, further objects on the grounds that this interrogatory seeks confidential information, proprietary business information, trade secret information, and/or information protected from disclosure by constitutional, statutory, or common law right to privacy.

      Defendant, On Point, further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

### The Recording Academy's Position

**I.    The Parties**

      The Recording Academy alleges in the complaint that is a Delaware not-for-profit corporation with over 18,000 members.  For over 50 years The Recording Academy has represented the individuals who contribute to the creation and exploitation of recorded music, including recording artists, musicians, songwriters and record producers.  Among other activities, The Recording Academy presents the GRAMMY Awards, the only peer-presented awards that honor artistic achievement in the music industry.  The annual GRAMMY Awards ceremony is telecast throughout the world.  (Complaint ¶ 1.)

      The Recording Academy provides charitable services to the music community through MusiCares® and The GRAMMY Foundation®.  MusiCares provides a safety net of critical assistance for music people in times of need.  Its services and resources cover a wide range of financial, medical and personal emergencies.  MusiCares also focuses the resources and attention of the music industry on human service issues that directly impact the health and welfare of the music community.

The GRAMMY Foundation seeks to cultivate the understanding, appreciation and advancement of the contribution of recorded music to American culture.  It accomplishes this mission through programs and activities that engage the music industry and cultural community as well as the general public.  For example, the GRAMMY Foundation works in partnership year-round with The Recording Academy to bring national attention to important issues such as the value and impact of music and arts education and the urgency of preserving our rich cultural heritage.

The Recording Academy further alleges that On Point owns and operates the website www.On PointEvents.com.  On Point is a ticket broker for entertainment, sporting and other events, and offers such tickets for sale and sell such tickets at a substantial premium above the face value, sometimes as part of entertainment packages.  (Complaint ¶¶ 3-4.)

## II.   On Point's Unlawful Sale of GRAMMY Tickets

The Recording Academy alleges that its GRAMMY Awards ceremony telecast attracts approximately 25 million viewers in the United States and approximately 600 million viewers in the rest of the world.  The biggest names in the entertainment world attend the ceremony.  Attendance in person is a highly sought-after privilege and, for music fans, a cause for great excitement.  The Recording Academy offers tickets on a restricted basis only to its eligible members and their invited guests, and The Recording Academy's invited guests and official sponsors.  (Complaint ¶ 16.)

Tickets to the GRAMMY Awards ceremony are not for sale to the general public.  Each GRAMMY ticket states on its face:

> This ticket may not be transferred or re-sold and the rights
> granted herein may not be assigned.  No promotional,
> commercial, advertising or other trade use may be made
> without the express written consent of The Recording

1    Academy.  Tickets obtained from unauthorized sources or

2    in contravention of the terms and conditions of this ticket

3    or applicable law will not be honored, and their holders

4    shall be deemed trespassers."  Each ticket transferred or

5    re-sold without such permission is void.

6  (Complaint ¶ 17; Horn Decl. ¶ 7, Ex. B.)

7       Each member of The Recording Academy who is offered the opportunity to

8  buy a limited number of tickets is required to sign and submit an Academy Member

9  Order Form agreeing to the following terms:

10    Tickets to Recording Academy events, including but not

11    limited to the GRAMMY Awards, are for use by the

12    account holder and its invited guest(s) only, are not

13    transferable by account holder or any of its invited guests,

14    and may not be sold, otherwise transferred or used for any

15    other purpose, including promotional, commercial,

16    advertising, or other trade purposes without the express

17    written consent of The Recording Academy.  Tickets sold,

18    otherwise transferred or used in violation of this policy

19    shall be deemed revoked and void, and their bearers

20    deemed trespassers at all Recording Academy events.

21  (Complaint ¶ 18; Horn Decl. ¶ 8, Ex. C.)  Comparable restrictions govern the

22  distribution of tickets to The Recording Academy's official sponsors.

23       To further emphasize the strict prohibition against the unauthorized sale or

24  transfer of tickets, when an invitee of The Recording Academy picks up GRAMMY

25  Awards tickets, the invitee is required to sign a Ticket Release Form by which the

26  invitee again agrees to the above quoted language.  (Complaint ¶ 19; Horn Decl. ¶ 9,

27  Ex. D.)

28

1        Notwithstanding the prohibition against unauthorized sales and transfers of

2 GRAMMY Awards tickets, On Point has advertised and sold to the unwitting public

3 tickets to the GRAMMY Awards ceremony knowing that the tickets are void and

4 subject to deactivation, and that the purchasers will be trespassers.  On Point is

5 perpetrating a fraud on the public because only The Recording Academy is

6 authorized to sell or transfer GRAMMY tickets.  (Complaint ¶ 20.)

7        Notwithstanding the prohibition against unauthorized sales and transfers of

8 GRAMMY Awards tickets, On Point has advertised and sold to the unwitting public

9 tickets to the GRAMMY Awards ceremony knowing that the tickets are void and

10 subject to deactivation, and that the purchasers will be trespassers.  On Point is

11 perpetrating a fraud on the public because only The Recording Academy is

12 authorized to sell or transfer GRAMMY tickets.  (Complaint ¶ 20.)

13 **III.**    **The Requested Information Is Relevant to the Recording Academy's**

14     **Claims**

15        On February 7, 2008, The Recording Academy filed the complaint for false

16 advertising, unfair competition, interference with contractual relationships, unfair or

17 deceptive business practices under state law, and inducement of trespass arising out

18 of false and misleading statements.  The Recording Academy alleges that On Point

19 made and continues to make unauthorized offers for sale and sales of tickets to the

20 GRAMMY Awards ceremony.  The Recording Academy seeks damages and a

21 permanent injunction against the advertising and sale of GRAMMY tickets.

22        The key evidence needed to prove these claims include:

23      •    On Point's records concerning its advertisements and sale of

24          GRAMMY tickets

25      •    Communications with sources of GRAMMY tickets

26      •    Identities of ticket sources

27      •    Communications with purchasers of GRAMMY tickets

28      •    Identities of GRAMMY ticket purchasers

1  •   Copies of GRAMMY tickets acquired and sold

2  •   Information evidencing money paid to GRAMMY ticket sources

3  •   Information evidencing money received from GRAMMY ticket

4      purchasers

5  •   Accounting information relating to the purchase and sale of GRAMMY

6      tickets

**IV.   On Point Withdrew All Objections Except for the Trade Secret**

**Objection**

On November 6, 2008, The Recording Academy requested an in-person meeting within 10 days pursuant to Local Rule 37-1.  Because On Point's counsel did not agree to meet within the prescribed time period, the meeting did not occur until December 10, 2008.  (Horn Decl. ¶ 16, Ex. F.)

At the meeting, On Point withdrew ***all*** of its objections except for trade secret confidentiality.  On Point conceded that the requested information is relevant to the claims and that it would not be burdensome to provide answers.  (Horn Decl. ¶ 17.)

Importantly, The Recording Academy had previously offered to maintain the information as confidential and to use it only for purposes of this litigation (except to the extent The Recording Academy may seek to take action against On Point's ticket sources, including The Recording Academy members and invited guests who sold their GRAMMY tickets in violation of their contract with The Recording Academy).  On June 24, 2008, *at On Point's request*, The Recording Academy prepared and delivered a draft proposed protective order.  Almost six months later, On Point has not commented on or signed the proposed protective order.  (Horn Decl. ¶ 13.)  The Court should not permit On Point to leverage its longstanding refusal to stipulate to a protective order as a basis for not responding to discovery that it admits is relevant to the claims.

V.    **Information Relating to On Point's Unlawful Sale of GRAMMY Tickets is Not a Trade Secret**

Under Fed. R. Civ. P. 26(c)(1)(G), the party opposing discovery must show that (a) the information is a "trade secret or other confidential research, development, or commercial information" and (b) disclosure of the information would be harmful to the party's interest in the information. *In re Agent Orange Prod. Liab. Litig.*, 104 F.R.D. 559, 574 (E.D.N.Y. 1985). The burden then shifts to the party seeking discovery to show that the information is relevant to a claim or defense or the subject matter of the lawsuit and is necessary to prepare the case for trial. *In re Remington Arms Co., Inc.*, 952 F.2d 1029, 1032-33 (8th Cir. 1991). Where trade secrets are involved, the court will balance the risk of disclosure to *competitors* against the risk that a protective order will impair prosecution or defense of the claims. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992); *DeRubeis v. Witten Technologies, Inc.*, 244 F.R.D. 676, 681-82 (N.D. Ga. 2007).

