1 | Robert H. Horn, SBN 137410
rhorn@proskauer.com
2 | PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
3 | Los Angeles, California 96007
Telephone (310) 557-2900
4 | Fax (310) 557-2193

5 | Attorneys for Plaintiff
National Academy of Recording Arts
6 | & Sciences, Inc.

7

8 | UNITED STATES DISTRICT COURT

9 | CENTRAL DISTRICT OF CALIFORNIA

10

11 | NATIONAL ACADEMY OF )  Case No. CV 08-0856 DSF (Ex)
RECORDING ARTS & SCIENCES, INC., )
12 | a Delaware corporation, )
                              Plaintiff, )  **DISCOVERY MATTER**
13 |                    v. )
ON POINT EVENTS, LP, a Texas limited )  **DECLARATION OF ROBERT H.**
14 | partnership, )  **HORN IN SUPPORT OF**
                              Defendant. )  **PLAINTIFF'S MOTIONS TO**
15 | )  **(1) COMPEL FURTHER**
**RESPONSES TO**
16 | **INTERROGATORIES WITHOUT**
**OBJECTION, AND (2) COMPEL**
17 | **FURTHER RESPONSES TO**
**REQUESTS FOR DOCUMENTS**
18 | **AND TO COMPEL**
**PRODUCTION OF DOCUMENTS**
19

20 | Date:          February 20, 2009
Time:          9:30 a.m.
Ctrm:          20

21

22 | Discovery Cutoff: March 2, 2009
Pretrial Conf:     October 5, 2009
23 | Trial:             November 3, 2009

24

25

26

27

28

## DECLARATION OF ROBERT H. HORN

I, Robert H. Horn, declare:

1.     I am an attorney licensed to practice law in the State of California and Senior Counsel with Proskauer Rose LLP, attorneys for plaintiff National Academy of Recording Arts & Sciences, Inc. ("The Recording Academy").  I have personal knowledge of the facts set forth below, except those matters stated on information and belief, and if called as a witness I could and would testify competently thereto.

2.     Pursuant to Local Rule 37-2.1, a true and correct copy of the scheduling order in this case is attached hereto as Exhibit A.

3.     The Recording Academy alleges in the complaint it is a Delaware not-for-profit corporation with over 18,000 members.  For over 50 years The Recording Academy has represented the individuals who contribute to the creation and exploitation of recorded music, including recording artists, musicians, songwriters and record producers.  Among other activities, The Recording Academy presents the annual GRAMMY® Awards, the only peer-presented awards that honor artistic achievement in the music industry.  The annual GRAMMY Awards ceremony is telecast throughout the world.

4.     The Recording Academy states on its website that www.grammy.com provides charitable services to the music community through MusiCares® and The GRAMMY Foundation®.  MusiCares provides a safety net of critical assistance for music people in times of need.  Its services and resources cover a wide range of financial, medical and personal emergencies.  MusiCares also focuses the resources and attention of the music industry on human service issues that directly impact the health and welfare of the music community.  The GRAMMY Foundation seeks to cultivate the understanding, appreciation and advancement of the contribution of recorded music to American culture.  It accomplishes this mission through programs and activities that engage the music industry and cultural community as well as the general public.  For example, the GRAMMY Foundation works in partnership year-

1

round with The Recording Academy to bring national attention to important issues such as the value and impact of music and arts education and the urgency of preserving our rich cultural heritage.

5.      The Recording Academy alleges in the complaint that On Point owns and operates the website www.OnPointEvents.com.  On Point is a ticket broker for sought-after entertainment, sporting and other events, and offer such tickets for sale and sells such tickets to the public at a substantial premium above the face value, sometimes as part of so-called "travel packages."

6.      The Recording Academy further alleges that the GRAMMY Awards ceremony telecast attracts approximately 25 million viewers in the United States and approximately 600 million viewers in the rest of the world.  The biggest names in the entertainment world attend the ceremony.  Attendance in person is a highly sought-after privilege and, for music fans, a cause for great excitement.  The Recording Academy offers tickets on a restricted basis only to its dues-paying members and to promotional and sponsorship partners.

7.      The Recording Academy further alleges that tickets to the GRAMMY Awards ceremony are not for sale to the general public.  Each ticket to the GRAMMY Awards ceremony issued by The Recording Academy is, on its face, nontransferable except in a manner specifically authorized in writing by The Recording Academy.  The admonition on the tickets states:  "This ticket is not transferable …. Tickets transferred or re-sold without permission will be revoked and their bearers deemed trespassers."  Each ticket transferred or re-sold without such permission is void.  A true and correct copy of a sample ticket, which The Recording Academy produced in discovery, is attached hereto as Exhibit B.

8.      Each member of The Recording Academy who is offered the opportunity to buy a limited number of tickets is required to sign and submit an Academy Member Order Form that contains the following language:

I agree that GRAMMY Awards tickets are for use by me and my invited guest(s) only, are not transferable, and may not be sold or used for promotional, commercial, advertising, or other trade purposes without the express written consent of The Recording Academy.  Tickets transferred or re-sold without permission will be revoked and their bearers deemed trespassers.  My signature below is evidence of my agreement to comply with the foregoing.

A true and correct copy of an Academy Member Order Form, which The Recording Academy produced in discovery, is attached hereto as Exhibit C.

9. To further emphasize the strict prohibition against the unauthorized sale or transfer of tickets, when an invitee of The Recording Academy picks up GRAMMY Awards tickets, the invitee is required to sign a Ticket Release Form by which the invitee agrees that each ticket is nontransferable except in the manner specifically authorized in writing by The Recording Academy, and any ticket that is resold or transferred without such written authority is void.  To further underscore the prohibition against unauthorized transfer, the tickets themselves expressly state: "This ticket is not transferable ….  Tickets transferred or re-sold without permission will be revoked and their bearers deemed trespassers."  A true and correct copy of a Ticket Release Form, which The Recording Academy produced in discovery, is attached hereto as Exhibit D.

10. The Recording Academy further alleges that, notwithstanding the prohibition against unauthorized sales and transfers of GRAMMY Awards tickets, On Point has advertised and sold to the unwitting public tickets to the GRAMMY Awards ceremony knowing that the tickets are void and subject to deactivation, and that the purchasers will be trespassers.  On Point is perpetrating a fraud on the public

1  because only The Recording Academy is authorized to sell or transfer GRAMMY
2  tickets.

3        11.    On February 7, 2008, The Recording Academy filed the complaint for
4  false advertising in violation of 15 U.S.C. § 1125(a), unfair competition in violation
5  of 15 U.S.C. § 1125(a), common law interference with contractual relationships,
6  unfair or deceptive business practices in violation of Cal. Bus. & Prof. Code
7  § 17200 *et seq.*, and inducement of trespass.  The Recording Academy alleges that
8  without authorization On Point made and continues to offer to sell and to sell tickets
9  to the GRAMMY Awards ceremony.  The Recording Academy seeks damages and
10  a permanent injunction against, among other things, the advertising and sale of
11  GRAMMY tickets.

12        12.    The key evidence needed to prove these claims include:
13           •    On Point's records concerning its advertisements for the sale of
14                GRAMMY tickets
15           •    Communications with sources of GRAMMY tickets
16           •    Identities of GRAMMY ticket sources
17           •    Communications with purchasers of GRAMMY tickets
18           •    Identities of GRAMMY ticket purchasers
19           •    Copies of GRAMMY tickets acquired and sold
20           •    Documents evidencing money paid to GRAMMY ticket sources
21           •    Documents evidencing money received from GRAMMY ticket
22                purchasers
23           •    Accounting records relating to the purchase and sale of
24                GRAMMY tickets

25        13.    In or about June 2008, I discussed the issue of the confidentiality of
26  information to be produced in discovery with On Point's counsel Joe Izen, Jr.
27  Mr. Izen asked me to prepare a stipulation to a proposed protective order covering
28  the documents to be produced in this case.  On June 24, 2008, I sent a draft

stipulation to Mr. Izen.  A true and correct copy of my transmittal e-mail is attached hereto as Exhibit E.  Mr. Izen never provided me with any comments to the draft stipulation and never signed it.

14.     On June 27, 2008, The Recording Academy served On Point with interrogatories and document requests.  On August 26, 2008, On Point responded to the discovery, almost exclusively with objections.

15.     On Point's actual document production was unprecedented in my career.  It took the documents previously produced by The Recording Academy, changed the Bates label prefix from "NARAS" to "OP" and returned the documents to NARAS.  This was the entirety of On Point's document production.

