Robert H. Horn, SBN 137410
rhorn@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, California 96007
Telephone (310) 557-2900
Fax (310) 557-2193

Attorneys for Plaintiff
National Academy of Recording Arts
& Sciences, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL ACADEMY OF RECORDING ARTS & SCIENCES, INC., a Delaware corporation,<br><br>            Plaintiff,<br>    v.<br>ON POINT EVENTS, LP, a Texas limited partnership,<br><br>            Defendant. | Case No. CV 08-0856 DSF (RCx)<br><br>**DISCOVERY MATTER**<br><br>**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF:**<br><br>**(1) MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS WITHOUT OBJECTION, AND TO COMPEL PRODUCTION OF DOCUMENTS;**<br><br>**(2) MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES WITHOUT OBJECTION**<br><br>Date: February 25, 2009<br>Time: 9:30 a.m.<br>Ctrm: 23<br><br>Discovery Cutoff: March 2, 2009<br>Pretrial Conf: October 5, 2009<br>Trial: November 3, 2009 |

It is indisputable that The Recording Academy cannot prove its claims without the information at issue. The Recording Academy seeks to prove that On Point unlawfully advertised, acquired and sold tickets to the GRAMMY Awards ceremony. On Point is the only source of evidence relating to these activities, *e.g.*, the identities of its ticket sources and purchasers, the amounts On Point paid to acquire the tickets, the amounts On Point received from ticket sales, the number of tickets sold, communications with ticket sources and purchasers, etc. On Point concedes that this information is relevant to The Recording Academy's claims. As On Point stated in its portion of the joint stipulations, "Defendant On Point concedes that if The Recording Academy's alleged restrictions on resale of its tickets and its ticket permits or ticket sales contracts are enforceable that the various 'key evidence' points listed by The Recording Academy in this Paragraph meet the standard of relevance under the Federal Rules of Civil Procedure."[1] (Joint Stipulations, p. 16.) The Recording Academy's claims would be eviscerated if the Court does not compel On Point to comply fully with the interrogatories and document requests.

The cases cited by On Point concerning trade secret protection are inapposite. In *Smith Barney v. Burrow*, 558 F. Supp. 2d 1066, 2008 U.S. Dist. LEXIS 77143, *32 (E.D. Cal. 2008), the plaintiff employer, a financial services firm, employed the defendants as financial advisors. The employees signed several employment agreements to acknowledge that the employer's client information is confidential and to agree to an injunction to prevent unauthorized use of such information. The employees resigned and opened their own competing business. Before their resignations, the employees removed documents belonging to the employer containing client names, addresses and telephone numbers. After their resignations, the former employees began soliciting those clients. The court noted that "[a]

---

[1] On Point's reference to "this Paragraph" was to paragraph III of The Recording Academy's portion of the joint stipulations, at p. 10.

1

customer list acquired by lengthy and expensive efforts deserves protection as a trade secret" and granted in part the employer's request for an injunction.

On Point also cited *MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 521 (9th Cir. 1993), and *Courtesy Temporary Service, Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1288, 272 Cal. Rptr. 352 (1990), for the point that a customer database qualifies as a trade secret because it has potential economic value to allow a competitor to direct its sales efforts to potential customers.  (*See* Joint Stipulations, p. 20.)

Here, The Recording Academy does not seek On Point's customer list, does not seek to sell sports and entertainment tickets to On Point's customers, and does not even seek to sell GRAMMY tickets to them.  The Recording Academy seeks to *prevent* the commercial sale of GRAMMY tickets to the public.  Information concerning On Point's sales of GRAMMY tickets has no economic value to The Recording Academy because The Recording Academy does not sell GRAMMY tickets to the public.  The GRAMMY Awards ceremony is a private event.  The information at issue, while necessary for The Recording Academy to prove its claims, is not a trade secret.  The information is not a customer list and it has no potential economic value to The Recording Academy.

Nothing more clearly demonstrates the fragility of the trade secret objection than On Point's offer to produce the information without restrictions on its use.  On June 24, 2008, at On Point's request, The Recording Academy prepared and delivered a proposed protective order.  (Horn Decl., Ex. E.)  On Point's counsel did not respond until six months later, in connection with the pre-motion meeting on December 10, 2008, when it offered to disclose its purported trade secret information *without a protective order*.  On Point improperly conditioned its offer, however, on The Recording Academy agreeing to disclose its members' private information and other confidential information without a protective order.  On Point reiterated this position in the joint stipulations:

2

| | |
|---|---|
| 1 | Defendant On Point took the position, which was made |
| 2 | clear to Plaintiff The Recording Academy, that Defendant |
| 3 | On Point's *first preference* was that the parties waive all |
| 4 | privilege and make all information concerning Plaintiff |
| 5 | The Recording Academy' alleged enforcement of its |
| 6 | restrictions on resale of its tickets and all pertinent |
| 7 | information related thereto public and that Defendant On |
| 8 | Point would disclose and make public all information |
| 9 | concerning its purchase and resale of tickets to The |
| 10 | Recording Academy events as part of its sale of sports and |
| 11 | entertainment travel packages. |

(Joint Stipulations, p. 5 (emphasis added).)  Moreover, On Point's counsel stated in his affidavit:

> Defendant On Point's counsel informed Grammy's
> counsel that Defendant On Point had two alternative
> positions with respect to a Protective Order.  Defendant
> On Point preferred that all claims to privilege be mutually
> waived and that the parties agree to disclose all documents
> pertaining to the ticket sales, resales, or restrictions on
> sales, for unrestricted use in litigation.

(Izen Affidavit, ¶ 23.)  On Point's willingness to disclose its supposed trade secret information without a protective order belies its assertion of competitive harm and demonstrates that its trade secret objection is a sham and a gambit designed to prevent The Recording Academy from proving its claims.

   On Point's attempt to condition disclosure of its responsive information on a waiver of The Recording Academy's objections to On Point's interrogatories and documents requests was not only improper, it was also a demand that could not be lawfully met.  On Point's Interrogatory No. 4, for example, asked The Recording

3

Academy to list the "names, current address, current telephone numbers, and current e-mail addresses, of all members of the National Recording Academy [sic] who have purchased tickets to attend Plaintiff's events within the last five years and state the number of tickets, if any purchased by such members and the price received by the Plaintiff for each such ticket." The thousands of Recording Academy members who annually attend the GRAMMY Awards ceremony include many of the most famous music artists in the world. Regardless of the degree of a member's notoriety, The Recording Academy cannot disclose its members' private information without an expensive notice procedure. In any event, the members' private information is irrelevant to any claim or defense in this case.

Accordingly, The Recording Academy respectfully requests that the Court grant the motions to compel in their entirety and order On Point to serve amended responses to the interrogatories and the document requests without objection, and to produce all responsive documents, by close of business on February 26, 2009. The Recording Academy requires the information before On Point's deposition, which is set for February 27, 2009 in Houston, Texas. On Point's counsel has indicated that On Point could comply by this deadline because there are few responsive documents. The discovery cut-off is March 2, 2009.

DATED: February 13, 2009       Robert H. Horn
                               PROSKAUER ROSE LLP


                               By  _____/s/_____
                                    Robert H. Horn

                               Attorneys for Plaintiff
                               National Academy of Recording Arts & Sciences, Inc.