The information sought by The Recording Academy is not a trade secret. The California Uniform Trade Secrets Act, California Civil Code § 3426.3, defines a trade secret to mean:

> (d) "Trade Secret" means information, including a formula, pattern, compilation, program, device, method technique or process, that:
> (1) Derives independent economic value, actual or potential, from not being generally known to the public or other person who can obtain economic value from its discourse or use; and
> (2) Is the subject of efforts that are reasonable under the circumstances to maintaining its secrecy.

Although Texas has not adopted the UTSA, Texas courts have adhered to the definition in Restatement of Torts § 757, comment b.  *See Chapa v. Garcia*, 848 S.W.2d 667, 671 (Tex. 1992).  A trade secret is "any formula, pattern, device, or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over *competitors* who do not know or use it." *H.E. Butt Grocery Co. v. Moody's Quality Meats, Inc.*, 9521 S.W.2d 33, 35 (Tex. Ct. App. Corpus Christi 1997) (emphasis added).

Information relating to On Point's unlawful sales of GRAMMY tickets is not a trade secret.  It does not fit within any of the legal descriptions of a trade secret.  Even if the information is a trade secret, the required balancing of factors weighs heavily in favor of disclosure.

On the one hand, The Recording Academy is not On Point's competitor.  On Point is a for-profit commercial ticket broker that re-sells tickets to public events to the public.  The Recording Academy is not a ticket broker and does not engage in the commercial sale of tickets.  It is a non-profit corporation that stages the annual GRAMMY Awards ceremony and performs music-related charitable work through The GRAMMY Foundation and MusiCares.  It funds those activities in part through the sale of tickets to the annual GRAMMY Awards ceremony – *a private event*. The public is prohibited from attending the ceremony.  Attendance is restricted to eligible members of The Recording Academy and their invited guests, and The Recording Academy's invited guests and official sponsors.  GRAMMY tickets issued to these persons are not transferable.  Information concerning On Point's unlawful sales of GRAMMY tickets, inducing The Recording Academy's members to breach their no transfer contracts, and inducing the public to trespass into the GRAMMY Awards ceremony, is not legitimate trade secret information.  It is simply evidence of unlawful conduct.

On the other hand, The Recording Academy cannot prove its claims without the requested information.  The Recording Academy must present evidence that On

1  Point offered and sold GRAMMY tickets.  Evidence of communications with

2  sources and purchasers is necessary to prove On Point's knowledge of its

3  lawbreaking and to enforce a permanent injunction.  Evidence of the money paid by

4  On Point for the GRAMMY tickets and the money it received from the sale of

5  GRAMMY tickets is necessary to prove profits and damages.

6        As to Interrogatory No. 1, the dates On Point advertised the sale of

7  GRAMMY tickets is not a trade secret.  The information does not fall within the any

8  of the above-mentioned categories of trade secrets.  Moreover, advertisements are

9  necessarily public information.  The Court should order On Point to respond to this

10  interrogatory fully and completely, without objection, within three court days.

11                          **On Point's Position**

12  **I.      The Parties**

13        While The Recording Academy claims that it is a not-for-profit corporation

14  and has 18,000 members, attendance at The Recording Academy sponsored events

15  at the Staples Center in Los Angeles exceed 18,000.

16        Much of The Recording Academy's "position" seems self-serving.

17  Defendant On Point has been denied the discovery it requested from The Recording

18  Academy's so On Point is not privy to any proof that any of The Recording

19  Academy's contentions are true.  While The Recording Academy's claims to be a

20  not-for-profit corporation, The Recording Academy's has not, as yet, produced any

21  proof in discovery which would qualify it to claim non-profit status.  While The

22  Recording Academy's says, "The Recording Academy provides charitable services

23  to the music community through MusiCares and the The Recording Academy

24  Foundation," and purports to describe such charitable activities, The Recording

25  Academy stops short of claiming that it is operated on a non-profit basis.

26        If The Recording Academy receives unrelated business income, not directly

27  related to its charitable activities or fund raising activities, then it is a "for profit"

28  corporation and would be a direct "for-profit" provider of tickets to entertainment

events.  If The Recording Academy engages in, promotes, tolerates, or encourages, resale of tickets to The Recording Academy-sponsored events by any third parties, then The Recording Academy is a reseller of such tickets in the secondary market, a business competitor to Defendant, On Point Events, and has breached the very restriction on resale or transfer provisions in its tickets, permits, or contracts, which it is attempting to enforce in this case.

The Recording Academy has brought a Motion to Compel seeking to force Defendant On Point to reveal all details concerning its purchase and sale of tickets to The Recording Academy-sponsored events in the secondary market without providing any of Defendant On Point's requested discovery concerning The Recording Academy's own activities related to The Recording Academy's alleged enforcement of restrictions on transfer or resale of the tickets it directly issues.  (The Recording Academy's counsel informally provided information on several lawsuits in which The Recording Academy obtained agreed injunctions against ticket brokers.)

## II.    <u>"On Point's Unlawful Sale of The Recording Academy Tickets"</u>

The Recording Academy claims:

> The Recording Academy offers tickets on a restricted basis only to its dues-paying members and to promotional and sponsorship partners.

The Recording Academy Motion to Compel, p. 3.

Despite Defendant On Point's demands of proof of the truthfulness of this allegation, The Recording Academy has so far produced blank ticket forms and agreements which it claims it uses with its members.  The Recording Academy has produced no proof of any restrictions placed on tickets it issues to "promotional and sponsorship partners."

The Recording Academy claims that:

1            Tickets to GRAMMY Awards ceremony are not for sale to

2            the general public.

3 This may be literally true.  However, if The Recording Academy Awards tickets are

4 sold to non-members, then The Recording Academy's activities and ticket sales are

5 public rather than private and any effort by The Recording Academy to prevent

6 resale of purchased tickets would violate Federal and State (California and Texas)

7 anti-trust laws and, further would violate public policy against restrictions on

8 alienation.

9        Similarly, The Recording Academy claims that:

10            Each ticket to the GRAMMY Awards ceremony issued by

11            The Recording Academy is, on its face, non-transferable

12            except in a manner specifically authorized in writing by

13            The Recording Academy.

14 This does not establish that the resale restrictions are valid.

15        The Recording Academy quotes restrictions on resale inserted on the back of

16 the tickets it allegedly sells its members.  The Recording Academy then states:

17            Comparable restrictions govern the distribution of tickets

18            to The Recording Academy's official sponsors.

19 Despite Defendant On Point's prior discovery requests, The Recording Academy

20 has failed to produce any proof of the wording of the "Comparable restrictions."  It

21 claims to have inserted on tickets issued to its "official sponsors."  The Recording

22 Academy's Motion to Compel, P. 4.  The Recording Academy's contentions are as

23 consistent with for-profit operations as they are charitable activities and fund

24 raising.

25        The Recording Academy's refusal to comply with Defendant On Point's

26 discovery requests directing it to provide proof of actual ticket sales contracts with

27 its special invitees and corporate sponsors it continues to allude to supports an

28 inference that The Recording Academy has violated the alleged restrictions on

resale contained in its own ticket sales contract and has, itself, perpetrated a fraud on its members and/or the ticket purchasing public.  If The Recording Academy receives unrelated business income through sales of tickets, The Recording Academy is not a charity notwithstanding any charitable activities engaged in by organizations or groups operating under its umbrella.

## III.   The Requested Information Is Relevant to the Recording Academy's Claims

Defendant On Point concedes that if The Recording Academy's alleged restrictions on resale of its tickets and its ticket permits or ticket sales contracts are enforceable that the various "key evidence" points listed by The Recording Academy in this Paragraph meet the standard of relevance under the Federal Rules of Civil Procedure.

## IV.   On Point Withdrew All Objections Except for the Trade Secret Objection

Defendant On Point concedes that after discussions with The Recording Academy's counsel, it decided to withdraw the boiler plate and relevance objections it had asserted which mirrored those asserted by The Recording Academy in its responses to Defendant On Point's Requests for discovery.

On Point's right to trade secret protection was extensively discussed between the parties.  On Point rejected The Recording Academy's position that The Recording Academy was entitled to assert trade secret and other privilege protection as a bar to On Point's discovery concerning The Recording Academy activities, conduct of ticket sales, and alleged enforcement of restrictions on ticket resale while Defendant On Point had no right to assert trade secret privilege.