16.     On November 6, 2008, The Recording Academy requested an in-person meeting within 10 days pursuant to Local Rule 37-1.  A true and correct copy of my November 6, 2008 letter is attached hereto as Exhibit F.  On Point's counsel did not agree to meet within the prescribed time period.  The meeting did not occur until December 10, 2008.

17.     At the meeting Mr. Izen and his co-counsel Marcia Brewer stated that the information requested by The Recording Academy in its interrogatories and document requests is relevant to the claims and that producing the information will not impose an undue burden.  Mr. Izen informed me that On Point sold few GRAMMY tickets, perhaps fewer than 10.  Mr. Izen also withdrew all of On Point's objections except for the trade secret objection.  Mr. Izen confirmed this in a letter

1  dated December 10, 2008 (at pages 8-16), a true and correct copy of which is

2  attached hereto as Exhibit G.

3       I declare under penalty of perjury under the laws of the United States that the

4  forgoing is true and correct.

5       Executed this 27th day of January, 2009, at Los Angeles, California.

6

7                                                    /s/

8                                          Robert H. Horn

# EXHIBIT A

1
2
3
4
5
6
7
8  UNITED STATES DISTRICT COURT

9  CENTRAL DISTRICT OF CALIFORNIA

10

11  NATIONAL ACADEMY OF          )   CASE NO. CV 08-856 DSF (Ex)
    RECORDING ARTS & SCIENCES, )
12  INC.,                         )   **ORDER RE JURY TRIAL**
                                   )
13                 Plaintiff,      )   **I.   ORDER RE DEADLINES:**
                                   )
14  vs.                           )   A. Adding Parties or Amending
                                   )      Pleadings: 12-1-08;
15                                 )
                                   )   B. Discovery Cut-off: 3-2-09;
16  ON POINT EVENTS, LP            )
                                   )   C. Expert Witness Exchange Deadline:
17                 Defendant.      )      Initial: 4-13-09;
                                   )      Rebuttal: 5-11-09 ;
18                                 )      Cut-off: 6-8-09 ;
                                   )
19  _____ )   D. Motion Hearing Cut-off:
                                          7-27-09;
20
                                       E. Settlement Conference Cut-off:
21                                         8-10-09;

22                                     F. Final Pretrial Conference:
                                          10-5-09 at 3:00 p.m.;
23
                                       G. Trial Date: 11-3-2009 at 8:00 a.m.
24                                        (4-5 day estimate)

25                                     **II.   ORDER RE TRIAL
                                               PREPARATION**
26
                                       **III.  ORDER GOVERNING
27                                             CONDUCT OF ATTORNEYS
                                               AND PARTIES**
28

revised 1-18-08

# I
## DEADLINES

A.     PARTIES/PLEADINGS

The Court has established a cut-off date for adding parties or amending pleadings.  All motions to add parties or to amend the pleadings must be noticed to be heard on or before the cut-off date.  All unserved parties will be dismissed at the time of the pretrial conference pursuant to Local Rule 16-8.1.

B.     DISCOVERY AND DISCOVERY CUT-OFF

1.  Discovery Cut-off:  The Court has established a cut-off date for discovery, including expert discovery, if applicable.  This is not the date by which discovery requests must be served; it is the date by which all discovery, including all hearings on any related motions, is to be completed.

2.  Discovery Disputes:  Counsel are expected to comply with all Local Rules and the Federal Rules of Civil Procedure concerning discovery.  Whenever possible, the Court expects counsel to resolve discovery problems among themselves in a courteous, reasonable, and professional manner.  The Court expects that counsel will adhere strictly to the Civility and Professionalism Guidelines (which can be found on the Court's website under "Attorney Information> Attorney Admissions").

3.  Discovery Motions:  Any motion challenging the adequacy of discovery responses must be filed, served, and calendared sufficiently in advance of the discovery cut-off date to permit the responses to be obtained before that date, if the motion is granted.

4.  Depositions:  All depositions shall commence sufficiently in advance of the discovery cut-off date to permit their completion and to permit the deposing party enough time to bring any discovery motions concerning the deposition before the cut-off date.  Given the requirements to "meet and confer," and notice

revised 1-18-08                        - 2 -

1   requirements, in most cases a planned motion to compel must be discussed with

2   opposing counsel at least six weeks before the cut-off.

3        5.  <u>Written Discovery</u>:  All interrogatories, requests for production of

4   documents, and requests for admissions must be served sufficiently in advance of

5   the discovery cut-off date to permit the discovering party enough time to

6   challenge (via motion practice) responses deemed to be deficient.

7        6.  <u>Expert Discovery</u>:  All disclosures must be made in writing.  The parties

8   should begin expert discovery shortly after the initial designation of experts.  The

9   final pretrial conference and trial dates will not be continued merely because

10   expert discovery is not completed.  Failure to comply with these or any other

11   orders concerning expert discovery may result in the expert being excluded as a

12   witness.

13        C.     <u>LAW AND MOTION</u>

14        The Court has established a cut-off date for the <u>hearing</u> of motions.  All

15   motions must be noticed so that the <u>hearing</u> takes place on or before the motion

16   cut-off date.  Counsel are to provide chambers with conformed courtesy copies of

17   all documents.  Courtesy copies should not be put in envelopes.  Counsel should

18   consult the Court's Standing Order, previously provided, to determine the Court's

19   requirements concerning motions.  A copy of the Standing Order is also available

20   on the Court's website at www.cacd.uscourts.gov>Judges' Procedures and

21   Schedules>Hon. Dale S. Fischer.

22        D.     <u>FINAL PRETRIAL CONFERENCE</u>

23        1.  A final pretrial conference date has been set pursuant to Rule 16 of the

24   Federal Rules of Civil Procedure and Local Rule 16-8.  Unless excused for good

25   cause, each party appearing in this action shall be represented at the final pretrial

26   conference by the attorney who is to have charge of the conduct of the trial on

27   behalf of such party.  Counsel should be prepared to discuss streamlining the trial,

28   including presentation of testimony by deposition excerpts or summaries, time

revised 1-18-08                    - 3 -

1   limits, stipulations as to undisputed facts, and qualification of experts by admitted

2   resumes.

3          2.  STRICT COMPLIANCE WITH LOCAL RULE 16 IS REQUIRED.

4   THIS ORDER SETS FORTH SOME DIFFERENT AND SOME ADDITIONAL

5   REQUIREMENTS.  THIS COURT DOES NOT EXEMPT *PRO PER*

6   PLAINTIFFS FROM THE REQUIREMENTS OF RULE 16.  Carefully prepared

7   memoranda of contentions of fact and law, witness lists, a joint exhibit list, and a

8   proposed final pretrial conference order shall be submitted in accordance with the

9   Rules, and the format of the proposed final pretrial conference order shall conform

10  to the format set forth in Appendix A to the Local Rules.  Failure of these

11  documents to comply with these requirements may result in the final pretrial

12  conference being taken off-calendar or continued, or in other sanctions.

13         3.  The memoranda of contentions of fact and law, witness lists and the joint

14  exhibit list are due not later than 21 days before the final pretrial conference, and

15  the proposed final pretrial conference order is to be lodged not later than seven

16  days before the final pretrial conference.

17         4.  In addition to the requirements of Local Rule 16, the witness lists must

18  include a brief (one or two paragraph) description of the testimony, and a time

19  estimate for both direct and cross-examination (separately stated).

20         5.  Other documents to be filed in preparation for, and issues to be

21  addressed at, the final pretrial conference are discussed below.

22         E.      SETTLEMENT PROCEDURES

23         A settlement procedure must be identified in every case pursuant to Local

24  Rule 16-15, et seq.  The Court will normally be guided by counsel's agreement as

25  to what procedure is appropriate for the case and when the optimum time for that

26  procedure is.  Counsel must, however, complete a settlement conference no later

27  than the date set by the Court at the scheduling conference.  Not to the exclusion

28  of other procedures, the following are available:

revised 1-18-08                          - 4 -

(1)    a settlement conference before the magistrate judge assigned to the case;

(2)    a settlement conference or mediation before an attorney selected from the Attorney Settlement Panel;

(3)    the employment (at the parties' expense) of a private judge, mediator, or arbitrator.

If a case is selected for the Mandatory ADR Program, the parties may choose option (3) instead, but may <u>not</u> choose option (1). Judge Fischer will hold a settlement conference at the request of the parties in cases with a trial estimate of more than four days.

No case will proceed to trial unless all parties, including the principals of all corporate parties, have appeared personally at a settlement conference.