The Recording Academy's claim:

> Almost six months later On Point has not commented on
> or other responded [sic] to the proposed protective order

1   is untrue.  Defendant On Point's counsel verbally offered two alternatives to The

2   Recording Academy for reciprocal discovery under which the parties would either:

3   (1) waive all trade secret and other privilege and disclose all documents and

4   evidence related to offer for sale, and restriction of sale; or (2) satisfy the Court that

5   good and sufficient cause exists for the issuance of a protective order under the

6   appropriate Federal Rules of Civil Procedure, and repeated On Point's position in

7   writing.  See Affidavit of Joe Alfred Izen, Jr., Exhibit E, Letter Dated December 10,

8   2008.  There was no effort to "leverage" any refusal to stipulate to a protective

9   order.

10  **V.     Information Relating to On Point's Unlawful Sale of The Recording**

11          **Academy Tickets Is Not a Trade Secret**

12          Defendant On Point contends that The Recording Academy's research

13  concerning what is a trade secret is deficient and refers to its own legal research

14  below.

15          Plaintiff The Recording Academy's claim that On Point's resale of tickets to

16  The Recording Academy's events is "unlawful" is false.  Neither the State of Texas

17  nor the State of California have anti-scalping laws.  An effort to prevent resale of

18  tickets in the State of California violates the State Constitution.  The Recording

19  Academy's claim:

20          Rule 26 requires the parties to identify and/or provide

21          copies of all documents to support their claims or

22          defenses.  On Point can not properly limit its production to

23          correspondence with the Recording Academy and a

24          sample purchase contract – unless it represents in the

25          response that it has produced all responsive documents.

26          That representation is missing

27

28

5480/54321-013
Current/12878600v2

18

1   is misleading since it fails to include any reference to Defendant On Point's

2   statement in its discovery responses that documents are being withheld which were

3   subject to claim of trade secret privilege.

4   **VI.   On Point's Further Statement of Position:  Applicable Legal Standards**

5         **A.   Relevance**

6         Parties may obtain discovery regarding any matter, not privileged, that is

7   relevant to the claim or defense of any party.  F.R.Civ.P. 26(b)(1).  The Rule goes

8   on to state that:

9           For good cause, the Court may order discovery of any

10          matter relevant to the subject matter involving the action.

11          **Relevant information need not be admissible at the**

12          **trial if the discovery appears reasonably calculated to**

13          **lead to the discovery of admissible evidence.  The scope**

14          **of discovery permissible under Rule 26 should be**

15          **liberally construed; the Rule contemplates discovery**

16          **into any matter that bears on or are that contemplates**

17          **discovery into any matter that bears on or that could**

18          **reasonably lead to other matters that could bear on**

19          **any issue that is or may be raised in the case.**

20  Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A., (N.D. Cal. 10-22-2008).  Citing

21  Board of Trustees of Leeland Stanford Junior University v. Roche Molecular

22  Systems, Inc., 237 F.R.D. 618, 621 (N.D. Cal. 2006).   As pointed out by Judge

23  Patel in Phoenix Solutions, the Ninth Circuit favors a broad standard of relevance.

24  Epstein v. MCA, Inc., 54 F.3d 1422, 1423 (9th Cir. 1995).

25        **B.   Protective Order**

26        The standard for issuing a protective order under Rule 26 F.R.Civ.P. 26(c)(7)

27  is controlled in part by the scope of discovery under Rule 26(c).  Rule 26(c)

28  explicitly authorizes the District Court to protect parties from "undue burden or

expense" in discovery by ordering that "a trade secret or other confidential research, development, or commercial information, not be disclosed or to be disclosed only in a designated way.  Phoenix Solutions, Inc. citing F.R.Civ.P. 26(c)(7).  A party asserting a privilege as a defense to discovery must:

> Show good cause for the issuance of a protective order.

F.R.Civ.P. 26(c).  The burden of demonstrating the need for a protective order from discovery is placed on the party seeking the protective order, not on the party opposing the order.

## C.    Trade Secret Protection

Parties asserting a confidentiality privilege against production of business, and, as in this case, membership, financial operation, and customer and vender supplier lists must rely on state law for the existence of a legal claim of confidentiality for such information.  With respect to your client, The Recording Academy, California Trade Secret law would, presumably make membership lists (analogous to customer or vendor supplier lists) confidential along with the financial information involved in dealing with such members.  See MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 520 (California has adopted the Uniform Trade Secrets Act which codifies the basic principles of common law trade secret protection.  Cal. Civ. Code 3426-3426.10.  To establish violation under the UTSA, it must be shown that a Defendant has been unjustly enriched by the improper appropriation, use, or disclosure, of a trade secret.)  A customer list acquired by lengthy and expensive efforts deserves protection as a trade secret.  Barney v. Burrow, No. CV-F-08-0373 (E.D. Cal. 5-16-2008).  Citing MAI Systems at p. 521.  The customer data base qualifies as a trade secret because it has the potential economic value to allow a competitor to direct its sales efforts to potential customers.  Courtesy Temporary Service, Inc. v. Camacho, 222 Cal. App. 3d 1278, 1288, 272 Cal. Rptr. 352 (1990).

Texas law is no different.  In Texas customer lists:

1    Can constitute a protected trade secret under Texas law.

2  AMX Corporation v. Pilote Films, No. 3:04-CV-2035-D (N.D. Tex. 8-7-2007).

3  Citing Hyde Corp. v. Huffines, 314 S.W.2d 763, 776 (Tex. 1958). Texas has

4  adopted the Restatement of Torts, 757 definition which provides, in pertinent part:

5    (A trade secret is a) Compilation of information which is

6    used in one's business, and which gives him an

7    opportunity to obtain an advantage over competitors who

8    do not know or use it and may be...a list of customers.

9  Items such as customer lists, price information, client information, customer

10  preferences, buyer contacts...have been shown to be trade secrets.  T-N-T Motor

11  Sports, Inc. v. Hennessey Motor Sports, Inc., 965 S.W.2d 18, 22 (Tex. App. 1998,

12  Pet. dism'd.).

13    Information concerning customers and suppliers is also protected under the

14  rules of confidentiality applicable to trade secrets.  S.C.E.A. v. Nassau Electronics,

15  No. 07-20819-Civ-Moreno/Simonton (S.D.Fla. 2-12-2008).

16  **D.    Waiver of Privilege**

17    The privilege of confidentiality restricting forced disclosures of trade secrets,

18  like other privileges, may be waived by the conduct of the party asserting the

19  privilege.  First of all, as previously noted in On Point's prior November 20, 2008

20  letter (See Affidavit of Joe Alfred Izen, Jr., Exhibit A) to The Recording Academy

21  counsel, a party may not use the assertion of a confidentiality privilege as a "sword

22  rather than a shield."  See S.C.E.A. v. Nassau Electronics, No. 07-20819-Civ-

23  Moreno/Simonton (S.D.Fla. 2-12-2008).

24    On one hand, SCEA is correct that Defendants should not

25    be permitted to use a protective order as both a sword and

26    shield, by resting their defenses on third parties and then

27    restricting SCEA's efforts to test their defenses by

28    examining those parties.

1       This principle was already touched on in the November 20, 2008 letter from
2   On Point to The Recording Academy counsel which cited <u>Shelton v. American</u>
3   <u>Motors Corp.</u>, 805 F.2d 1323, 1331 (8th Cir. 1986).

4       A party purporting to claim a confidentiality privilege may waive the
5   privilege he is trying to claim by his own acts.  <u>Phoenix Solutions</u>.  A privilege may
6   be waived either implicitly or by placing privileged matters in controversy or
7   explicitly by turning over privilege documents.  Citing <u>Gomez v. Vernon</u>, 255 F.3d
8   1118, 1131 (9th Cir.).  A party's failure to protect its privilege can result in a loss or
9   conscription of that privilege.  <u>Fort James Corp. v. Solo Cup Co.</u>, 412 F.3d 1340,
10  1351 (Fed. Cir. 2005) and <u>Dellwood Farms, Inc. v Cargill, Inc.</u>, 128 F.3d 1122,
11  1126 (7th Cir. 1997).