## II

## ADDITIONAL TRIAL PREPARATION

A.    <u>MOTIONS *IN LIMINE*</u>

All motions *in limine* must be filed at least three weeks before the final pretrial conference. Counsel are to meet and confer with opposing counsel to determine whether opposing counsel intends to introduce the disputed evidence, and to attempt to reach an agreement that would obviate the motion. Opposition must be filed ten days before the final pretrial conference. The Court will rule on motions *in limine* at the final pretrial conference. Motions in *limine* should address specific issues (i.e., *not* "to exclude all hearsay," etc.). Motions *in limine* should not be disguised motions for summary adjudication of issues.

B.    <u>JURY INSTRUCTIONS, SPECIAL VERDICT FORMS, VOIR DIRE, JURY SELECTION</u>

1. Fourteen days before the meeting of counsel required by Local Rule 16-2, plaintiff shall serve plaintiff's proposed jury instructions and special verdict

revised 1-18-08        - 5 -

1    forms, and defendant shall serve defendant's proposed jury instructions and

2    special verdict forms as to any affirmative defenses, counterclaims, etc.  Within

3    ten days each shall serve objections to the other's instructions and verdict forms.

4    Before or at the Rule 16-2 meeting, counsel are ordered to meet and confer and

5    attempt to come to agreement on the proposed jury instructions and verdict forms.

6         2.  When the <u>Manual of Model Jury Instructions for the Ninth Circuit</u>

7    provides an applicable jury instruction, the parties should submit the most recent

8    version, modified and supplemented to fit the circumstances of this case.  Where

9    language appears in brackets, the appropriate language should be selected.  All

10   blanks should be completed.  Where California law applies, counsel should use

11   the current edition of <u>California Jury Instructions -- Civil</u> ("BAJI" or "CACI").  If

12   neither is applicable, counsel should consult the current edition of O'Malley, et

13   al., <u>Federal Jury Practice and Instructions</u>.  Each requested instruction shall (a)

14   cite the authority or source of the instruction, (b) be set forth in full, (c) be on a

15   separate page, (d) be numbered, (e) cover only one subject or principle of law, and

16   (f) not repeat principles of law contained in any other requested instruction.

17        3.  At the time of filing the proposed final pretrial conference order, counsel

18   shall file with the Court a JOINT set of jury instructions on which there is

19   agreement.  All blanks in standard forms should be filled in.  The Court expects

20   counsel to agree on the substantial majority of jury instructions, particularly when

21   pattern or model instructions provide a statement of applicable law.  If one party

22   fails to comply with the provisions of this section, the other party must file a

23   unilateral set of jury instructions, unless that party wishes to waive jury trial.

24        4.  At the same time, each party shall file its proposed jury instructions that

25   are objected to by any other party.  Each disputed instruction must have attached a

26   short (one or two paragraph) statement, including points and authorities in support

27   of the instruction as well as a brief statement, including points and authorities, in

28   support of any objections.  A proposed alternative instruction must be provided, if

revised 1-18-08                           - 6 -

1   applicable.  If the Court believes that there are so many disputed instructions that

2   the trial would be unnecessarily interrupted in order for the Court to resolve

3   disputes, the Court may determine that the matter is not yet ready to be tried, and

4   may order counsel to continue to meet and confer until most of the disputes are

5   resolved.

6       5.  Counsel must provide the documents described in paragraphs 3 and 4 on

7   a disk in WordPerfect 9 (or above) format at the time they file their proposed jury

8   instructions.

9       6.  The Court will send one or more copies of the instructions into the jury

10  room for the jury's use during deliberations.  Therefore, in addition to the copies

11  described above, the disk must contain a "clean" set of jury instructions,

12  containing only the text of the instruction (one per page) with the caption "Jury

13  Instruction No. __" at the top (eliminating titles, supporting authority, etc.).

14      7.  Counsel must provide an index of all instructions submitted, which must

15  include the following:

16          a.  The number of the instruction;

17          b.  The title of the instruction;

18          c.  the source of the instruction and any relevant case citations;

19          d.  The page number of the instruction.

20  For example:

21  | Number | Title | Source | Page |
    |--------|-------|--------|------|

22  | 1 | Trademark - Defined | 9th Cir.  15.3.2 | 7 |

23  |   | (15 U.S.C. § 1127) |   |   |

24      8.  **FAILURE TO FOLLOW THE PRECEDING PROVISIONS OF**

25  **THIS SECTION WILL SUBJECT THE NON-COMPLYING PARTY**

26  **AND/OR ATTORNEY TO SANCTIONS AND WILL BE DEEMED TO**

27  **CONSTITUTE A WAIVER OF JURY TRIAL.**

28      9.  During the trial and before argument, the Court will meet with counsel

revised 1-18-08                    - 7 -

1 and settle the instructions, and counsel will have an opportunity to make a further

2 record concerning their objections.

3      10.  At the time of filing the proposed final pretrial conference order,

4 counsel should file a jointly prepared one or two page statement of the case to be

5 read by the Court to the prospective panel of jurors before commencement of voir

6 dire.

7      11.  The Court will conduct the voir dire.  The Court provides a list of basic

8 questions, and may provide a list of additional questions to jurors before voir dire.

9 (This is not a questionnaire to be completed by jurors.)  Counsel may, but are not

10 required to, submit a list of proposed case-specific voir dire questions at the time

11 they file the proposed final pretrial conference order.

12      12.  The Court will inquire concerning whether serving on the jury would

13 create a substantial hardship, and may excuse jurors for that reason, before

14 beginning individual voir dire.

15      13.  In most cases the Court will conduct its initial voir dire of 14

16 prospective jurors who will be seated in the jury box.  Generally the Court will

17 select seven or eight jurors.

18      14.  Each side will have three peremptory challenges.  If fourteen jurors are

19 seated in the box and all six peremptories are exercised, the remaining eight jurors

20 will constitute the jury panel.  If fewer than six peremptories are exercised, the

21 eight jurors in the lowest numbered seats will be the jury.  The Court will not

22 necessarily accept a stipulation to a challenge for cause.  If one or more challenges

23 for cause are accepted, and all six peremptories are exercised, the Court may

24 decide to proceed with six or seven jurors.

25      C.    <u>TRIAL EXHIBITS</u>

26      1.  Counsel are to prepare their exhibits for presentation at the trial by

27 placing them in binders indexed by exhibit number with tabs or dividers on the

28 right side.  Counsel shall submit to the Court an original and two copies of the

revised 1-18-08         - 8 -

1    binders.  The exhibits shall be in three-ring binders labeled on the spine portion of

2    the binder as to the volume number <u>and</u> contain an index of each exhibit included

3    in the volume.  Exhibits must be numbered in accordance with Local Rule 16.6.

4         2.  The Court requires that the following be submitted to the Courtroom

5    Deputy Clerk ("CRD") on the first day of trial:

6              a.  The binder of <u>original exhibits</u> with the Court's exhibit tags,

7    yellow tags for plaintiff and blue tags for defendant, stapled to the front of the

8    exhibit on the upper right-hand corner with the case number, case name, and

9    exhibit number placed on each tag.

10             b.  One binder with a copy of each exhibit tabbed with numbers as

11   described above for use by the Court, and one binder for the use of the CRD and

12   court reporter.  (Exhibit tags are not necessary on these copies.)

13             c.  Three copies of exhibit lists.

14             d.  Three copies of witness lists in the order in which the witnesses

15   may be called to testify.

16        3.  Where a significant number of exhibits will be admitted, the Court

17   encourages counsel, preferably by agreement, to consider ways in which

18   testimony about exhibits may be made intelligible to the jury while it is being

19   presented.  Counsel may consider such devices as overhead projectors, jury

20   notebooks for admitted exhibits, or enlargements of important exhibits.  The Court

21   has an Elmo and other equipment available for use during trial.  Call the CRD if

22   you wish to visit when the Court is not in session to practice using the equipment.

23   The Court does not permit exhibits to be "published" by passing them up and

24   down the jury box.  Exhibits may be displayed using the screen in the courtroom,

25   only if the process does not become too time-consuming.

26        4.  All counsel are to meet not later than ten days before trial and to

27   stipulate, so far as is possible, to foundation, to waiver of the best evidence rule,

28   and to those exhibits that may be received into evidence at the start of the trial.

revised 1-18-08                      - 9 -

1    The exhibits to be so received will be noted on the extra copies of the exhibit lists.

2         D.    JURY TRIAL

3         On the first day of trial, court will commence at 8:00 a.m. and conclude at

4    approximately 4:00 p.m. with the standard lunch break.  On the first day of trial

5    counsel must appear at 8:00 a.m. to discuss preliminary matters with the Court.