12      Any effort to make selective production of a party's evidence and documents
13  while asserting a privilege (producing those documents deemed favorable to one's
14  case and withholding other documents and information) usually results in waiver.
15  <u>Adams v. U.S.</u>, No. 03-0049-E-BLW (Idaho 7-3-2008).  (The authorities cited
16  above establish that DuPont can not use privileged information as both a sword and
17  shield in this manner.)  (Allowing a Plaintiff to use a confidentiality privilege as
18  both a sword and a shield would "simply be contrary to the most basic sense of
19  fairness and justice.)  <u>Allendorf v. Sully Transportation, Inc.</u>, No. 98-C-50243 (N.D.
20  Ill. 2001).  Citing <u>Adams v. Ardcor</u>, 196 F.R.D. 339, 343 (E.D. Wis. 2000).

21      Finally, when a party claiming a privilege has "injected the issue" that the
22  withheld documents or other evidence are relevant to the proponent of the privilege
23  has waived any confidentiality.  <u>Hearn v. Rhay</u>, 68 F.R. 574, 581 (E.D. Wash.
24  1975).  As the <u>Hearn</u> decision points out, the privilege of confidentiality is waived
25  "by injection" where:

26          (1) assertion of the privilege **was the result of some**
27          **affirmative act, such as filing suit**, by the asserting party;

28

1    (2)  Through this affirmative act, the asserting party put

2    the protected information at issue by making it relevant to

3    the case; and

4    (3)  Application of privilege would have denied the

5    opposing party access to information vital to his defense.

6  Hearn at P. 581.

7        The Recording Academy filed shot gun federal pleadings accusing Defendant

8  On Point, which never did business with The Recording Academy, of various

9  transgressions including trespassing, violating trademark rights, and inducing its

10  members, special invited guests, and other parties, to violate their membership

11  agreements with The Recording Academy.

12        One affirmative defense which On Point has asserted to The Recording

13  Academy' shot gun claims is that The Recording Academy has violated its own

14  contract with its members, special invited guests, and other parties, by encouraging,

15  inducing, or tolerating resale of tickets to its events.

16        By filing its shot gun claims, and suing On Point, The Recording Academy

17  has injected the issue of the entire scope of its handling of its tickets to scrutiny

18  under the rules of discovery.

19  **E.    Further Answer to Interrogatory No. 1**

20        The Boiler Plate and Relevancy objections asserted and then withdrawn by

21  Defendant On Point after conference with The Recording Academy's counsel

22  contain the same wording as those asserted by The Recording Academy in response

23  to On Point's Request for Production and Written Interrogatories.

24        Defendant On Point has provided the web site listings where it offered The

25  Recording Academy tickets for sale which were in its possession, custody, and

26  control.  Defendant On Point has no additional information concerning dates on

27  which it offered the The Recording Academy tickets for sale other than that

28  provided by the copies of the web site listings already produced.

The wording of the Defendant On Point's objections which were waived after discussion with The Recording Academy's counsel contain the same language as those objections asserted by Plaintiff The Recording Academy to Defendant On Point's Requests for Production and interrogatories which sought production of documents, evidence, and information from The Recording Academy pertaining to Plaintiff The Recording Academy's sale and resale of tickets to its events and The Recording Academy's purported efforts to enforce the restrictions on resale of its tickets that The Recording Academy purports to attempt to enforce against its members, special invitees, corporate sponsors, and any resellers of its tickets.

**INTERROGATORY NO. 2:**

State all dates on which YOU offered to sell GRAMMY TICKETS on a website other than www.On Pointevents.com and provide the Uniform Resource Locator (URL) for each such website.

**RESPONSE TO INTERROGATORY NO. 2:**

ANSWER: Defendant, On Point, incorporates the General Objections as though fully set forth herein. On Point objects to this interrogatory on the grounds that it is overbroad, vague; unduly burdensome, and not relevant to any claim or defense.

Defendant, On Point, further objects on the grounds that this interrogatory seeks confidential information, proprietary business information, trade secret information, and/or information protected from disclosure by constitutional, statutory, or common law right to privacy.

Defendant, On Point, further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

**The Recording Academy's Position**

The Recording Academy incorporates sections I through V above regarding its position on the response to Interrogatory No. 1.  On Point withdrew all objections except trade secret.

The dates On Point advertised the sale of GRAMMY tickets is not a trade secret.  Advertisements are necessarily public information.  The information does not fall within the any of the above-mentioned categories of trade secrets.

The Court should order On Point to respond to this interrogatory fully and completely, without objection, within three court days.

**On Point's Position**

Defendant On Point incorporates by reference the allegations, responses, and statements and information set out in its Statement of Position to Interrogatory No. 1 as if fully set forth herein.  The Boiler Plate and Relevancy objections asserted and then withdrawn by Defendant On Point after conference with The Recording Academy's counsel contain the same wording as those asserted by The Recording Academy in response to On Point's Request for Production and Written Interrogatories.

Defendant On Point further points out that should it provide web site information sought by Plaintiff The Recording Academy without assertion of its trade secret privilege that such information would lead Plaintiff The Recording Academy to third parties who could supply Plaintiff The Recording Academy with the same information subject to protection by trade secret privilege while it remains undisclosed by Defendant On Point resulting in an impermissible end run around the trade secret protection to which Defendant On Point is entitled.


**INTERROGATORY NO. 3:**

IDENTIFY each PERSON that YOU used as a source for GRAMMY TICKETS.

**RESPONSE TO INTERROGATORY NO. 3**:

ANSWER: Defendant, On Point, incorporates the General Objections as though fully set forth herein. On Point objects to this interrogatory on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

Defendant, On Point, further objects on the grounds that this interrogatory seeks confidential information, proprietary business information, trade secret information, and/or information protected from disclosure by constitutional, statutory, or common law right to privacy.

Defendant, On Point, further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

<u>The Recording Academy's Position</u>

The Recording Academy incorporates sections I through V above regarding its position on the response to Interrogatory No. 1.  On Point withdrew all objections except trade secret.

On Point's sources of GRAMMY tickets is not a trade secret.  On Point knew that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.  The sources are members of The Recording Academy who On Point induced to breach their contractual obligation not to transfer GRAMMY tickets, or ticket brokers who On Point knew were inducing members of The Recording Academy to breach their contract.  The Recording Academy is entitled to know who among its members are violating their contract not to transfer GRAMMY tickets, and who is inducing them to breach their contracts.  By identifying The Recording Academy members who violated its rules, The Recording Academy can take steps to prevent them from doing so in the future.  The information does not fall within the any of the above-mentioned categories of trade secrets.

1    The Court should order On Point to respond to this interrogatory fully and

2    completely, without objection, within three court days.

3                            **On Point's Position**

4    Defendant On Point incorporates by reference the allegations, responses, and

5    statements and information set out in its Statement of Position to Interrogatory No. 1

6    as if fully set forth herein.

7    The Boiler Plate and Relevancy objections asserted and then withdrawn by

8    Defendant On Point after conference with The Recording Academy's counsel

9    contain the same wording as those asserted by The Recording Academy in response

10   to On Point's Request for Production and Written Interrogatories.

11   Defendant On Point further points out that should it provide web site

12   information sought by Plaintiff The Recording Academy without assertion of its

13   trade secret privilege that such information would lead Plaintiff The Recording

14   Academy to third parties who could supply Plaintiff The Recording Academy with

15   the same information subject to protection by trade secret privilege while it remains

16   undisclosed by Defendant On Point resulting in an impermissible end run around the

17   trade secret protection to which Defendant On Point is entitled.

18

19   **INTERROGATORY NO. 4:**

20   For each PERSON listed in response to Interrogatory No. 3, state the date,

21   manner and substance of each COMMUNICATION between YOU and that

22   PERSON CONCERNING GRAMMY TICKETS.

23   **RESPONSE TO INTERROGATORY NO. 4:**

24   ANSWER: Defendant, On Point, incorporates the General Objections as

25   though fully set forth herein. On Point objects to this interrogatory on the grounds

26   that it is overbroad, vague, unduly burdensome, and not relevant to any claim or

27   defense.

28   Defendant, On Point, further objects on the grounds that this interrogatory

1  seeks confidential information, proprietary business information, trade secret

2  information protected from disclosure by constitutional, statutory, or common law

3  right to privacy.

4  ### The Recording Academy's Position

5      The Recording Academy incorporates sections I through V above regarding

6  its position on the response to Interrogatory No. 1.  On Point withdrew all objections

7  except trade secret.