6    The jury panel will be called when the Court is satisfied that the matter is ready

7    for trial.  Jury selection usually takes only a few hours.  Counsel should be

8    prepared to proceed with opening statements and witness examination

9    immediately after jury selection.  After the initial day of trial, trial days are

10   Tuesday through Friday from 8:00 a.m. to 1:45 p.m. with three fifteen-minute

11   breaks.

12

13                                    **III**

14              **CONDUCT OF ATTORNEYS AND PARTIES**

15

16        A.    OPENING STATEMENTS, EXAMINING WITNESSES, AND

17              SUMMATION

18        1.  Counsel must use the lectern for opening statements, examination of

19   witnesses, and summation.

20        2.  Counsel must not consume time by writing out words, drawing charts or

21   diagrams, etc.  Counsel may do so in advance and explain that the item was

22   prepared earlier as ordered by the Court to save time.

23        3.  The Court will honor (and may establish) reasonable time estimates for

24   opening and closing arguments, examination of witnesses, etc.

25        B.    OBJECTIONS TO QUESTIONS

26        1.  Counsel must not use objections for the purpose of making a speech,

27   recapitulating testimony, or attempting to guide the witness.

28        2.  When objecting, counsel must rise to state the objection and state only

revised 1-18-08                          - 10 -

1    that counsel objects and the legal ground of objection.  If counsel wishes to argue

2    an objection further, counsel must ask for permission to do so.

3            C.    GENERAL DECORUM

4            1.  Counsel should not approach the CRD or the witness box without

5    specific permission.  If permission is given, counsel should return to the lectern

6    when their purpose has been accomplished.  Counsel should not question a

7    witness at the witness stand.

8            2.  Counsel should rise when addressing the Court, and when the Court or

9    the jury enters or leaves the courtroom.

10           3.  Counsel should address all remarks to the Court.  Counsel are not to

11   address the CRD, the court reporter, persons in the audience, or opposing counsel.

12   If counsel wish to speak with opposing counsel, counsel must ask permission to

13   do so.  Any request for the re-reading of questions or answers shall be addressed

14   to the Court.  Such requests should be limited.  Requests may not be granted.

15           4.  Counsel should not address or refer to witnesses or parties by first names

16   alone.  Young witnesses (under 14) may, however, be addressed and referred to by

17   first names.

18           5.  Counsel must not offer a stipulation unless counsel has conferred with

19   opposing counsel and has verified that the stipulation will be acceptable.

20           6.  While Court is in session, counsel must not leave counsel table to confer

21   with any personnel or witnesses in the back of the courtroom unless permission

22   has been granted in advance.

23           7.  Counsel should not by facial expression, nodding, or other conduct

24   exhibit any opinion, adverse or favorable, concerning any testimony being given

25   by a witness.  Counsel should admonish counsel's own clients and witnesses to

26   avoid such conduct.

27           8.  Counsel should not talk to jurors at all, and should not talk to co-

28   counsel, opposing counsel, witnesses or clients where the conversation can be

EXHIBIT A
Page 17

1   overheard by jurors.  Each counsel should admonish counsel's own clients and
2   witnesses to avoid such conduct.

3       9.  Where a party has more than one lawyer, only one may conduct the
4   direct or cross-examination of a particular witness, or make objections as to that
5   witness.

6       D.    PROMPTNESS OF COUNSEL AND WITNESSES

7       1.  The Court makes every effort to begin proceedings at the time set.
8   Promptness is expected from counsel and witnesses.  Once counsel are engaged in
9   trial, this trial is counsel's first priority.  The Court will not delay the trial or
10  inconvenience jurors except under extraordinary circumstances.  The Court will
11  advise other courts that counsel are engaged in trial in this Court on request.

12      2.  If a witness was on the stand at a recess, counsel must have the witness
13  back on the stand, ready to proceed, when the court session resumes.

14      3.  If a witness was on the stand at adjournment, counsel must have the
15  witness adjacent to, but not on the stand, ready to proceed when the court session
16  resumes.

17      4.  Counsel must notify the CRD in advance if any witness should be
18  accommodated based on a disability or for other reasons.

19      5.  No presenting party may be without witnesses.  If counsel has no more
20  witnesses to call and there is more than a brief delay, the Court may deem that
21  party to have rested.

22      6.  The Court attempts to cooperate with professional witnesses and will,
23  except in extraordinary circumstances, accommodate them by permitting them to
24  be called out of sequence.  Counsel must anticipate any such possibility and
25  discuss it with opposing counsel.  If there is an objection, counsel must confer
26  with the Court in advance.

27      E.    EXHIBITS

28      1.  Each counsel should keep counsel's own list of exhibits and should note

revised 1-18-08                        - 12 -

1   when each has been admitted into evidence.

2         2.  Each counsel is responsible for any exhibits that counsel secures from

3   the CRD and must return them before leaving the courtroom at the end of the

4   session.

5         3.  An exhibit not previously marked should, at the time of its first mention,

6   be accompanied by a request that the CRD mark it for identification.  To save

7   time, counsel must show a new exhibit to opposing counsel before it is mentioned

8   in Court.

9         4.  Whenever in counsel's opinion a particular exhibit is admissible, it

10  should be moved into evidence, unless tactical or other considerations dictate

11  otherwise.

12        5.  Counsel are to advise the CRD of any agreements they have with respect

13  to the proposed exhibits and as to those exhibits that may be received so that no

14  further motion to admit need be made.

15        6.  When referring to an exhibit, counsel should refer to its exhibit number

16  whenever possible.  Witnesses should be asked to do the same.

17        7.  Counsel must not ask witnesses to draw charts or diagrams nor ask the

18  Court's permission for a witness to do so.  If counsel wishes to question a witness

19  in connection with graphic aids, the material must be fully prepared before the

20  court session starts.

21        F.    DEPOSITIONS

22        1.  All depositions to be used at trial, either as evidence or for impeachment,

23  must be lodged with the CRD on the first day of trial or such earlier date as the

24  Court may order.  Counsel should verify with the CRD that the relevant deposition

25  is in the CRD's possession.

26        2.  In using depositions of an adverse party for impeachment, either one of

27  the following procedures may be adopted:

28              (a)  If counsel wishes to read the questions and answers as alleged

revised 1-18-08                        - 13 -

1    impeachment and ask the witness no further questions on that subject, counsel

2    shall first state the page and line where the reading begins and the page and line

3    where the reading ends, and allow time for any objection.  Counsel may then read

4    the portions of the deposition into the record.

5            (b)  If counsel wishes to ask the witness further questions on the

6    subject matter, the deposition is placed in front of the witness and the witness is

7    told to read silently the pages and lines involved.  Then counsel may either ask the

8    witness further questions on the matter and thereafter read the quotations, or read

9    the quotations and thereafter ask further questions.  Counsel should have an extra

10   copy of the deposition for this purpose.

11          3.  Where a witness is absent and the witness's testimony is offered by

12   deposition, counsel may (a) have a reader occupy the witness chair and read the

13   testimony of the witness while the examining lawyer asks the questions, or (b)

14   have counsel read both the questions and answers.

15          G.    USING NUMEROUS ANSWERS TO INTERROGATORIES AND

16                 REQUESTS FOR ADMISSIONS

17          Whenever counsel expects to offer a group of answers to interrogatories or

18   requests for admissions extracted from one or more lengthy documents, counsel

19   should prepare a new document listing each question and answer, and identifying

20   the document from which it has been extracted.  Copies of this new document

21   should be given to the Court and opposing counsel.  This procedure is intended to

22   save time.

23          H.    ADVANCE NOTICE OF UNUSUAL OR DIFFICULT ISSUES

24          If any counsel has reason to anticipate that a difficult question of law or

25   evidence will necessitate legal argument requiring research or briefing, counsel

26   must give the Court advance notice.  Counsel are directed to notify the CRD at the

27   day's adjournment if an unexpected legal issue arises that could not have been

28   foreseen and addressed by a motion *in limine*.  See Fed. R. Evid. 103.  Counsel

revised 1-18-08                              - 14 -

1    must also advise the CRD at the end of each trial day of any issues that must be

2    addressed outside the presence of the jury, so that there is no interruption of the

3    trial.  THE COURT WILL NOT KEEP JURORS WAITING.