8      On Point's communications with its GRAMMY ticket sources is not a trade

9  secret.  On Point knew that The Recording Academy's members are contractually

10  bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony

11  is not open to the public.  The sources are members of The Recording Academy who

12  On Point induced to breach their contractual obligation not to transfer GRAMMY

13  tickets, or ticket brokers who On Point knew were inducing members of The

14  Recording Academy to breach their contract.  The Recording Academy is entitled to

15  know who among its members are violating their contract not to transfer GRAMMY

16  tickets, and who is inducing them to breach their contracts.  By identifying The

17  Recording Academy members who violated its rules, The Recording Academy can

18  take steps to prevent them from doing so in the future.  The information does not fall

19  within the any of the above-mentioned categories of trade secrets.

20      The Court should order On Point to respond to this interrogatory fully and

21  completely, without objection, within three court days.

22  ### On Point's Position

23      Defendant On Point incorporates by reference the allegations, responses, and

24  statements and information set out in its Statement of Position to Interrogatory No. 1

25  as if fully set forth herein.

26      The Boiler Plate and Relevancy objections asserted and then withdrawn by

27  Defendant On Point after conference with The Recording Academy's counsel

28

1    contain the same wording as those asserted by The Recording Academy in response
2    to On Point's Request for Production and Written Interrogatories.

3        Defendant On Point further points out that should it provide web site
4    information sought by Plaintiff The Recording Academy without assertion of its
5    trade secret privilege that such information would lead Plaintiff The Recording
6    Academy to third parties who could supply Plaintiff The Recording Academy with
7    the same information subject to protection by trade secret privilege while it remains
8    undisclosed by Defendant On Point resulting in an impermissible end run around the
9    trade secret protection to which Defendant On Point is entitled.

10

11   **INTERROGATORY NO. 5:**

12       For each PERSON listed in response to Interrogatory No. 3, state the date
13   YOU obtained and/or purchased GRAMMY TICKETS from that PERSON.

14   **RESPONSE TO INTERROGATORY NO. 5:**

15       ANSWER: Defendant, On Point, incorporates the General Objections as
16   though fully set forth herein. On Point objects to this interrogatory on the grounds
17   that it is overbroad, vague, unduly burdensome, and not relevant to any claim or
18   defense.

19       Defendant, On Point, further objects on the grounds that this interrogatory
20   seeks confidential information, proprietary business information, trade secret
21   information, and/or information protected from disclosure by constitutional,
22   statutory, or common law right to privacy.

23       Defendant, On Point, further objects to the extent this interrogatory seeks
24   information protected from disclosure by the attorney-client privilege and/or the
25   attorney work product doctrine.

26

27

28

5480/54321-013
Current/12878600v2

1

## The Recording Academy's Position

2      The Recording Academy incorporates sections I through V above regarding

3  its position on the response to Interrogatory No. 1.  On Point withdrew all objections

4  except trade secret.

5      The dates On Point obtained or purchased GRAMMY tickets are not a trade

6  secret.  On Point's sources of GRAMMY tickets is not a trade secret.  On Point

7  knew that The Recording Academy's members are contractually bound not to

8  transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to

9  the public.  The sources are members of The Recording Academy who On Point

10  induced to breach their contractual obligation not to transfer GRAMMY tickets, or

11  ticket brokers who On Point knew were inducing members of The Recording

12  Academy to breach their contract.  The Recording Academy is entitled to know who

13  among its members are violating their contract not to transfer GRAMMY tickets,

14  and who is inducing them to breach their contracts.  By identifying The Recording

15  Academy members who violated its rules, The Recording Academy can take steps

16  to prevent them from doing so in the future.  The information does not fall within

17  the any of the above-mentioned categories of trade secrets.

18      The Court should order On Point to respond to this interrogatory fully and

19  completely, without objection, within three court days.

20

## On Point's Position

21      Defendant On Point incorporates by reference the allegations, responses, and

22  statements and information set out in its Statement of Position to Interrogatory No. 1

23  as if fully set forth herein.

24      The Boiler Plate and Relevancy objections asserted and then withdrawn by

25  Defendant On Point after conference with The Recording Academy's counsel

26  contain the same wording as those asserted by The Recording Academy in response

27  to On Point's Request for Production and Written Interrogatories.

28

1   Defendant On Point further points out that should it provide web site
2   information sought by Plaintiff The Recording Academy without assertion of its
3   trade secret privilege that such information would lead Plaintiff The Recording
4   Academy to third parties who could supply Plaintiff The Recording Academy with
5   the same information subject to protection by trade secret privilege while it remains
6   undisclosed by Defendant On Point resulting in an impermissible end run around the
7   trade secret protection to which Defendant On Point is entitled.
8
9   **INTERROGATORY NO. 6:**
10   For each PERSON listed in response to Interrogatory No. 3, state the number
11   and seating category of the GRAMMY TICKETS YOU obtained and/or purchased
12   from that PERSON.
13   **RESPONSE TO INTERROGATORY NO. 6:**
14   ANSWER: Defendant, On Point, incorporates the General Objections as
15   though fully set forth herein. On Point objects to this interrogatory on the grounds
16   that it is overbroad, vague, unduly burdensome, and not relevant to any claim or
17   defense..
18   Defendant, On Point, further objects on the grounds that this interrogatory
19   seeks confidential information, proprietary business information, trade secret
20   information, and/or information protected from disclosure by constitutional,
21   statutory, or common law right to privacy.
22   Defendant, On Point, further objects to the extent this interrogatory seeks
23   information protected from disclosure by the attorney-client privilege and/or the
24   attorney work product doctrine.
25   <p align="center">**The Recording Academy's Position**</p>
26   The Recording Academy incorporates sections I through V above regarding
27   its position on the response to Interrogatory No. 1.  On Point withdrew all objections
28   except trade secret.

The seat number and category of GRAMMY tickets obtained or purchased by On Point is not a trade secret.  This information was known to the ticket sources and On Point necessarily disclosed this information to the ticket purchasers.  By identifying The Recording Academy members who violated its rules, The Recording Academy can take steps to prevent them from doing so in the future.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.

The Court should order On Point to respond to this interrogatory fully and completely, without objection, within three court days.

### On Point's Position

Defendant On Point incorporates by reference the allegations, responses, and statements and information set out in its Statement of Position to Interrogatory No. 1 as if fully set forth herein.

The Boiler Plate and Relevancy objections asserted and then withdrawn by Defendant On Point after conference with The Recording Academy's counsel contain the same wording as those asserted by The Recording Academy in response to On Point's Request for Production and Written Interrogatories.

Defendant On Point further points out that should it provide web site information sought by Plaintiff The Recording Academy without assertion of its trade secret privilege that such information would lead Plaintiff The Recording Academy to third parties who could supply Plaintiff The Recording Academy with the same information subject to protection by trade secret privilege while it remains undisclosed by Defendant On Point resulting in an impermissible end run around the trade secret protection to which Defendant On Point is entitled.

Contrary to The Recording Academy's claims, there were no disclosures to ticket purchasers which waived Defendant On Point's rights to assert trade secret

privilege to proprietary financial sales or customer information.  The ticket purchasers, themselves, were clients or customers who were part of the customer client list entitled to trade secret protection.

**INTERROGATORY NO. 7:**

For each PERSON listed in response to Interrogatory No. 3, state the amount of money or other consideration that YOU paid to that PERSON for GRAMMY TICKETS.

**RESPONSE TO INTERROGATORY NO. 7:**

ANSWER: Defendant, On Point, incorporates the General Objections as though fully set forth herein. On Point objects to this interrogatory on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

Defendant, On Point, further objects on the grounds that this interrogatory seeks confidential information, proprietary business information, trade secret information, and/or information protected from disclosure by constitutional, statutory, or common law right to privacy.

Defendant, On Point, further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

<div align="center"><strong><u>The Recording Academy's Position</u></strong></div>

The Recording Academy incorporates sections I through V above regarding its position on the response to Interrogatory No. 1.  On Point withdrew all objections except trade secret.

The amount of money On Point received from sales of GRAMMY tickets is not a trade secret.  On Point necessarily disclosed this information to the ticket purchasers.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording Academy's

1  members are contractually bound not to transfer GRAMMY tickets and that the

2  GRAMMY Awards ceremony is not open to the public.

3         The Court should order On Point to respond to this interrogatory fully and

4  completely, without objection, within three court days.

5                              **On Point's Position**

6         Defendant On Point incorporates by reference the allegations, responses, and

7  statements and information set out in its Statement of Position to Interrogatory No. 1

8  as if fully set forth herein.

9         The Boiler Plate and Relevancy objections asserted and then withdrawn by

10 Defendant On Point after conference with The Recording Academy's counsel

11 contain the same wording as those asserted by The Recording Academy in response

12 to On Point's Request for Production and Written Interrogatories.