4

5

6    *N.B.*  **"COUNSEL," AS USED IN THIS ORDER, INCLUDES PARTIES**

7    **APPEARING *IN PROPRIA PERSONA*.**

8

9    IT IS SO ORDERED.

10

11

12   DATED: 8/19/08

13                                   _____
                                     Dale S. Fischer
14                                   United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

10                                              )   CASE NO.  CV        DSF(   x)
11                                              )
12                                              )
13                     Plaintiff(s),            )
14    vs.                                       )   **EXHIBIT LIST**
15                                              )
16                                              )       *SAMPLE FORMAT*
17                     Defendant(s).            )
18   _____          )

| EX. No. | DESCRIPTION | IDENTIFIED | ADMITTED |
|---------|-------------|------------|----------|
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |
|         |             |            |          |

28

FINAL JOINT TRIAL WITNESS ESTIMATE FORM

CASE: _____                      TRIAL DATE: _____

|  | WITNESS NAME | PARTY CALLING WITNESS AND ESTIMATE | X-EXAMINER'S ESTIMATE | DESCRIPTION OF TESTIMONY | COMMENTS |
|---|---|---|---|---|---|
| 1 |  |  |  |  |  |
| 2 |  |  |  |  |  |
| 3 |  |  |  |  |  |
| 4 |  |  |  |  |  |
| 5 |  |  |  |  |  |
| 6 |  |  |  |  |  |
| 7 |  |  |  |  |  |
| 8 |  |  |  |  |  |
| 9 |  |  |  |  |  |
| 10 |  |  |  |  |  |
|  | TOTAL ESTIMATES THIS PAGE: |  |  |  |  |

Instructions:

(1) List witnesses (last name first); (2) For description, be extremely brief, e.g., "eyewitness to accident" or "expert on standard of care;" (3) Use estimates within fractions of an hour, rounded off to closest quarter of an hour, e.g., if you estimate 20 minutes, make it .25. An estimate of one and one-half hours would be 1.5. An estimate of three-quarters of an hour would be .75; (4) Note special factors in "Comments" column, e.g., "Needs interpreter;" (5) Entries may be in handwriting if very neat and legible.

EXHIBIT A
Page 23

# EXHIBIT B





552178520250



This ticket is a revocable license intended for use only by the original purchaser and purchaser's invited guest(s) ("Holder"). This ticket may not be transferred or resold and the rights granted herein may not be assigned. No promotional, commercial, advertising or other trade use of this ticket may be made without the prior express written consent of The Recording Academy. Tickets obtained from unauthorized sources or in contravention of the terms and conditions of this ticket or applicable law will not be honored, and their holders shall be deemed trespassers. Children under 6 years, and children under 16 not accompanied by a legal guardian, may be refused admission. This ticket will not be replaced and no part of the price will be refunded if it is destroyed, lost, stolen, or seized as permitted herein, or if production adjustments obstruct the holder's view. Upon cancellation or rescheduling of the 50th Annual GRAMMY Awards (the "Show"), neither The Recording Academy nor any other person or entity shall be required to issue the holder a refund provided that the holder is given the right to attend a rescheduled show or exchange this ticket for a similar event of comparable price and seat location.

As a condition to admission to the Show, the Holder agrees to comply with the rules of Staples Center, all applicable laws, and the terms and conditions hereof (if the holder violates any of said rules, laws, terms or conditions, this ticket may be seized and the Holder ejected without compensation); consents to the use of his/her name, image, voice, likeness or performance by The Recording Academy or any of its successors, licensees and assigns for any live or recorded transmission, reproduction, display, or other exploitation, in any and all media now known or hereafter devised in perpetuity throughout the universe, individually, and on behalf of his/her heirs and assigns; accepts all risks incidental to attendance of the Show; and waives, releases and forever discharges The Recording Academy, Staples Center, John Cossette Productions Inc., Ken Ehrlich Productions, CBS Inc., all participants to the Show, and their respective parents, subsidiaries, affiliates, trustees, governors, members, directors, officers, employees, agents, sponsors, successors, licensees, assigns and advertisers, and agrees to hold each of them harmless, from any and all claims, demands, causes of action, loss, damage, expense (including reasonable attorney's fees) or liability of any nature whatsoever arising from any matter, cause or thing related to attendance at the Show and/or the use of the Holder's name, image, voice, likeness or performance as described herein.

The Holder agrees to refrain from disorderly or dangerous conduct, and may not enter the Show with alcoholic beverages, unlawful drugs, food, bottles or cans, video or audio recording devices, laser pointers, cameras, weapons, other dangerous devices or items prohibited by applicable laws, rules or regulations (Holders found to possess banned items may be ejected and behind bars may be seized). The Holder consents to the inspection and search of the Holder, the Holder's clothing, and any purse, bag, package or other container in the Holder's possession, for any banned items, and to seizure of the same. Cell phones and other communication devices must be turned off inside Staples Center. The Holder may not participate or aid in the reproduction, use, or transmission of pictures, descriptions, or accounts of the Show.

The violation or breach of any of the terms set forth above will automatically terminate this license and shall render the use of this ticket by the Holder for any purpose illegal and unauthorized.



552178520250

RA 031

EXHIBIT C

# ACADEMY MEMBER ORDER FORM



## GRAMMY AWARDS
February 10, 2008 | 8 pm et/pt | CBS

As a privilege of membership, all eligible Members of The Recording Academy® are invited to purchase tickets to the 50th Annual GRAMMY® Awards and GRAMMY Celebration™ party. These tickets are not transferable and require your personal attendance along with your guest.

Members may purchase a maximum of six (6) Awards Ceremony tickets total (see below for quantity limitations). Members may also purchase one (1) Celebration party ticket for every one (1) Awards Ceremony ticket purchased. Please note that Celebration party tickets MAY NOT be purchased without the purchase of a companion Awards Ceremony ticket.

Please ensure your order does not exceed the specified maximum, and return this form with payment. All orders are accommodated on a "first-come, first-served" basis and subject to availability. For faster service, please fax completed order form, with credit card authorization, to The Recording Academy Ticketing Office (310.314.8241).

| | | |
|---|---|---|
| **PLATINUM** VIP loge-level seating. Pre-Telecast and Telecast admission only. | $ | $ |
| **MEMBER GOLD** Loge-level seating. Pre-Telecast and Telecast admission only. | $ | $ |
| **MEMBER SILVER** Mid-level seating. Pre-Telecast and Telecast admission only. | $ | $ |
| **MEMBER BRONZE** Upper-level seating. Pre-Telecast and Telecast admission only. | $ | $ |
| **GRAMMY CELEBRATION PARTY** Party admission only. | $ | $ |
| **TOTAL PURCHASE AMOUNT** | | $ |

**CREDIT CARD PAYMENTS:** To purchase tickets with a major credit card (VISA, MasterCard, American Express, Discover), please complete the following sections. Each section must be legible and fully completed or ticket order will not be processed.

Credit Card Number: _____   Expiration Date: _____

Name of Cardholder: _____

Signature of Cardholder: _____

**BILLING ADDRESS FOR CARDHOLDER**

Street Address: _____

City: _____   State or Province: _____

Postal Code: _____   Country: _____

**PLEASE READ THE FOLLOWING AND SIGN BELOW:** Tickets to Recording Academy events, including but not limited to the GRAMMY Awards, are for use by the account holder and its invited guest(s) only, are not transferable by account holder or any of its invited guests, and may not be sold, otherwise transferred or used for any other purpose, including promotional, commercial, advertising, or other trade purposes, without the express written consent of The Recording Academy. Tickets sold, otherwise transferred or used in violation of this policy shall be deemed revoked and void, and their bearers deemed trespassers at all Recording Academy events. By accepting delivery of tickets, the account holder and its guests are bound by this Ticket Policy and the account holder agrees to inform with due diligence all of its invited guests of the terms of this Ticket Policy. The Recording Academy reserves all legal rights and remedies. Your signature below is evidence of your agreement to comply with this Ticket Policy.

Signature: _____   Date: _____

Daytime Phone Number: _____

E-mail Address: _____

**REDACTED**

RA 025

EXHIBIT C                                                                 Page 25



**GRAMMY'AWARDS**
February 10, 2008 | 8 pm et/pt | CBS

**ORDER CONFIRMATION**
Thank you for your 50th Annual GRAMMY® Awards ticket order. Your order has been received and accommodated (see details in the box to the right).

If you purchased GRAMMY Celebration™ Party tickets, please note that those tickets are separate from any Telecast tickets and are listed as a separate line item. If you have any questions regarding your order, contact The Recording Academy Ticketing Office.