13        Defendant On Point further points out that should it provide web site

14 information sought by Plaintiff The Recording Academy without assertion of its

15 trade secret privilege that such information would lead Plaintiff The Recording

16 Academy to third parties who could supply Plaintiff The Recording Academy with

17 the same information subject to protection by trade secret privilege while it remains

18 undisclosed by Defendant On Point resulting in an impermissible end run around the

19 trade secret protection to which Defendant On Point is entitled.

20        The interrogatory as worded seeks proprietary financial information which

21 would be of benefit to Defendant On Point's competitors.  Public disclosure of

22 Defendant On Point's pricing information would benefit its creditors and would

23 provide such creditors with access to Defendant On Point's proprietary financial

24 information which such competitors could use to their own advantage and to the

25 detriment of Defendant On Point.

26

27 **INTERROGATORY NO. 8:**

28        IDENTIFY each PERSON to whom YOU have sold GRAMMY TICKETS.

1 | **RESPONSE TO INTERROGATORY NO. 8:**

2 |    ANSWER: Defendant, On Point, incorporates the General Objections as

3 | though fully set forth herein. On Point objects to this interrogatory on the grounds

4 | that it is overbroad, vague, unduly burdensome, and not relevant to any claim or

5 | defense.

6 |    Defendant, On Point, further objects on the grounds that this interrogatory

7 | seeks confidential information, proprietary business information, trade secret

8 | information, and/or information protected from disclosure by constitutional,

9 | statutory, or common law right to privacy.

10 |    Defendant, On Point, further objects to the extent this interrogatory seeks

11 | information protected from disclosure by the attorney-client privilege and/or the

12 | attorney work product doctrine.

13 | <center>**The Recording Academy's Position**</center>

14 |    The Recording Academy incorporates sections I through V above regarding

15 | its position on the response to Interrogatory No. 1.  On Point withdrew all objections

16 | except trade secret.

17 |    The names of GRAMMY tickets purchasers are not a trade secret.  The

18 | Recording Academy does not seek On Point's customer list.  On Point has informed

19 | The Recording Academy that On Point has completed fewer than 10 transactions for

20 | the sale of GRAMMY tickets.  (Horn Decl. ¶ 17.)  By identifying the purchasers,

21 | The Recording Academy can determine the ticket locations, the identities of

22 | members who sold their tickets, and take steps to prevent its members from

23 | violating their contracts in the future.  The information does not fall within the any

24 | of the above-mentioned categories of trade secrets.  On Point knows that The

25 | Recording Academy's members are contractually bound not to transfer GRAMMY

26 | tickets and that the GRAMMY Awards ceremony is not open to the public.

27 |    The Court should order On Point to respond to this interrogatory fully and

28 | completely, without objection, within three court days.

**On Point's Position**

Defendant On Point incorporates by reference the allegations, responses, and statements and information set out in its Statement of Position to Interrogatory No. 1 as if fully set forth herein.

The Boiler Plate and Relevancy objections asserted and then withdrawn by Defendant On Point after conference with The Recording Academy's counsel contain the same wording as those asserted by The Recording Academy in response to On Point's Request for Production and Written Interrogatories.

Defendant On Point further points out that should it provide web site information sought by Plaintiff The Recording Academy without assertion of its trade secret privilege that such information would lead Plaintiff The Recording Academy to third parties who could supply Plaintiff The Recording Academy with the same information subject to protection by trade secret privilege while it remains undisclosed by Defendant On Point resulting in an impermissible end run around the trade secret protection to which Defendant On Point is entitled.

**INTERROGATORY NO. 9:**

For each PERSON listed in response to Interrogatory No. 8, state the date, manner and substance of each COMMUNICATION between you and that PERSON CONCERNING GRAMMY TICKETS.

**RESPONSE TO INTERROGATORY NO. 9:**

ANSWER: Defendant, On Point, incorporates the General Objections as though fully set forth herein. On Point objects to this interrogatory on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

Defendant, On Point, further objects on the grounds that this interrogatory seeks confidential information, proprietary business information, trade secret information, and/or information protected from disclosure by constitutional,

1  statutory, or common law right to privacy.

2      Defendant, On Point, further objects to the extent this interrogatory seeks

3  information protected from disclosure by the attorney-client privilege. and/or the

4  attorney work product doctrine.

5      **The Recording Academy's Position**

6      The Recording Academy incorporates sections I through V above regarding

7  its position on the response to Interrogatory No. 1.  On Point withdrew all objections

8  except trade secret.

9      On Point's communications with its GRAMMY tickets purchasers are not a

10  trade secret.  The communications were necessarily disclosed to nonparties – On

11  Point's customers.  The information does not fall within the any of the above-

12  mentioned categories of trade secrets.  On Point knows that The Recording

13  Academy's members are contractually bound not to transfer GRAMMY tickets and

14  that the GRAMMY Awards ceremony is not open to the public.

15      The Court should order On Point to respond to this interrogatory fully and

16  completely, without objection, within three court days.

17      **On Point's Position**

18      Defendant On Point incorporates by reference the allegations, responses, and

19  statements and information set out in its Statement of Position to Interrogatory No. 1

20  as if fully set forth herein.

21      The Boiler Plate and Relevancy objections asserted and then withdrawn by

22  Defendant On Point after conference with The Recording Academy's counsel

23  contain the same wording as those asserted by The Recording Academy in response

24  to On Point's Request for Production and Written Interrogatories.

25      Defendant On Point further points out that should it provide web site

26  information sought by Plaintiff The Recording Academy without assertion of its

27  trade secret privilege that such information would lead Plaintiff The Recording

28  Academy to third parties who could supply Plaintiff The Recording Academy with

5480/54321-013
Current/12878600v2

37

1   the same information subject to protection by trade secret privilege while it remains
2   undisclosed by Defendant On Point resulting in an impermissible end run around the
3   trade secret protection to which Defendant On Point is entitled.

4

5   **INTERROGATORY NO. 10:**

6       For each PERSON listed in response to Interrogatory No. 8, state the date
7   YOU sold GRAMMY TICKETS to that PERSON.

8   **RESPONSE TO INTERROGATORY NO. 10:**

9       ANSWER: Defendant, On Point, incorporates the General Objections as
10  though fully set forth herein. On Point objects to this interrogatory on the grounds
11  that it is overbroad, vague, unduly burdensome, and not relevant to any claim or
12  defense.

13      Defendant, On Point, further objects on the grounds that this interrogatory
14  seeks confidential information, proprietary business information, trade secret
15  information, and/or information protected from disclosure by constitutional,
16  statutory, or common law right to privacy.

17      Defendant, On Point, further objects to the extent this interrogatory seeks
18  information protected from disclosure by the attorney-client privilege and/or the
19  attorney work product doctrine.

20                      **The Recording Academy's Position**

21      The Recording Academy incorporates sections I through V above regarding
22  its position on the response to Interrogatory No. 1.  On Point withdrew all objections
23  except trade secret.

24      The dates on which On Point sold GRAMMY tickets are not a trade secret.
25  The information was disclosed to nonparties involved in the transaction, *e.g.*, the
26  purchasers, credit card companies, etc.  The information does not fall within the any
27  of the above-mentioned categories of trade secrets.  On Point knows that The

28

1  Recording Academy's members are contractually bound not to transfer GRAMMY
2  tickets and that the GRAMMY Awards ceremony is not open to the public.

3      The Court should order On Point to respond to this interrogatory fully and
4  completely, without objection, within three court days.

5                      **On Point's Position**

6      Defendant On Point incorporates by reference the allegations, responses, and
7  statements and information set out in its Statement of Position to Interrogatory No. 1
8  as if fully set forth herein.

9      The Boiler Plate and Relevancy objections asserted and then withdrawn by
10  Defendant On Point after conference with The Recording Academy's counsel
11  contain the same wording as those asserted by The Recording Academy in response
12  to On Point's Request for Production and Written Interrogatories.

13      Defendant On Point further points out that should it provide web site
14  information sought by Plaintiff The Recording Academy without assertion of its
15  trade secret privilege that such information would lead Plaintiff The Recording
16  Academy to third parties who could supply Plaintiff The Recording Academy with
17  the same information subject to protection by trade secret privilege while it remains
18  undisclosed by Defendant On Point resulting in an impermissible end run around the
19  trade secret protection to which Defendant On Point is entitled.