**TICKETS ARE NOT TRANSFERABLE**
Tickets to Recording Academy® events, including but not limited to the GRAMMY Awards, are for use by the account holder and its invited guest(s) only, are not transferable by account holder or any of its invited guests, and may not be sold, otherwise transferred or used for any other purpose, including promotional, commercial, advertising, or other trade purposes, without the express written consent of The Recording Academy. Tickets sold, otherwise transferred or used in violation of this policy shall be deemed revoked and void, and their bearers deemed trespassers at all Recording Academy events. **By accepting delivery of tickets, the account holder and its guests are bound by this Ticket Policy and the account holder agrees to inform with due diligence all of its invited guests of the terms of this Ticket Policy. The Recording Academy reserves all legal rights and remedies.**

| Accommodated Tickets |
| --- |
|  |

**\*TICKET PICKUP**

**Members / Guests Ticket Pickup**
Monday, Feb 4, 2008 - Saturday, Feb 9, 2008
9:00 am - 6:00 pm

**\*\*Nominee / Diamond Ticket Pickup**
Thursday, Feb 7, 2008 - Saturday, Feb 9, 2008
9:00 am - 6:00 pm

**GRAMMY Ticket Pickup Office**
Los Angeles Convention Center, West Hall, Room 508
1201 S. Figueroa Street, Los Angeles, CA 90015.

**To pick up your order, please present the following:**
1. This confirmation letter
2. Photo ID (valid drivers license or passport)

Complimentary parking for ticket pickup is available in Lot 5 directly across the street from the West Hall main entrance at the corner of Figueroa Street and 12th Street. Enter Lot 5 on 12th Street.

**\*TICKETING OFFICE CLOSED DAY OF SHOW - NO WILL CALL AVAILABLE**

\*\*Because of the unique nature of this live telecast, certain Nominee / Diamond seats may be designated as "on-camera" and may not be available for immediate pickup.

**THIRD-PARTY RELEASE AUTHORIZATION**
If you are unable to pick up your tickets in person, you may authorize a third-party to do so on your behalf by:
1. Completing the enclosed Ticket Release Authorization form
2. Faxing the completed form to the GRAMMY Ticketing Office at least 24 hours prior to picking up tickets

Your authorized third party will be required to present the following before tickets will be released:
1. A copy of the Ticket-Release Authorization form
2. Photo identification (valid drivers license or passport)

**PLEASE SAVE A COPY OF THIS DOCUMENT FOR YOUR RECORDS**

RA 026

EXHIBIT C                                                                 Page 26



**GRAMMY® AWARDS**
February 10, 2008 | 8pm et/pt | CBS

**EVENT PARKING**
A Parking Credential will be required for any vehicle to enter the secure perimeter around STAPLES Center.  Available credentials include:
1. Limousine
2. Self-Park
3. Taxi Drop-Off

**Parking credentials can only be obtained during ticket pickup** and attendees are limited to one (1) parking credential per two (2) Awards Ceremony tickets. Please note that this is a credential only and that all respective parking fees are the responsibility of the ticket holder.

**SECURITY**
For your safety and protection, **all attendees are required to carry photo identification** while attending the 50th Annual GRAMMY® Awards and GRAMMY Celebration™ Party. All persons and belongings are subject to search at any time while in attendance. We appreciate your cooperation, understanding, and patience regarding these security measures.

| GRAMMY Ticketing Office Mon - Fri, 8:00 am - 5:00 pm, Closes Feb. 1 | |
|---|---|
| **The Recording Academy** GRAMMY Ticketing 3402 Pico Blvd. Santa Monica, CA 90405 | 310.314.8281 (phone) 310.314.8241 (fax) ticketing@grammy.com |

| GRAMMY Ticket Pickup Office 9:00 am - 6:00 pm, Opens Feb. 4 | |
|---|---|
| **Los Angeles Convention Center** West Hall, Room 508 1201 S. Figueroa Street Los Angeles, CA 90015 | 213.765.4621 (phone) 213.741.3900 (fax) ticketing@grammy.com |

| Ticket Pickup - MEMBERS & GUESTS | | |
|---|---|---|
| Monday | February 4, 2008 | 9:00 - 6:00 PM |
| Tuesday | February 5, 2008 | 9:00 - 6:00 PM |
| Wednesday | February 6, 2008 | 9:00 - 6:00 PM |
| Thursday | February 7, 2008 | 9:00 - 6:00 PM |
| Friday | February 8, 2008 | 9:00 - 6:00 PM |
| Saturday | February 9, 2008 | 9:00 - 6:00 PM |
| Sunday | February 10, 2008 | CLOSED |

| Ticket Pickup - NOMINEE & DIAMOND TICKETS | | |
|---|---|---|
| Thursday | February 7, 2008 | 9:00 - 6:00 PM |
| Friday | February 8, 2008 | 9:00 - 6:00 PM |
| Saturday | February 9, 2008 | 9:00 - 6:00 PM |
| Sunday | February 10, 2008 | CLOSED |

**PLEASE SAVE A COPY OF THIS DOCUMENT FOR YOUR RECORDS**

RA 027

EXHIBIT C                                    Page 27

EXHIBIT D

# TICKET RELEASE FORM

**50**

**GRAMMY AWARDS**

February 10, 2008 | 8 pm et/pt | CBS

ACCOUNT #: _____

ACCOUNT NAME: _____

DATE: _____

**IDENTIFICATION CONFIRMATION**

DL / Passport #: _____   State/Country: _____

Name (as it appears): _____

Other: _____

**TICKETS ARE NON-TRANSFERABLE**

INITIAL

I understand that tickets to Recording Academy events, including but not limited to the GRAMMY Awards, are for use by the account holder and its invited guest(s) only, are not transferable by account holder or any of its invited guests, and may not be sold, otherwise transferred or used for any other purpose, including promotional, commercial, advertising, or other trade purposes, without the express written consent of The Recording Academy. Tickets sold, otherwise transferred or used in violation of this policy shall be deemed revoked and void, and their bearers deemed trespassers at all Recording Academy events. By accepting delivery of tickets, the account holder and its guests are bound by this Ticket Policy and the account holder agrees to inform with due diligence all of its invited guests of the terms of this Ticket Policy. The Recording Academy reserves all legal rights and remedies.

**NO REFUND / REPLACEMENT FOR UNUSED OR LOST TICKETS**

INITIAL

I understand that there are no refunds or replacements for unused or lost tickets. I understand that cancellation requests will be honored through **Friday, January 25, 2008**, and that after that date, cancellation requests will be honored at The Recording Academy's discretion, and subject to a cancellation charge of $50 per ticket. I understand that all approved ticket refunds will be processed after **February 10, 2008.**

**GRAMMY CELEBRATION PARTY TICKETS**

INITIAL

I understand that GRAMMY Celebration Party tickets must be purchased separately and will be accommodated with separate tickets for this event. I understand that presenting my telecast tickets will not gain me admission to the GRAMMY Celebration Party.

| **TICKETS RELEASED** | |
|---|---|
| _____ | Diamond |
| _____ | Platinum |
| _____ | Gold |
| _____ | Silver |
| _____ | Bronze |
| _____ | Suite |
| _____ | Party |
| _____ | STII |

AS THE NAMED ACCOUNT HOLDER OR AUTHORIZED REPRESENTATIVE, I ACKNOWLEDGE THAT ALL TICKETS ALLOCATED FOR MY ACCOUNT HAVE BEEN RECEIVED IN FULL. I HAVE READ AND UNDERSTOOD ALL INFORMATION DETAILED ABOVE AND UNDERSTAND THAT MY SIGNATURE BELOW IS EVIDENCE OF MY AGREEMENT TO COMPLY WITH THE FOREGOING.

Signature: _____   Date: _____

Print Name: _____

RA 029

# EXHIBIT E

## Horn, Robert H.

| | |
|---|---|
| **From:** | Horn, Robert H. [RHorn@proskauer.com] |
| **Sent:** | Tuesday, June 24, 2008 11:42 AM |
| **To:** | Marcia Brewer; joeslowgo@hotmail.com; |
| **Subject:** | Proposed Protective Order.DOC |

**Attachments:** (11381862_1)Proposed Protective Order (2).DOC

As you requested, I have drafted a proposed protective order. Please provide your comments and/or approval this week. Thank you.

Robert H. Horn | PROSKAUER ROSE LLP
2049 Century Park East | Suite 3200 | Los Angeles, CA 90067-3206
v: 310.284.5649 | F: 310.557.2193
rhorn@proskauer.com | www.proskauer.com
<<(11381862_1)Proposed Protective Order.DOC>>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

To ensure compliance with requirements imposed by U.S.

Treasury Regulations, Proskauer Rose LLP informs you that

any U.S. tax advice contained in this communication

(including any attachments) was not intended or written to

be used, and cannot be used, for the purpose of (i)

avoiding penalties under the Internal Revenue Code or (ii)

promoting, marketing or recommending to another party any

transaction or matter addressed herein.


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This message and its attachments are sent from a law firm

and may contain information that is confidential and

protected by privilege from disclosure. If you are not the

intended recipient, you are prohibited from printing,

copying, forwarding or saving them. Please delete the

message and attachments without printing, copying,

forwarding or saving them, and notify the sender

immediately.