20      Contrary to Plaintiff The Recording Academy's claims, there was no
21  disclosure of information to non-parties to the transaction such as purchasers and
22  credit card companies which waived any trade secret privilege.  If Plaintiff The
23  Recording Academy's argument were legally sustainable, no party would be entitled
24  to assert a trade secret privilege to any financial information concerning its dealings
25  with its customers or clients which were conducted by any manner through services
26  provided by third parties.

27      Defendant On Point further points out that should it provide web site
28  information sought by Plaintiff The Recording Academy without assertion of its

1  trade secret privilege that such information would lead Plaintiff The Recording

2  Academy to third parties who could supply Plaintiff The Recording Academy with

3  the same information subject to protection by trade secret privilege while it remains

4  undisclosed by Defendant On Point resulting in an impermissible end run around the

5  trade secret protection to which Defendant On Point is entitled.

6

7  **INTERROGATORY NO. 11:**

8       For each PERSON listed in response to Interrogatory No. 8, state the amount

9  of money or other consideration YOU received from that PERSON for GRAMMY

10  TICKETS.

11  **RESPONSE TO INTERROGATORY NO. 11:**

12       ANSWER: Defendant, On Point, incorporates the General Objections as

13  though fully set forth herein. On Point objects to this interrogatory on the grounds

14  that it is overbroad, vague, unduly burdensome, and not relevant to any claim or

15  defense.

16       Defendant, On Point, further objects on the grounds that this interrogatory

17  seeks confidential information, proprietary business information, trade secret

18  information, and/or information protected from disclosure by constitutional,

19  statutory, or common law right to privacy.

20       Defendant, On Point, further objects to the extent this interrogatory seeks

21  information protected from disclosure by the attorney-client privilege and/or the

22  attorney work product doctrine.

23               **The Recording Academy's Position**

24       The Recording Academy incorporates sections I through V above regarding

25  its position on the response to Interrogatory No. 1.  On Point withdrew all objections

26  except trade secret.

27       The amount of money On Point received from the sale of GRAMMY tickets

28  is not a trade secret.  The information was disclosed to nonparties, e.g., credit card

companies, the purchasers, etc.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording Academy's members are contractually bound not to transfer GRAMMY tickets and that the GRAMMY Awards ceremony is not open to the public.

The Court should order On Point to respond to this interrogatory fully and completely, without objection, within three court days.

### On Point's Position

Defendant On Point incorporates by reference the allegations, responses, and statements and information set out in its Statement of Position to Interrogatory No. 1 as if fully set forth herein.

The Boiler Plate and Relevancy objections asserted and then withdrawn by Defendant On Point after conference with The Recording Academy's counsel contain the same wording as those asserted by The Recording Academy in response to On Point's Request for Production and Written Interrogatories.

Contrary to Plaintiff The Recording Academy's claims, purchasing and pricing information related to Defendant On Point's conduct of business with the customers or clients who are part of its list of customers or clients protected by the trade secret privilege is proprietary. Provision of this proprietary information to Defendant On Point's competitors would provide such competitors with information which they could use to their competitive advantage against Defendant On Point without having to bear the cost of developing such information themselves.

Defendant On Point further points out that should it provide web site information sought by Plaintiff The Recording Academy without assertion of its trade secret privilege that such information would lead Plaintiff The Recording Academy to third parties who could supply Plaintiff The Recording Academy with the same information subject to protection by trade secret privilege while it remains undisclosed by Defendant On Point resulting in an impermissible end run around the trade secret protection to which Defendant On Point is entitled.

5480/54321-013
Current/12878600v2

41

**INTERROGATORY NO. 12:**

For each PERSON listed in response to Interrogatory No. 8, state the amount of money or other consideration YOU received from that PERSON for any travel packages YOU sold to that PERSON in conjunction with the sale of GRAMMY TICKETS.

**RESPONSE TO INTERROGATORY NO. 12:**

ANSWER: Defendant, On Point, incorporates the General Objections as though fully set forth herein. On Point objects to this interrogatory on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

Defendant, On Point, further objects on the grounds that this interrogatory seeks confidential information, proprietary business information, trade secret information, and/or information protected from disclosure by constitutional, statutory, or common law right to privacy.

Defendant, On Point, further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

<div align="center">

**The Recording Academy's Position**

</div>

The Recording Academy incorporates sections I through V above regarding its position on the response to Interrogatory No. 1.  On Point withdrew all objections except trade secret.

The amount of money On Point received from the sale of travel packages in connection with the unlawful sale of GRAMMY tickets is not a trade secret.  The prices or the travel packages were probably advertised on the Internet, and were necessarily disclosed to nonparties involved in the transaction, *e.g.*, credit card companies, the purchasers, etc.  The information does not fall within the any of the above-mentioned categories of trade secrets.  On Point knows that The Recording

1   Academy's members are contractually bound not to transfer GRAMMY tickets and

2   that the GRAMMY Awards ceremony is not open to the public.

3       The Court should order On Point to respond to this interrogatory fully and

4   completely, without objection, within three court days.

5                                    **On Point's Position**

6       Defendant On Point incorporates by reference the allegations, responses, and

7   statements and information set out in its Statement of Position to Interrogatory No. 1

8   as if fully set forth herein.

9       The Boiler Plate and Relevancy objections asserted and then withdrawn by

10  Defendant On Point after conference with The Recording Academy's counsel

11  contain the same wording as those asserted by The Recording Academy in response

12  to On Point's Request for Production and Written Interrogatories.

13      Contrary to Plaintiff The Recording Academy's claims, purchasing and

14  pricing information related to Defendant On Point's conduct of business with the

15  customers or clients who are part of its list of customers or clients protected by the

16  trade secret privilege is proprietary. Provision of this proprietary information to

17  Defendant On Point's competitors would provide such competitors with information

18  which they could use to their competitive advantage against Defendant On Point

19  without having to bear the cost of developing such information themselves.

20      Defendant On Point further points out that should it provide web site

21  information sought by Plaintiff The Recording Academy without assertion of its

22  trade secret privilege that such information would lead Plaintiff The Recording

23  Academy to third parties who could supply Plaintiff The Recording Academy with

24  the same information subject to protection by trade secret privilege while it remains

25  undisclosed by Defendant On Point resulting in an impermissible end run around the

26  trade secret protection to which Defendant On Point is entitled.

27

28

**INTERROGATORY NO. 13:**

DESCRIBE each DOCUMENT evidencing, referring or relating to each COMMUNICATION between YOU and THE RECORDING ACADEMY.

**RESPONSE TO INTERROGATORY NO. 13:**

ANSWER: Defendant, On Point, incorporates the General Objections as though fully set forth herein. On Point objects to this interrogatory on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

Defendant, On Point, further objects on the grounds that this interrogatory seeks confidential information, proprietary business information, trade secret information, and/or information protected from disclosure by constitutional, statutory, or common law right to privacy.

Defendant, On Point, further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

As a further response and answer to this interrogatory, Defendant, On Point, incorporates by reference the content of the various items of correspondence exchanged between Defendant, On Point, and/or its attorney(s) and Plaintiff, National Academy of Recording Sciences and Arts, ("GRAMMY") and its attorneys as a further answer to this interrogatory.

<div align="center">

**The Recording Academy's Position**

</div>

The Recording Academy incorporates sections I through V above regarding its position on the response to Interrogatory No. 1.  On Point withdrew all objections except trade secret.

An answer to an interrogatory must be complete in itself and cannot refer to tother documents.  *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000); *Continental Ill. Nat'l Bank Y Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 686

1   (D. Kan. 1991) ("see page 44 of Jones deposition transcript" improper).  On Point

2   should be compelled to identify the documents it is referring to.

3          The Court should order On Point to respond to this interrogatory fully and

4   completely, without objection, within three court days.

5                              **<u>On Point's Position</u>**

6          Defendant On Point incorporates by reference the allegations, responses, and

7   statements and information set out in its Statement of Position to Interrogatory No. 1

8   as if fully set forth herein.

9          The Boiler Plate and Relevancy objections asserted and then withdrawn by

10  Defendant On Point after conference with The Recording Academy's counsel

11  contain the same wording as those asserted by The Recording Academy in response

12  to On Point's Request for Production and Written Interrogatories.