1/27/2009

# EXHIBIT F

# PROSKAUER ROSE LLP

2049 Century Park East
Suite 3200
Los Angeles, CA 90067-3206
Telephone 310.557.2900
Fax 310.557.2193

BOCA RATON
BOSTON
CHICAGO
HONG KONG
LONDON
NEW ORLEANS
NEW YORK
NEWARK
PARIS
SÃO PAULO
WASHINGTON

Robert H. Horn
Senior Counsel

Direct Dial 310.284.5649
rhorn@proskauer.com

November 6, 2008

**By Facsimile and U.S. Mail**

Joe Alfred Izen, Jr.
5222 Spruce Street
Bellaire, Texas 77401

Marcia L. Brewer APLC
Attorney at Law
300 Corporate Pointe, Suite 330
Culver City, California 90230

Re:     <u>NARAS v. On Point Events</u>

Dear Mr. Izen and Ms. Brewer:

I write to request a pre-motion conference within 10 days pursuant to Local Rule 31-1. Since Ms. Brewer is located in this county, the meeting shall be in-person at my office, although Mr. Izen may participate telephonically. At the conference I wish to discuss On Point Events' responses to The Recording Academy's document requests and interrogatories. The responses are insufficient. A conference is necessary to avoid a motion to compel and a request for sanctions.

**Responses to Document Requests**

On Point has produced no documents of its own. It merely took the documents produced by The Recording Academy, changed the prefix on the Bates numbers from "RA" to "OP", and returned the documents to me. This tactic is unprecedented in my experience and totally unjustifiable.

*Response to Request No. 2*

This request seeks "All DOCUMENTS described or referred to by YOU in YOUR responses to THE RECORDING ACADEMY'S interrogatories served concurrently herewith." In its interrogatory responses, On Point referred to "various items of correspondence" and other documents, but has not produced the referenced documents.

8085/54321-013 Current/12122536v1

**PROSKAUER ROSE LLP**

Joe Alfred Izen, Jr.
Marcia L. Brewer
November 6, 2008
Page 2

*Response to Requests Nos. 3 through 20*

The Recording Academy alleges, among other things, that On Point has engaged in the unauthorized advertising for sale, offering for sale, purchase and sale of GRAMMY tickets. These requests seek documents relating to, among other things, On Point's advertising for sale, offering for sale, purchase and sale of GRAMMY tickets. Simply put, the requested documents concern the core issues in this lawsuit.

On Point asserted the same untenable objections to these requests. First, On Point objected that the requests are "overbroad, vague, unduly burdensome, and not relevant to any claim or defense." These objections are baseless, particularly given that you previously told me that On Point sold few GRAMMY tickets.

Second, On Point objected to the extent these requests seek "confidential information, proprietary business information, or trade secret information, or information protected from disclosure by constitutional, statutory, or common law right to privacy." Information relating to On Point's advertising, offering, purchase and sale of GRAMMY tickets is not confidential, proprietary, a trade secret, or private. Regardless, on June 24, 2008, at your request, I sent you a proposed stipulation to a protective order. You subsequently took the position that no protective order should be entered in this case. Accordingly, these objections are entirely baseless.

Third, On Point objected to the extent the requests seek "information protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine." If On Point is withholding any documents on these grounds, please provide a privilege log within 10 days.

*Responses to Requests Nos. 21 through 26*

These requests seek all documents that support On Point's first through sixth affirmative defenses. In addition to the objections discussed above, On Point asserted that these requests "purport[] to require Defendant, On Point, to marshal evidence and to provide Plaintiff with Defendant's trial strategy." There is no support in law for this objection. Fed. R. Civ. P. 26(a)(1)(ii) requires On Point to provide copies of all documents that support its defenses without a formal document request.

*Responses to Request No. 27*

This request asks for documents supporting On Point's seventh affirmative defense of antitrust violations. On Point objected on the ground that its answer to the complaint "does not contain a 'seventh affirmation' defense of anti-trust violations." This obvious typographical error in no way impairs the clarity of the request. On Point's refusal to produce relevant documents on this basis is the acme of bad faith.

8085/54321-013 Current/12122536v1

**PROSKAUER ROSE LLP**

Joe Alfred Izen, Jr.
Marcia L. Brewer
November 6, 2008
Page 3

### Responses to Interrogatories

*Interrogatory Nos. 1 through 12 and No. 14*

These interrogatories ask for, among other things, the dates on which On Point offered
GRAMMY tickets for sale, the sources of the GRAMMY tickets, the number and seating
categories of tickets, the dates the tickets were obtained, the identities of ticket purchasers, the
number and seating categories of tickets sold, the dates of sale, and the money or other
consideration received by On Point from the sales.

On Point asserted the same three categories of objections discussed above in respect to the
document requests; the objections are baseless for the same reasons in respect to the
interrogatories. The interrogatories are not "overbroad, vague, unduly burdensome, and not
relevant to any claim or defense." The requested information is directly relevant to the claims
alleged in the complaint, and the burden objection is specious given your previous statement to
me that On Point sold few GRAMMY tickets. The identities of the purchasers are not
confidential. Even if they were, The Recording Academy offered to keep the information
confidential. The attorney-client privilege and attorney work product doctrine certainly do not
apply to the requested information.

*Interrogatory No. 13*

This interrogatory states, "DESCRIBE each DOCUMENT evidencing, referring or relating to
each COMMUNICATION between YOU and THE RECORDING ACADEMY." In addition to
the objections discussed above, On Point purported to incorporate "various items of
correspondence" exchanged between the parties. This response is improper. *See Scaife v.
Boenne*, 191 FRD 590, 594 (N.D. Ind. 2000) (stating that an answer to an interrogatory should be
complete in itself and should not refer to the other documents); *Continental Illinois Nat'l Bank &
Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 686 (D. Kan. 1991) (stating that "see page 44 of
Jones deposition transcript" is improper). If On Point desires to rely on Fed. R. Civ. P. 33(d)(1),
it must specify the correspondence "in sufficient detail to enable the interrogating party to locate
and identify them as readily as the responding party could." Accordingly, please respond to
the interrogatory by providing the dates of the referenced correspondence, the name of the author,
and the name of the recipient.

I await your prompt reply.

Sincerely,

Robert H. Horn

8085/54321-013 Current/12122536v1

Fax:3105572264

**✳✳ Transmit Conf. Report ✳✳**

P.1                                              Nov  6 2008  14:48

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 13106703706# | NORMAL | 6,14:48 | 0'44" | 5 | # O K | BRDCAST |

| Fax/Phone Number | Mode | Start | Time | Page | Result | Note |
|---|---|---|---|---|---|---|
| 17136689402# | NORMAL | 6,14:49 | 0'53" | 5 | # O K | BRDCAST |

BOCA RATON
BOSTON
CHICAGO
HONG KONG
2049 Century Park East          LONDON
Suite 3200                      NEW ORLEANS
Los Angeles, CA 90067-3206      NEW YORK
Telephone 310.557.2900          NEWARK
Fax 310.557.2193                PARIS
                                SÃO PAULO
                                WASHINGTON

# PROSKAUER ROSE LLP

| | | | |
|---|---|---|---|
| **Date** | November 6, 2008 | **Client-Matter**  5480-54321-013 | **Fax Transmittal** |

**Total Pages (Including Cover)**    4

**From**                 Robert H. Horn

**Sender's Voice Number**    310.284.5649              **Sender's Room Number**  LA-3252

**Sender's Email Address**    rhorn@proskauer.com       **Main Fax Number**  310.557.2193

**To:**      Marcia Brewer, Esq.                   **Fax No.:**   (310) 670-3706

**Company:**   Attorney at Law                     **Voice No.:**  (310) 670-5325

**To:**      Joe A. Izen, Esq.                      **Fax No.:**   (713) 668-9402

**Company:**   Attorney at Law                     **Voice No.:**  (713) 668-8815

**Message**

# EXHIBIT G

# JOE ALFRED IZEN, JR.
## IZEN & ASSOCIATES, P.C.
### ATTORNEYS AT LAW

5222 SPRUCE STREET ● BELLAIRE, TEXAS  77035
(713) 668-8815 Telephone / (713) 668-9402 Fax

December 10, 2008

Robert H. Horn, Esquire                    **VIA FACSIMILE TRANSMISSION**
2049 Century Park East                         **Fax 310 557-2193**
Suite 3200
Los Angeles, CA 90067-3206
Telephone 310-557-2900

RE:   NARAS v. On Point Events; Meet and Confer Conference Prior
      to Filing a Motion to Compel; Defendant, On Point Events,
      Written Statement of Position With Respect to Plaintiff,
      NARAS, Discovery Demands

Dear Mr. Horn:

     I am writing this letter to set out my client, Defendant, On
Point Events' ("ON POINT"), position concerning the discovery
demands set out in the prior letters of November 6 and November
26, 2008.