13         This interrogatory as worded requires a description of post-suit documents

14  and correspondence subject to a claim of attorney-client privilege between

15  Defendant On Point and its counsel.  The pre-suit documents which exist involve an

16  initial letter from Plaintiff The Recording Academy to Defendant On Point

17  demanding that it cease and desist from offering for sale or selling tickets to The

18  Recording Academy events to a second a letter from Plaintiff The Recording

19  Academy to Defendant On Point demanding that Defendant On Point cease and

20  desist from offering to sell or selling The Recording Academy tickets.

21         A letter from Defendant On Point's attorney, Joe Alfred Izen, Jr., answering

22  the allegations contained in The Recording Academy's cease and desist letters.

23         A letter from The Recording Academy to Defendant On Point's counsel, Joe

24  Alfred Izen, Jr., threatening to file suit by a date certain unless Defendant On Point

25  signed an affidavit or other papers agreeing to cease and desist from offering to sell

26  or selling The Recording Academy tickets.

27         Copies of these letters are in the possession, custody, and control, of Plaintiff

28  The Recording Academy and are attached to attorney Horn's Declaration.  There are

1   no other documents in Defendant On Point's knowledge fitting the description of

2   this interrogatory other than those described above.

3      Plaintiff The Recording Academy claims an interrogatory answer must be

4   complete in and of itself and can not refer to other documents. Plaintiff The

5   Recording Academy cites <u>Scaife v. Boenne</u>, 191 F.R.D. 590, 594 (N.D. Ind. 2000)

6   and <u>Continental Illinois National Bank Y Trust Co. of Chicago v. Caton</u>, 136 F.R.D.

7   682, 686 (D.Kan. 1991) as purported support for its argument.

8      Defendant On Point relies on <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S.

9   340, 357, 98 S.Ct. 2380, 2392 (1978) which reads as follows:

10        When one party directs an interrogatory to another party

11        which can be answered by examination of the responding

12        party's business records, it is a sufficient answer to such

13        interrogatory to specify the records from which the answer

14        may be derived or ascertained and to afford to the party

15        serving the interrogatory reasonable opportunity to

16        examine and copy the records, if the burden of deriving

17        the answer would be substantially the same for either

18        party.

19   The letters which Plaintiff The Recording Academy sent and exchanged with

20   Defendant On Point and its counsel prior to Plaintiff The Recording Academy's

21   filing of suit are business records which are in Plaintiff The Recording Academy's

22   possession, custody, and control.  Further, the burden of deriving the answer to this

23   interrogatory would be substantially the same for either party.

24

25   **<u>INTERROGATORY NO. 14:</u>**

26      If YOU are licensed by any governmental body, IDENTIFY the governmental

27   body and state the type of license, the date the license was issued to YOU, the

28   license number, and the date the license expires.

**RESPONSE TO INTERROGATORY NO. 14:**

ANSWER: Defendant, On Point, incorporates the General Objections as though fully set forth herein. On Point objects to this interrogatory on the grounds that it is overbroad, vague, unduly burdensome, and not relevant to any claim or defense.

Defendant, On Point, further objects on the grounds that this interrogatory seeks confidential information, proprietary business information, trade secret information, and/or information protected from disclosure by constitutional, statutory, or common law right to privacy.

Defendant, On Point, further objects to the extent this interrogatory seeks information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine.

### The Recording Academy's Position

The Recording Academy incorporates sections I through V above regarding its position on the response to Interrogatory No. 1.  On Point withdrew all objections except trade secret.

Whether On Point is licensed by a governmental body and the identity of that body is not a trade secret.  It is public information.

The Court should order On Point to respond to this interrogatory fully and completely, without objection, within three court days.

### On Point's Position

Defendant On Point incorporates by reference the allegations, responses, and statements and information set out in its Statement of Position to Interrogatory No. 1 as if fully set forth herein.

The Boiler Plate and Relevancy objections asserted and then withdrawn by Defendant On Point after conference with The Recording Academy's counsel contain the same wording as those asserted by The Recording Academy in response to On Point's Request for Production and Written Interrogatories.

1   Defendant On Point is not required to obtain a license to sell its travel and
2   entertainment packages in the State of Texas nor is there any federal licensing
3   requirement.

4

5   **INTERROGATORY NO. 15:**

6   Identify each affirmative defense in YOUR answer to the COMPLAINT and
7   for each state all facts upon which YOU base the affirmative defense.

8   **RESPONSE TO INTERROGATORY NO. 15:**

9   ANSWER: Defendant, On Point, incorporates the General Objections as
10  though fully set forth herein. On Point objects to this interrogatory on the grounds
11  that it is overbroad, vague, unduly burdensome, and not relevant to any claim or
12  defense.

13  Defendant, On Point, further objects on the grounds that this interrogatory
14  seeks confidential information, proprietary business information, trade secret
15  information, and/or information protected from disclosure by constitutional,
16  statutory, or common law right to privacy.

17  Defendant, On Point, further objects to the extent this interrogatory seeks
18  information protected from disclosure by the attorney-client privilege and/or the
19  attorney work product doctrine.

20  Defendant, On Point, further objects to this interrogatory on the grounds that
21  it requires the Defendant, On Point, to marshal evidence and to provide the Plaintiff
22  with Defendant's trial strategy, both of which are not required under Rule 33 of the
23  Federal Rules of Civil Procedure.

24  <div align="center">**The Recording Academy's Position**</div>

25  The Recording Academy incorporates sections I through V above regarding
26  its position on the response to Interrogatory No. 1.  On Point withdrew all objections
27  except trade secret.

28

1    Courts have long approved this common type of interrogatory.  For example,
2    in *Security Ins. Co. of Hartford v. Trustmark Ins. Co.*. 218 F.R.D. 29, 34 (D. Ct.
3    2003), the court held that it was not objectionable to propound an interrogatory
4    stating, "State the facts upon which you based the allegations in Paragraph 28 of the
5    complaint."
6    The Court should order On Point to respond to this interrogatory fully and
7    completely, without objection, within three court days.

8    ### On Point's Position

9    Defendant On Point incorporates by reference the allegations, responses, and
10   statements and information set out in its Statement of Position to Interrogatory No. 1
11   as if fully set forth herein.
12   The Boiler Plate and Relevancy objections asserted and then withdrawn by
13   Defendant On Point after conference with The Recording Academy's counsel
14   contain the same wording as those asserted by The Recording Academy in response
15   to On Point's Request for Production and Written Interrogatories.
16   Plaintiff The Recording Academy claims that it can force, through an
17   interrogatory, Defendant On Point to list all of its affirmative defenses and all facts
18   upon which the affirmative defenses are based is an impermissible attempt to force
19   Defendant On Point to marshal all evidence in support of its affirmative defenses.
20   It is impossible for the Defendant On Point to list all facts supporting its
21   affirmative defense even if this interrogatory as worded was in proper form.  The
22   time for answering an interrogatory which as worded requires a listing of facts
23   supporting an affirmative defense or a contention should be deferred until discovery
24
25
26
27
28

1   is completed.  <u>In Re:  Convergent Tech</u>., Sec. Litig. 108 F.R.D. 328, 336 (N.D. Cal.

2   1985).

3

4   DATED: January 27, 2009                    Robert H. Horn
                                               PROSKAUER ROSE LLP
5

6                                              By: _____/s/_____
7                                                         Robert H. Horn

8                                              Attorneys for Plaintiff
                                               National Academy of Recording Arts &
9                                              Sciences, Inc.

10

11  DATED: January 27, 2009                    Marcia L. Brewer
                                               Joe Alfred Izen, Jr.
12                                             PROSKAUER ROSE LLP

13

14                                             By: _____
15                                                       Joe Alfred Izen, Jr.

16                                             Attorneys for Defendant
                                               On Point Events, LP
17

18

19

20

21

22

23

24

25

26

27

28

1    is completed.  In Re:  Convergent Tech., Sec. Litig. 108 F.R.D. 328, 336 (N.D. Cal.

2    1985).

3

4    DATED: January 26, 2009                    Robert H. Horn
                                                 PROSKAUER ROSE LLP
5

6                                                By: _____/s/_____
7                                                         Robert H. Horn

8                                                Attorneys for Plaintiff
                                                 National Academy of Recording Arts &
9                                                Sciences, Inc.

10

11   DATED: January 2̶6̶ 27, 2009                 Marcia L. Brewer
                                                 Joe Alfred Izen, Jr.
12                                               PROSKAUER ROSE LLP

13

14                                               By: _____
15                                                        Joe Alfred Izen, Jr.

16                                               Attorneys for Defendant
                                                 On Point Events, LP
17

18

19

20

21

22

23

24

25

26

27

28