     Currently the meet and confer conference required by the
Federal Rules of Civil Procedure and Local Rules of the United
States District Court for the Central District of California is
set to take place by your additional request (which moved an
earlier confirmed time) to Wednesday, December 10, 2008 at 3:25
p.m. P.S.T.

### APPLICABLE LEGAL STANDARDS

**1.  RELEVANCE:**

     Parties may obtain discovery regarding any matter, not
privileged, that is relevant to the claim or defense of any
party....  F.R.Civ.P. 26(b)(1).  The Rule goes on to state that:

          ...For good cause, the Court may order discovery of any
          matter relevant to the subject matter involving the
          action.  **Relevant information need not be admissible at
          the trial if the discovery appears reasonably calcula-
          ted to lead to the discovery of admissible evidence.
          The scope of discovery permissible under Rule 26 should
          be liberally construed; the Rule contemplates discovery
          into any matter that bears on or are that contemplates
          discovery into any matter that bears on or that could**

1

defenses asserted against Plaintiff NARAS of estoppel, waiver, unclean hands, and breach of the very contract / agreement provisions it is purporting to attempt to enforce against a third party, Defendant, On Point.  The answer to Interrogatory No. 10 may make it more likely so than not so that Plaintiff NARAS through its actions or inactions creates or encourages a secondary sale market of permissions to enter (tickets) to its events. Plaintiff NARAS' relevance and other objections are without any factual or legal basis.  Plaintiff NARAS should be compelled to fully and completely answer Interrogatory No. 10.  Furthermore, Plaintiff NARAS' use of tickets issued to special invited guests, members, or other parties, to compensate such members, special invited guests, or other parties, directly or indirectly, would generate a duty under the income tax laws of the United States to report the amount and recipient of such income under Form 1099 procedures and IRS Regulations.  Any failure to satisfy a lawful requirement to report would provide evidence supporting Defendant On Point's affirmative defenses of unclean hands, bad faith, waiver, and estoppel.  Any compliance with such requirement by Plaintiff NARAS and issuance of such 1099's would provide evidence relevant to Defendant On Point's claims of unclean hands, waiver, estoppel, and bad faith, in the bringing of this law suit against an innocent third party, Defendant, On Point.

The relevance and other objections of Plaintiff NARAS to Defendant On Point's Interrogatory No. 10 are without any legal or factual basis and should be overruled in their entirety.

### ON POINT EVENTS' RESPONSES TO DISCOVERY

**DEFENDANT, ON POINT EVENTS' RESPONSES TO NARAS' REQUEST FOR DISCOVERY**

On Point Events response to NARAS' First Request for Production

7.  Request for Documents No. 1:

All unprivileged documents referred to in On Point's Initial Disclosures under F.R.Civ.P. Rule 26 have already been produced. The privilege asserted is trade secret confidentiality which protects customer lists, vendor lists, and pricing and financial information which was accumulated at Defendant, On Point's, expense and which, if disclosed, would provide a financial windfall to competitors in On Point's travel entertainment events business. See Paragraphs 3 - 4 above.

8.  Request for Documents No. 2:

All unprivileged documents requested by this Request for Production of documents have already been produced.  The privilege asserted is trade secret confidentiality which protects customer lists, vendor lists, and pricing and financial information which was accumulated at Defendant, On Point's, expense and which, if disclosed, would provide a financial windfall to compe-

8

titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   9.   Request for Documents No. 3:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   10.   Request for Documents No. 4:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   11.   Request for Documents No. 5:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   12.   Request for Documents No. 6:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   13.   Request for Documents No. 7:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and

which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   14.   Request for Documents No. 8:

   All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   15.   Request for Documents No. 9:

   All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   16.   Request for Documents No. 10:

   All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   17.   Request for Documents No. 11:

   All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

   18.   Request for Documents No. 12:

   All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-

tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

     19.  Request for Documents No. 13:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

     20.  Request for Documents No. 14:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

     21.  Request for Documents No. 15:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

     22.  Request for Documents No. 16:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

     23.  Request for Documents No. 17:

     All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects

customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

    24.   Request for Documents No. 18:

    All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

    25.   Request for Documents No. 19:

    All communications fitting the description of Request for
Production No. 19 were in writing.   NARAS purported to produce
copies of all of this correspondence at the request of Defendant,
On Point. Defendant, On Point, has no other communications other
than those exchanged between the  attorneys for NARAS and On
Point Events and/or its attorney.

    26.   Request for Documents No. 20:

    Defendant, On Point, has no documents fitting this request.
Currently the State of Texas does not license ticket brokers.
Furthermore, there are no anti-scalping laws in the State of
Texas or the State of California.

    27.   Request for Documents No. 21:

    All unprivileged documents requested by this Request for
Production of documents have already been produced.   The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

    28.   Request for Documents No. 22:

    All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.   See
Paragraphs 3 - 4 above.

29.  Request for Documents No. 23:

All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

30.  Request for Documents No. 24:

All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

31.  Request for Documents No. 25:

All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

32.  Request for Documents No. 26:

All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

33.  Request for Documents No. 27:

All unprivileged documents requested by this Request for
Production of documents have already been produced.  The privi-
lege asserted is trade secret confidentiality which protects
customer lists, vendor lists, and pricing and financial informa-
tion which was accumulated at Defendant, On Point's, expense and
which, if disclosed, would provide a financial windfall to compe-
titors in On Point's travel entertainment events business.  See
Paragraphs 3 - 4 above.

13

## ON POINT ANSWERS TO NARAS INTERROGATORIES

### 1.  Interrogatory No. 1

Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

### 2.  Interrogatory No. 2

Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

### 3.  Interrogatory No. 3

Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

### 4.  Interrogatory No. 4

Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

### 5.  Interrogatory No. 5

Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

### 6.  Interrogatory No. 6

Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

### 7.  Interrogatory No. 7

Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

### 8.  Interrogatory No. 8

Voluntarily providing this information would waive Defendant

14

On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

    9.   Interrogatory No. 9

    Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

    10.   Interrogatory No. 10

    Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

    11.   Interrogatory No. 11

    Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

    12.   Interrogatory No. 12 .

    Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

    13.   Interrogatory No. 13

    The correspondence between On Point Events and its attorney-(s) and NARAS' attorneys is the same correspondence produced by NARAS in purported compliance with Defendant, On Point's, Request for Production.  Defendant On Point will list the 5 or 6 letter exchanged between parties by date, sender, and recipient, and a general summary of contents if Plaintiff insists on the creation of such a list.  All of the correspondence related to NARAS' threats to sue Defendant On Point for trespass, inducing breach of contract, fraud, and the other claims in NARAS' Original Complaint and Defendant On Point's factual and legal responses to such threats.

    14.   Interrogatory No. 14

    Inapplicable.

    15.   Interrogatory No. 15

    This interrogatory as worded requires Defendant On Point to submit privileged information.  Defendant On Point claims its

privilege to confidentiality under "trade secret" on the factual and legal grounds stated in Paragraphs 3 through 4 above.  Further, this interrogatory, as worded, is over burdensome.  It would be burdensome as well as impossible to "state all facts upon which you base the affirmative defense(s)" which are raised (in) Defendant On Point's Answer.

Voluntarily providing all this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

16.   Interrogatory No. 15

Voluntarily providing this information would waive Defendant On Point's claims of confidentiality.  The basis for On Point's privilege of trade secret confidentiality is set out above in Paragraphs 3 through 4 above.

### CONCLUSION

The above factual averments, legal authorities, and analysis, shall serve as Defendant, On Point's, written position asserted at the beginning of the meet and confer conference requested by Plaintiff, NARAS's, attorney, Robert H. Horn, Esq., for the purpose of resolving discovery disputes between all the parties.

Defendant On Point's preference is that all privilege(s) be waived by both parties and the information sought by Plaintiff NARAS's and Defendant On Point's discovery be made public. Defendant On Point's secondary position is that a protective order should be entered on such terms as will protect what the Court recognizes to be the trade secret privileges to confidentiality provided by California and/or Texas state law.

Thank you for your efforts in providing an opportunity to confer among the parties.

Sincerely,

Joe Alfred Izen Jr.
Attorney for Defendant
On Point Events

JAI:kc

cc:  Marcia Brewer
     On Point Sports

TANGRAMY.L3/TK410

16